1

1    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF MISSISSIPPI
2              OXFORD DIVISION

3

4  UNITED STATES OF AMERICA                    PLAINTIFF

5  VS.                              NO. 3:19-CR-65-3

6  JEREMY SMITH                                DEFENDANT

7

8                  CHANGE OF PLEA

9

10        BEFORE HONORABLE DEBRA M. BROWN
           UNITED STATES DISTRICT JUDGE

11

12            Greenville, Mississippi
                October 23, 2019

13

14  APPEARANCES:

15  For the Government:    ROBERT MIMS, ESQUIRE
                           U.S. Attorney's Office
16                         900 Jefferson Avenue
                           Oxford, Mississippi  38655
17

18  For the Defendant:     VICTORIA VALENCIA WASHINGTON, ESQUIRE
                           The Washington Law Firm, PLLC
19                         8869 Centre Street, Suite D
                           Southaven, Mississippi  38671
20

21
    Court Reporter:        BRENDA D. BLACKBURN, RPR, CCR #1087
22                         Federal Official Court Reporter
                           305 Main Street
23                         Greenville, Mississippi  38701

24

25

2

1        (Convened:  1:28 p.m.)

2        **THE COURT:**  Be seated.

3        Please call our next case.

4        **COURTROOM DEPUTY:**  The Court calls case number

5   3:19-CR-65-3, the United States of America versus Jeremy

6   Smith.

7        **THE COURT:**  This is a change of plea hearing that

8   was continued from October 1.  It was continued because we

9   did not have our defense counsel present.  It looks like we

10  have counsel for both sides present here today.

11       So let me start out with the government's counsel.

12       **MR. MIMS:**  Robert Mims, Your Honor.

13       **THE COURT:**  And counsel for the defendant?

14       **MS. WASHINGTON:**  Victoria Washington.

15       **THE COURT:**  Ms. Washington, just for the record,

16  because I hold everybody to account, I expect all counsel to

17  be here in accordance with the notice set by the Court.  You

18  were not here on October 1, pursuant to the Court's notice,

19  and I understand you weren't even on your way.  So for the

20  benefit of the record, tell me please what happened.

21       **MS. WASHINGTON:**  Yes, Your Honor.  I inadvertently

22  placed the date as the 10th instead of the 1st.  And so that

23  was the only reason I was not here.  I'm not -- I was out of

24  my office in July, and I've been working around the clock

25  getting it together and -- I wrote it on my calendar.  I

3

1    just knew that it was on the 10th.  So it wasn't intentional

2    at all.  I just had it for the 10th instead of the 1st.

3    Otherwise, I would have been here.  And if I were not two

4    and a half hours away, I would have made a way.  And I did

5    try to contact local counsel, and I could not get someone

6    here in my stead.

7            So I have placed someone in my office to take care

8    of those things so that the mistake that happened on the 1st

9    does not happen again.

10   **THE COURT:**  Well, very well.  I think this is the

11   first time you've been in my court.  So I will just say do

12   not let it happen again.  But please keep in mind that I

13   expect everyone to be here -- not just be here on that day,

14   but be here on time.

15           But for the benefit of your client, this in no way,

16   Mr. Smith, will affect the Court's view of your case.  But I

17   just wanted to acknowledge that for the record, because I do

18   not take lightly -- I like to stay on schedule, and I don't

19   like to hold up anyone else who may be scheduled behind you.

20   But anyway, let's just make sure it doesn't happen again.

21   **MS. WASHINGTON:**  Yes, Your Honor.

22   **THE COURT:**  Okay.  If the parties are prepared to

23   proceed, please come forward.

24           (Parties complied.)

25   **THE COURT:**  Please administer the oath to the

4

1  defendant.

2        **COURTROOM DEPUTY:** Raise your right hand.

3        (Oath administered by Courtroom Deputy.)

4      **THE COURT:** Sir, would you please state your full

5  legal name.

6        **THE DEFENDANT:** Jeremy Tyler Smith.

7        **THE COURT:** What was your middle name?

8        **THE DEFENDANT:** Tyler.

9        **THE COURT:** Tyler?

10       **THE DEFENDANT:** Yes, ma'am.

11       **THE COURT:** How do you spell Tyler?

12       **THE DEFENDANT:** T-y-l-e-r.

13       **THE COURT:** Do you understand that you are now

14 under oath, Mr. Smith, and if you answer any question I ask

15 you falsely, that false answer may be used against you in a

16 prosecution for perjury or making a false statement?

17       **THE DEFENDANT:** Yes, ma'am.

18       **THE COURT:** Do you understand you have the right to

19 remain silent and not answer any of the Court's questions?

20       **THE DEFENDANT:** Yes, ma'am.

21       **THE COURT:** Now, the Court understands that you now

22 wish to plead guilty to Count 2 of the indictment pursuant

23 to a written plea agreement with the government. Is that

24 correct?

25       **THE DEFENDANT:** Yes, ma'am.

5

1      **THE COURT:**  There are many, many questions then

2   that I must ask you, and the goal is to make sure that

3   you're fully informed of your rights and that you understand

4   your rights in this proceeding.  If at any point you do not

5   understand a question I ask you, just let me know, and I

6   will clarify it.  Also, keep in mind that you may speak with

7   your attorney at any point in this proceeding.  Just stop me

8   and let me know.  It doesn't matter whether or not there's a

9   question posed or not.  Just let me know, and we will

10   proceed.

11      So, you understand all of that.  Can you confirm

12   for me that if you have a question, or if you don't

13   understand a question, that you will let me know?

14      **THE DEFENDANT:**  Yes, ma'am.

15      **THE COURT:**  Now, how old are you?

16      **THE DEFENDANT:**  28.

17      **THE COURT:**  What is the highest level of school you

18   completed?

19      **THE DEFENDANT:**  I think, ninth grade.

20      **THE COURT:**  Ninth grade?

21      **THE DEFENDANT:**  Yes, ma'am.

22      **THE COURT:**  Do you have a GED?

23      **THE DEFENDANT:**  Yes, ma'am.

24      **THE COURT:**  When did you obtain that?

25      **THE DEFENDANT:**  2012.

6

1        **THE COURT:**  Now, are you under the influence of any

2   drugs, medicine, or alcohol?

3        **THE DEFENDANT:**  No, ma'am.

4        **THE COURT:**  Is there any medication that you're

5   prescribed that you're required to take on a regular basis?

6        **THE DEFENDANT:**  I was prescribed Zyprexa,

7   Trazodone, and Vistaril.  I don't take it any more.

8        **THE COURT:**  Okay.

9        **THE DEFENDANT:**  I haven't been taking it since I've

10  been in -- in this facility.  I was taking it in prison --

11  in state prison.

12       **THE COURT:**  Okay.  But let's back up.  So just

13  those two medications you mentioned?

14       **THE DEFENDANT:**  It's --

15       **THE COURT:**  And could you repeat what they are.

16       **THE DEFENDANT:**  It's three.

17       **THE COURT:**  Oh, three.

18       **THE DEFENDANT:**  Zyprexa, Trazodone, and Vistaril, I

19  believe.

20       **THE COURT:**  Okay, and how -- before you stopped --

21       **THE DEFENDANT:**  I mean, Prozac.  Not Vistaril.

22  Prozac.

23       **THE COURT:**  Okay.

24       **THE DEFENDANT:**  Because I -- it was Prozac and

25  Trazodone.

7

1    **THE COURT:**  So, those three?

2    **THE DEFENDANT:**  Yes, ma'am.  I was taking them down

3  at Meridian, Mississippi.

4    **THE COURT:**  When is the last time that you've taken

5  any of them?  How long ago?

6    **THE DEFENDANT:**  That was in 2017.

7    **THE COURT:**  And what was the reason that you're no

8  longer taking them?

9    **THE DEFENDANT:**  I asked them to take me off of it

10  in Meridian.

11    **THE COURT:**  You asked them to take you off of it?

12    **THE DEFENDANT:**  Yes, ma'am.  I asked them to take

13  me off of it, because I didn't like the facility I was in,

14  and I knew that if I was taking the medicine, then I would

15  have to stay in that facility.  But if I got off of it, they

16  would move me.

17    **THE COURT:**  Okay.  Can you explain to me again then

18  what each of those medications is for.

19    **THE DEFENDANT:**  Zyprexa is for Schizophrenia.

20  Prozac -- Tramadol is for mood -- mood disorder.  And

21  Trazodone is to sleep.

22    **THE COURT:**  And how often were you required to take

23  each one?

24    **THE DEFENDANT:**  I'm supposed to take it once a day.

25    **THE COURT:**  Once a day.

8

1          So, the last time that you took any of them -- I
2   mean, you stopped taking all of them at the same time?
3          **THE DEFENDANT:**  Yes, ma'am.
4          **THE COURT:**  And upon -- at your request?
5          **THE DEFENDANT:**  Yes, ma'am.
6          **THE COURT:**  Was it against any medical advice that
7   you received?
8          **THE DEFENDANT:**  Yes, ma'am.  The doctor told me I
9   was prescribed it and that I probably should stay on it.
10  But I told him I wanted off of it because I was trying to
11  leave the facility.  And if I stayed and used it, it's a
12  psych medicine, and you can only be in certain facilities.
13  I was trying to get closer to home.
14         **THE COURT:**  Okay.  Can you tell me what effects, if
15  any, that you had in your personality, or anything that the
16  drugs were supposed to be helping you with since you've been
17  off them?
18         **THE DEFENDANT:**  Paranoia, anxiety.  I suffer from
19  all of, like -- basically, paranoia and anxiety.  And I
20  can't sleep at night.
21         **THE COURT:**  Did that happen fairly immediately
22  after you stopped taking them?
23         **THE DEFENDANT:**  Basically, I mean, it's always --
24  I've always been like that.  I just -- really, I've been
25  trying to deal with it without medicine.

9

1        **THE COURT:**  Well, as you stand there today, do you

2   suffer any paranoia presently?

3        **THE DEFENDANT:**  Presently, I -- not right exactly

4   at this moment by anybody in here, no, ma'am.

5        **THE COURT:**  Okay, well -- and let me back up a

6   little further then.  Have you suffered any paranoia in the

7   past 30 days?

8        **THE DEFENDANT:**  Yes, ma'am.

9        **THE COURT:**  How often?

10       **THE DEFENDANT:**  I suffer paranoia every day.

11       **THE COURT:**  Every day?

12       **THE DEFENDANT:**  Yes, ma'am.

13       **THE COURT:**  Is it fair to say you may have suffered

14  paranoia yesterday?

15       **THE DEFENDANT:**  Yes, ma'am.

16       **THE COURT:**  Okay.  So, what about anxiety?

17       **THE DEFENDANT:**  Anxiety, I have -- I've always had.

18  I have that.

19       **THE COURT:**  You currently suffer from anxiety?

20       **THE DEFENDANT:**  Yes, ma'am.

21       **THE COURT:**  As you stand here today?

22       **THE DEFENDANT:**  Yes, ma'am.

23       **THE COURT:**  And how severe is the anxiety that you

24  suffer?  Tell me about historically, and then as you stand

25  here today.

1          **THE DEFENDANT:**  It makes -- it makes me real

2    nervous.  My anxiety makes my stress -- my chest constrict,

3    makes my face feel hot, my ears go red, like my blood

4    pressure real high.

5          **THE COURT:**  And you feel like you're suffering that

6    right now?

7          **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  What about -- let's see, because you

9    told me -- you've mentioned three medications.  And again,

10   I -- when I ask you these questions, it applies to all the

11   medications.

12         Anything else that you've noticed in your

13   personality, or just your demeanor since you've stopped

14   taking those medications, other than what you've told me

15   thus far?

16         **THE DEFENDANT:**  No, ma'am.

17         **THE COURT:**  Okay.  I want to back up a little bit

18   to the schizophrenia.  Can you explain to me how severe your

19   diagnosis of schizophrenia is.

20         **THE DEFENDANT:**  Not really.  I get real paranoid,

21   and I think people were looking at me.  I always think

22   people are talking about me or looking at me, and I always

23   feel like people are watching me.

24         **THE COURT:**  Okay.  I mean, do you feel that right

25   now?  But I mean, I know this is a different environment.

11

1    But how are you feeling right now?

2            **THE DEFENDANT:**  Right now, I don't really feel

3    like -- I mean, I know everybody in here is looking at me.

4    So it's not --

5            **THE COURT:**  Uh-huh.

6            **THE DEFENDANT:**  I mean, I'm in the spotlight, but

7    it's different.

8            **THE COURT:**  Okay.

9            **THE DEFENDANT:**  When I'm not in the spotlight, I

10   still feel like I'm in the spotlight.

11           **THE COURT:**  Now, the reason you said you stopped

12   taking them is because you wanted to be moved from a

13   facility, or stay in a facility.  You correct me if I'm

14   wrong.

15           **THE DEFENDANT:**  Yes, ma'am.

16           **THE COURT:**  Was this before you were arrested in

17   this case --

18           **THE DEFENDANT:**  I was --

19           **THE COURT:**  -- or while you -- oh, I'm sorry.

20           **THE DEFENDANT:**  I was in prison when I caught this

21   case.

22           **THE COURT:**  In state court?

23           **THE DEFENDANT:**  In state.  Yeah, I was in Meridian,

24   Mississippi in -- I think that's the name, is the East

25   Mississippi Correctional Facility.

12

1    **THE COURT:**  Okay.  And so that's where you were

2  here.  When you came over -- when you were arrested in this

3  case and you were brought up here to the Northern District

4  of Mississippi and you were in a facility, did you -- did

5  anyone evaluate you to see whether or not you needed those

6  medications?

7    **THE DEFENDANT:**  (Shaking head.)

8    **THE COURT:**  Did you make any reports to anyone

9  about your need for the medications?

10    **THE DEFENDANT:**  (Shaking head.)

11    **THE COURT:**  Why didn't you make any report?

12    **THE DEFENDANT:**  Because I really didn't want to be

13  on the medicine anymore.  Because the medicine makes me feel

14  weird, and I just didn't want to be on it.

15    **THE COURT:**  Okay.

16    **THE DEFENDANT:**  I'd just rather -- I would rather

17  just deal with it by myself.

18    **THE COURT:**  And how long had you been on the

19  medication before you stopped taking it?

20    **THE DEFENDANT:**  I had just got on it.

21    **THE COURT:**  You had just got on it?

22    **THE DEFENDANT:**  I had just got on it at -- in the

23  state prison at Meridian.  Well, I got on it at the county

24  jail and they -- when I got to Meridian, they put me on

25  there.  When I got to the facility out there, I told them I

1    didn't want to be on it.

2        **THE COURT:**  Was there any other period of time

3    before that that you took any type of medication to address

4    paranoia, anxiety, all of the things that you --

5        **THE DEFENDANT:**  I started taking Zyprexa in the

6    street.  But I -- like I say, I -- I've always -- one thing,

7    I don't like being on medicine because my momma was a

8    paranoid schizophrenic, and I saw her taking medicine my

9    whole life.  And it didn't help her, so I really just -- I

10    don't want it.

11        **THE COURT:**  Now, being off that medication, does it

12    in any way interfere with your ability to understand things?

13        **THE DEFENDANT:**  No, ma'am.

14        **THE COURT:**  You said that you weren't able to

15    sleep.

16        **THE DEFENDANT:**  Yes, ma'am.

17        **THE COURT:**  That's one of the side effects, or at

18    least the -- one of the consequences of not taking your

19    medication.  So, you haven't been sleeping well, in fact?

20        **THE DEFENDANT:**  I sleep.  But it's just on and off.

21    My mind is a -- my mind is busy.  So, it's -- my -- it's

22    hard for me to fall asleep.

23        **THE COURT:**  Okay.

24        **THE DEFENDANT:**  Once I get to sleep, I sleep.

25        **THE COURT:**  I see.  I see.

1      And are you tired right now?

2      **THE DEFENDANT:**  Am I tired?

3      **THE COURT:**  Yes.

4      **THE DEFENDANT:**  No, ma'am.

5      **THE COURT:**  Do you feel like you could use some

6  sleep?

7      **THE DEFENDANT:**  I mean, I guess I'm used to it.

8      **THE COURT:**  Counsel, approach, please.

9                     **(BENCH CONFERENCE BETWEEN THE**

10                    **COURT AND COUNSEL AS FOLLOWS, TO**

11                    **WIT:)**

12     **THE COURT:**  I am reluctant to go forward with this

13  plea.  I think he needs an evaluation.  I can deal with the

14  anxiety, but the schizophrenia --

15      Did you have some insight?

16     **MS. WASHINGTON:**  Well, I talked to him.

17  Personally, I'm very familiar with schizophrenia.  I talked

18  to him.  He's very coherent with me.  I did delve into that.

19  And so I didn't see any signs of schizophrenia.  Otherwise,

20  I would have gotten him into some type of evaluation.  And

21  so he was -- I asked him questions.  I was looking for

22  things out of the norm.  I didn't see any of those signs.

23  And so I thought he was competent enough for me to proceed.

24  So that's why I didn't delve into it.  But I understand your

25  concern.

15

1      **THE COURT:**  Basically your concern is with him, and

2    it was just -- it's a pretty big anxiety that came up as far

3    as his past?

4      **MS. WASHINGTON:**  Uh-huh.  So he told me about the

5    schizophrenia.  He didn't mention the paranoia to me.  He

6    did mention some anxiety, and then he told -- and I asked

7    him about those things as it related to the current facility

8    that he was in.  And so he didn't mention that it had any

9    effect on the current facility that he was in before he was

10   moved to Lafayette County.  Ultimately, I spent a lot more

11   time with him, and I did not see the signs that I typically

12   see dealing with a schizophrenic.

13     **THE COURT:**  Were you able to -- I don't even know

14   if this was something you were able to do.  Were you able to

15   get some medical history to see what it was he was taking?

16   I mean, just to confirm the things that he said he was

17   taking.

18          **MS. WASHINGTON:**  I did not.

19     **THE COURT:**  And at the point where you --

20     **MS. WASHINGTON:**  Because he told me he wasn't

21   taking anything.

22     **THE COURT:**  Right.

23          At the point that you first met with him, what --

24   when was that?  That was when?

25          **MS. WASHINGTON:**  It was August -- July or August

16

1  sometime.

2      **THE COURT:**  Yeah, he was arrested in this case in

3  May.  May 20th.

4      **MS. WASHINGTON:**  So he had been off for a while

5  before he even got to Lafayette County.  So, the facility

6  that he was in --

7      **THE COURT:**  But that's when he said he stopped

8  taking them because he didn't want to be moved to wherever.

9      **MS. WASHINGTON:**  Right.  He wanted to be closer to

10  home, so he didn't want to be so far away.  So I didn't see

11  any signs.  And I asked him pertinent questions.  However,

12  today is the first time he's talked to me about any anxiety.

13      **THE COURT:**  I guess I don't know, and you all don't

14  know at this point whether or not there's anything that, you

15  know, he told the marshals after his presence -- he's been

16  in, you know, federal court custody.  I would like to know

17  more.  I hesitate.  I don't know what --

18      Mr. Mims, do you have any thoughts?

19      **MR. MIMS:**  Not really anything.  No, Your Honor.

20      **THE COURT:**  I mean, I know we all don't really know

21  but -- and I'm not suggesting we have a psych exam or

22  something.  But I'm a little concerned if he's telling me

23  that he had paranoid thoughts just yesterday.  I know that

24  that's a --

25      **MS. WASHINGTON:**  He told me that he was nervous

1   there.

2              **THE COURT:** Oh, yeah, yeah.

3              **MS. WASHINGTON:** And I asked him if he was nervous.

4              **THE COURT:** Oh, yeah, that's understandable.

5              **MR. MIMS:** Your Honor, if I may weigh in just for a

6   second. My question, of course, is does he --

7              **THE COURT:** I know.

8              **MR. MIMS:** Does he understand what's going on

9   today? And you've touched on that in one of your questions,

10   and he answered, Yes. Of course, whether you accept that or

11   not is --

12              **THE COURT:** No, no. I believe him when I was

13   asking these questions. I was just -- anything when someone

14   tells me that they -- I mean, if it was just anxiety. It's

15   just the schizophrenia I'm worried about, just the degree of

16   that. If it has not been to a level where, you know, he

17   really is not understanding what's going on here, then I can

18   see that. And that doesn't appear to be the case. I'm just

19   overly cautious when it comes to this type of thing. Now, I

20   guess the question for me is, do I want to continue this

21   hearing or what would happen from here with regard to him

22   either being given some medication or being evaluated.

23              **MS. WASHINGTON:** He was in a -- he was -- before he

24   was moved, he was at a psych institution and --

25              **THE COURT:** Where?

18

1      **MS. WASHINGTON:**  I think, in Meridian, before he

2  came to Lafayette County.

3      **THE COURT:**  That's the reason he stopped taking the

4  medication, to get out of there; right?

5      **MS. WASHINGTON:**  Well, I think he got into the

6  trouble that he's in now, and that's what moved him to

7  Lafayette County.  But typically, when he talked to me about

8  paranoia, I'm looking for, are you hearing voices, and do

9  those voices affect how you're able to respond to me, how

10  you're able to proceed and things, and what's your response.

11  And I didn't get that from him.  And so I didn't delve

12  deeper into it.  But he was in a facility that was a psych

13  facility before this incident.

14      **THE COURT:**  I don't know enough about the state

15  system.  The psych facility, is that --

16      **MS. WASHINGTON:**  It's like --

17      **THE COURT:**  -- where they put --

18      **MS. WASHINGTON:**  It's where they put --

19      **THE COURT:**  -- everybody.  Did he have some issues,

20  or they did it so they could monitor him, or what?

21      **MS. WASHINGTON:**  Yes, from my knowledge.  Before he

22  was moved to the facility where he was.

23      **THE COURT:**  There is a couple of things that -- I'm

24  going to take a small recess, and I'll let y'all know.

25      **MS. WASHINGTON:**  Okay, thank you.

1        (BENCH RECESSED.)

2        **THE COURT:**  Mr. Smith, I'm going to take a short

3   recess.  You all can go have a seat until I come back.

4        **MS. WASHINGTON:**  Thank you.

5        (Recessed:  1:46 p.m.)

6        (Convened:  1:54 p.m.

7        **THE COURT:**  Be seated.

8        Counsel approach, please.

9                    **(BENCH CONFERENCE BETWEEN THE**

10                   **COURT AND COUNSEL CONTINUED AS**

11                   **FOLLOWS, TO WIT:)**

12       **THE COURT:**  My break was to see whether or not

13  anything had come up.  In fact, Mr. Frey actually told me --

14  he's answered the question of whether or not anything came

15  up with him when he was brought here on the writ as far as

16  his medical background was concerned, medications, or

17  anything like that.  He said there was nothing.  And then he

18  told a little bit further about what Mr. Smith reported to

19  him he was taking at the time that he came over, which was a

20  lot more than what he told me here today.  And the only

21  thing he did mention, and I'll ask him about this.

22       But, okay, Ms. Washington, there's something else

23  he told me, too.  That he mentioned Antisocial Disorder --

24  Antisocial Disorder in addition to the schizophrenia and

25  anxiety.

1      **PROBATION OFFICER:**  He didn't specifically state

2   schizophrenia.

3      **THE COURT:**  Okay.  He didn't.  Well, two different

4   things to me, but whatever.

5      So, then I was going to call the marshal and see

6   whether or not -- I mean, if I continued this thing, just

7   because I am a bit concerned about it -- would anything

8   happen medication-wise between the time I actually reset

9   this.  And apparently not, because none of his records -- I

10  mean, we don't know what he's taking, so -- or was taking.

11  So, anyway, go on.

12      **MS. WASHINGTON:**  Well, before he got here, he was

13  addicted -- while he was on the street, he was addicted to

14  meth.  And so --

15      **THE COURT:**  That's what --

16      **MS. WASHINGTON:**  While he was on meth, he said one

17  of the side effects of the drug is hearing voices while he

18  was instituted [sic], and I think what they did was they

19  diagnosed him with that because that's what he was

20  presenting as.  And so what he's saying is, as he got off

21  the drugs, the voices began to dissipate.  But a lingering

22  effect is the paranoia.  And so he doesn't necessarily -- he

23  says he's fine.

24      **THE COURT:**  Okay.  No, I hear --

25      **MS. WASHINGTON:**  He understands what's happening.

1    He's competent.  I think that this was a by-product of an

2    age-old addiction to a drug that he's now being weaned from

3    since he's been incarcerated.  And schizophrenia medicine

4    makes you lethargic.  You can barely move.  He's in an

5    environment where he needs to be alert.  And so he thought

6    it was in his best interest to get off the medicine, and to

7    get closer to home.  And that's what he explained to me.

8           **THE COURT:**  Okay.  I mean, you know, it does come

9    down to whether or not you understand everything that's

10   going on here today and whether or not you can assist your

11   attorney and everything.  I just had to pause and address

12   this for a minute, and just see if there was anything

13   different that would happen.

14          **MS. WASHINGTON:**  I assure you I spent hours with

15   him.  I would not pursue this if I thought that he was not

16   mentally competent.  I wouldn't do it.

17          **THE COURT:**  Okay.  Well, I was telling Mr. Frey --

18   and we'll get to that question in a minute -- I wanted to

19   ask about his addiction to drugs.  And maybe if I had asked

20   that first, he would have told me about the meth but -- and

21   we could kind of go from there.  But either way, we'll

22   continue.

23          **MS. WASHINGTON:**  Thank you, Your Honor.

24          **THE COURT:**  All right.

25                    **(BENCH CONFERENCE CONCLUDED AND**

22

1      **COUNSEL RETURNED TO SEATS.)**

2          **THE COURT:**  Would you all please approach again.

3          (Parties complied.)

4          **THE COURT:**  All right, Mr. Smith.  I'll tell you I

5   wanted to take a short break because I had -- I'm a bit

6   concerned about some of the drugs that you told me that you

7   were take-- some of the prescriptions that you told me you

8   were taking, and the reason for them.  And I really just

9   wanted to consult with counsel about that, particularly your

10  counsel, so she could tell me, you know, what it is that she

11  has observed in your behavior since she's been representing

12  you.  So I have some more questions for you in that regard,

13  if you don't mind.

14          And I'm going to jump ahead to one question I

15  normally ask.  Have you ever been addicted to drugs?

16          **THE DEFENDANT:**  Yes, ma'am.

17          **THE COURT:**  Can you tell me how long ago?  Just

18  give me some history on all that --

19          **THE DEFENDANT:**  I've done --

20          **THE COURT:**  -- and what drugs.

21          **THE DEFENDANT:**  I've done drugs all the way up

22  until May of last -- this year.

23          **THE COURT:**  How long, though?  When did you start

24  using?

25          **THE DEFENDANT:**  Since I was 13.

23

1    **THE COURT:**  Since you were 13.

2         What type of drugs?

3    **THE DEFENDANT:**  Cocaine and meth.

4    **THE COURT:**  Both about in equal use?

5    **THE DEFENDANT:**  Really not -- I mean, I've done a

6    lot of drugs.  But the main drug was meth.  The main drugs

7    was meth and alcohol.

8    **THE COURT:**  And so you used meth primarily up until

9    the time you were arrested on this charge in May -- since

10   May, you said?  Were --

11   **THE DEFENDANT:**  Yes, ma'am.

12   **THE COURT:**  Were there any consequences or any

13   effect on your personality, your mood, your demeanor, when

14   you were using meth?

15   **THE DEFENDANT:**  The meth, it made me more paranoid.

16   It made me hear things and see things.

17   **THE COURT:**  Okay.  Now, you did tell me earlier

18   that you -- since you've been -- since May that you are --

19   have been paranoid.

20   **THE DEFENDANT:**  I've been paranoid, but not as far

21   as like -- the drugs make me actually see and hear things.

22   But when I'm not on drugs, I don't.  I just feel like people

23   are watching me, and I just, other than they always -- I --

24   basically, it's just paranoia to the point to where I just

25   think people are against me.

24

1      **THE COURT:**  So, there's a difference in the

2   paranoia -- and you tell me.  Is there a difference in the

3   paranoia that is induced from your use of methamphetamine

4   and just an ordinary paranoia --

5      **THE DEFENDANT:**  Yes, ma'am.

6      **THE COURT:**  -- if you understand what I'm saying?

7      **THE DEFENDANT:**  Yes, ma'am.

8      **THE COURT:**  Okay.  So you did tell me that even as

9   recently as yesterday you felt paranoid?

10     **THE DEFENDANT:**  Yes, ma'am.  I felt paranoid, but

11  not like I would on drugs.  On drugs, it's paranoia and I'm

12  actually -- I'm seeing things and hearing things.  But it's

13  way -- it's totally different.

14     **THE COURT:**  Okay.  I mean, you seem alert now.  I

15  asked you earlier whether or not you were tired.  You

16  said -- no?

17     **THE DEFENDANT:**  No, ma'am.

18     **THE COURT:**  And how long have you -- you said

19  you've been using drugs since you were 13.

20     **THE DEFENDANT:**  Yes, ma'am.

21     **THE COURT:**  And you have not been using drugs since

22  May?

23     **THE DEFENDANT:**  No, ma'am.

24     **THE COURT:**  Have you had any adverse effects from

25  ceasing the use of drugs since May?

25

1      **THE DEFENDANT:**  Not that I -- not that I know.  No,

2  ma'am.

3      **THE COURT:**  Have you ever had any type of treatment

4  for drug addiction?

5      **THE DEFENDANT:**  I went to Pine Grove when I was

6  about 13 or 14 -- 14 or 15, something like that.

7      **THE COURT:**  That's the only time?

8      **THE DEFENDANT:**  I think it might have been 15.

9  Yes, ma'am.

10      **THE COURT:**  No other --

11      **THE DEFENDANT:**  When I was in prison, I've been to

12  A&D programs, but other than that.

13      **THE COURT:**  Okay.  And --

14      **THE DEFENDANT:**  I went to rehab in 2015 for three

15  days, but I left.

16      **THE COURT:**  Why?

17      **THE DEFENDANT:**  I couldn't even -- I really

18  couldn't tell you.  I just didn't want to be there.

19      **THE COURT:**  Now, what's important here today, and

20  the reason I'm asking you all these questions, is that you

21  fully are able to comprehend what's going to happen here

22  today, what is happening here today, that you fully

23  comprehend the consequences of pleading guilty, and that

24  you're able to assist your attorney with your case.  So as

25  to each one of those things, oftentimes -- and I'm not

26

1    saying all the times, but often, if you are suffering some

2    of the conditions that you described to me, sometimes that's

3    a problem.  So I have to rely upon what you tell me, which

4    is why I asked you all those questions about what

5    medications you were taking; you know, how you felt, whether

6    or not you were getting sleep, all of that.  It was

7    certainly not meant to embarrass you.  But these are

8    important things that I need to know to make a decision

9    about whether or not I believe you're competent to proceed

10   here today.

11          So in that regard, do you understand -- can you

12   tell me that you fully understand everything that's going to

13   happen today at this change of plea hearing?

14          **THE DEFENDANT:**  Yes, ma'am, I understand.

15          **THE COURT:**  And have you been able to have

16   meaningful discussions with your attorney about what is

17   happening, what will happen, and the consequences of

18   pleading guilty here today?

19          **THE DEFENDANT:**  Yes, ma'am.

20          **THE COURT:**  And I asked you at the beginning if

21   there was anything that you needed to speak with your

22   attorney about, or if you didn't understand anything that I

23   had asked, that you would tell me.  And thus far, you've had

24   no problems understanding what I've asked you about or

25   responding?

27

1    **THE DEFENDANT:**  I understand.

2    **THE COURT:**  And I just want to make sure that this

3   record is clear.  You told me about paranoia.  You told me

4   about schizophrenia.  You told me about three medications

5   that you were taking.  Anything else that you can recall

6   right now as far as any condition or diagnosis with regard

7   to medications that you're taking or anything that affects

8   your personality, your mood, anything to that effect?

9         (Defendant and counsel conferring.)

10    **THE DEFENDANT:**  I had a psych evaluation in my

11   county jail in 2016 when I violated my probation.

12    **THE COURT:**  Okay.

13    **THE DEFENDANT:**  They diagnosed me with Antisocial

14   Behavior Disorder, Unspecified Mood Disorder with psychotic

15   tendencies, and they diagnosed me with Alcohol Abuse

16   Disorder, Methamphetamine Abuse Disorder.  That's all I can

17   remember.

18    **THE COURT:**  And as I understand from what you said,

19   your being off drugs has alleviated or at least mitigated

20   those symptoms that you had, whether or not it was the, you

21   know, hearing voices, the paranoia.  Is that fair to say?

22    **THE DEFENDANT:**  When I'm on drugs, it's worse.  And

23   when I'm not on drugs, I mean, I still -- I still have

24   problems, but I can deal with them.  It's not -- it's

25   nothing that just gets out of hand.

1        **THE COURT:** Okay. Now, the medications that you

2  were on, being off of them, does that in any way affect your

3  ability to comprehend things?

4        **THE DEFENDANT:** No, ma'am.

5        **THE COURT:** Now, I know you've answered these

6  questions before. I'm just trying to be as thorough as I

7  can.

8        **THE DEFENDANT:** No, ma'am. I don't -- they don't

9  affect it all. I got off of them because they made me feel

10  like -- the drugs made me feel, like, zombied out [sic].

11  That's why I didn't take 'em. I can comprehend better.

12  Maybe if I was on the medicine, I might not be able to

13  comprehend as good. Might be a little -- my actions would

14  be slurred or something.

15        **THE COURT:** Uh-huh.

16        **THE DEFENDANT:** But, yeah, I have -- I understand

17  fully.

18        **THE COURT:** So from what I -- you're telling me

19  then, you're actually more lucid and you can comprehend

20  better being off the drugs --

21        **THE DEFENDANT:** Yes, ma'am.

22        **THE COURT:** -- as opposed to being on the

23  prescribed medications?

24        **THE DEFENDANT:** Yes, ma'am.

25        **THE COURT:** Uh-huh.

1          This does not affect your -- the competency finding

2    that I make here today.  But if a situation arose where upon

3    some review of your medical condition that you were

4    prescribed something else that didn't affect you in the way

5    that it has, made you feel like a zombie, then you would be

6    open to taking the medications to alleviate whatever little

7    bit is left of the conditions that you've described?

8          **THE DEFENDANT:**  I just really don't want to be on

9    any type of drugs.  Because I have a drug problem.  I don't

10   want to be on any drugs.

11         **THE COURT:**  Okay.

12         Outside of what you've told me then, is there any

13   other type of physical condition or disability that would in

14   any, any way affect your ability to understand what's going

15   to happen here today or the consequences of the guilty plea?

16         **THE DEFENDANT:**  No, ma'am.

17         **THE COURT:**  All right, Counsel, I have to ask you.

18   We've had some discussions up here at the bench.  Let me ask

19   -- start with you, Mr. Mims.  Do you have any concerns about

20   Mr. Smith's competency to enter a plea here today?

21         **MR. MIMS:**  I do not, Your Honor.

22         **THE COURT:**  Ms. Washington?

23         **MS. WASHINGTON:**  I do not, Your Honor.  We have --

24   we've talked for a substantial amount of time, and he's

25   completely understood everything that we talked about.  He

1    even gave input.  This is his decision.  He understood at

2    length some very critical issues, and he understands those

3    things.  And I don't have any doubt that he knows what he's

4    doing today.

5         **THE COURT:**  All right, Mr. Smith, then, based upon

6    this somewhat protracted discussion then, I find you

7    competent to enter a plea.  I will remind you though, if at

8    any point during this proceeding you feel that you are in a

9    state where you don't want to proceed, or if anything you

10   believe raises itself such that you shouldn't continue or it

11   would affect your ability to understand and assist your

12   counsel, then you let me know.  Do we agree?

13        **THE DEFENDANT:**  Yes, ma'am.

14        **THE COURT:**  All right.

15        Again, the Court finds that Mr. Smith is competent

16   to enter a plea.

17        Now, Mr. Smith, can you confirm for me that you

18   received a copy of the indictment pending against you in

19   this case?

20        **THE DEFENDANT:**  Yes, ma'am.

21        **THE COURT:**  Count 2 of that indictment -- and I'm

22   just going to summarize -- charges you with assault with a

23   dangerous weapon in violation of 18, United States Code,

24   §1959(a)(3) and (2).  Would you like to have the indictment

25   read, or is reading waived?

1    **THE DEFENDANT:**  We'll waive it.

2    **THE COURT:**  Okay.  Can you confirm for me that

3 you're fully aware of what you're charged with in Count 2?

4    **THE DEFENDANT:**  Yes, ma'am.

5    **THE COURT:**  And have you fully discussed the

6 charges in the indictment and the case in general with your

7 attorney?

8    **THE DEFENDANT:**  Yes, ma'am.

9    **THE COURT:**  With regard to Count 2, there are

10 certain elements of proof associated with that count, which

11 if your case went to trial the government would have to

12 prove against you beyond a reasonable doubt before you could

13 be found guilty.

14    Mr. Mims, would you please state those elements for

15 the record.

16    **MR. MIMS:**  Your Honor, the elements necessary to

17 prove Count 2 would be first:  That the Simon City Royals is

18 an enterprise.

19    Second:  That the Simon City Royals was engaged in

20 or its activities affected interstate or foreign commerce.

21    Third:  That the Simon City Royals engaged in

22 racketeering activity.

23    Fourth:  That the defendant committed an assault

24 with a dangerous weapon which caused serious bodily injury.

25    And fifth:  That the assault with a dangerous

32

1  weapon was committed for the purpose of maintaining or

2  increasing the defendant's position in the organization.

3       **THE COURT:**  Now, Mr. Smith, having heard those

4  elements, do you have any questions about them or the nature

5  of the charges in this case?

6       **THE DEFENDANT:**  No, ma'am.

7       **THE COURT:**  We're going to turn next then to the

8  maximum possible penalties applicable to your case.

9       And they are:  Imprisonment for 20 years,

10 supervised release after imprisonment for not more than 3

11 years, a fine of not more than $250,000, and a special

12 assessment of $100.

13      If you plead guilty here today and the Court

14 accepts your plea, I'm going to sentence you, of course.  Do

15 you understand that if you're sentenced to serve time in

16 prison, that you may be subject to a period of supervised

17 release after you've been released from prison?

18      **THE DEFENDANT:**  Yes, ma'am.

19      **THE COURT:**  Do you understand then that if you

20 violate one or more of the conditions of supervised release,

21 you may be returned to prison for all or part of the

22 supervised release period?

23      **THE DEFENDANT:**  Yes, ma'am.

24      **THE COURT:**  Now, do you have any questions at all

25 about the maximum possible penalties that I just mentioned?

33

1    **THE DEFENDANT:** No, ma'am.

2    **THE COURT:** Do you understand all of these

3 penalties?

4    **THE DEFENDANT:** Yes, ma'am.

5    **THE COURT:** Turning next then to the government's

6 evidence, and in particular, the evidence that the

7 government would be prepared to prove against you if your

8 case went to trial.

9    Mr. Mims, what is the government's evidence against

10 Mr. Smith?

11    **MR. MIMS:** If this matter proceeded to trial, the

12 government would have introduced evidence to establish the

13 following facts beyond a reasonable doubt.

14    The Simon City Royals gang constituted an

15 enterprise that engaged in racketeering activity in that it

16 is and was throughout the timeframe of the charges in the

17 indictment a group of individuals associated in fact whose

18 members functioned as a continuing unit for a common purpose

19 of achieving the objectives of the gang.

20    Among those objectives were the following:

21    Promoting, protecting, and enhancing the authority,

22 reputation, and standing of the Simon City Royals through

23 the use of intimidation, threats, possession of weapons, and

24 assaults, maintaining control over and protecting the

25 territory of the gang through acts of intimidation, threats,

1   and violence, enriching its members and associates through,

2   among other things, the distribution of controlled

3   substances, protecting the gang and its members from

4   detection, apprehension, and prosecution by law enforcement

5   authorities, enforcing its authority and power by

6   disciplining and punishing members and associates who do not

7   comply with the Simon City Royals' codes or rules, and

8   retaliating with acts of violence and intimidation against

9   non-members and rival gang members who committed acts

10  against the gang's members and associates.

11         The Simon City Royals was engaged in and its

12  activities affected interstate commerce.

13         The Simon City Royals engaged in criminal activity

14  throughout the state of Mississippi, including in this

15  district.

16         The primary crimes committed by members of this

17  district were drug trafficking, money laundering, murder,

18  and identity fraud.  For example, Simon City Royal members

19  in Greenwood, Mississippi delivered narcotics on behalf of

20  the Simon City Royal members inside and outside of prison.

21         As it relates to Jeremy Smith, Smith joined the

22  Simon City Royals in 2011.  As a member, Smith was expected

23  to follow orders passed down by higher-ranking members of

24  both the Simon City Royals and the Gangster Disciples.  He

25  paid contributions and attended meetings.  In these

1    meetings, gang business was discussed.  Gang leaders would

2    issue instructions, and violations; that is, physical

3    beatings, would be issued against gang members who had

4    violated gang rules or who had failed to keep current in

5    their dues payments.

6           On or around May 15, 2018, two individuals; that

7    is, D.R. and C.B., who were imprisoned in the East

8    Mississippi Correctional Facility, located in Meridian,

9    Mississippi, disrespected high-ranking Simon City Royal

10   members.  The leadership members ordered an assault on

11   victims D.R. and C.B.  This order was then sent to the

12   defendant, along with other gang members.  After receiving

13   the order, several of the gang members, including Jones,

14   Vaughn, and Johnson, carried shanks; that is, metal objects

15   sharpened at one end, and used them to assault both victims.

16   The people involved in the assault were the following:

17   Justin Hannah, Wilton Johnson, Donald Jones, Carl McMillian,

18   Arvis Tolbert, James Vaughn, Joe Johnson and Jeremy Smith.

19   During the attack, Smith was securing a specific area, while

20   Jones and Johnson ambushed victim one, C.B.  When the ambush

21   occurred, victim two, D.R., fled down the stairs to try to

22   grab a mop to defend himself.  Smith and other gang members

23   chased him, tackled him to the ground, and proceeded to

24   beat, kick and stab him.  Eventually it stopped when MDOC

25   officers entered the area of the prison.  Both victims as a

1    result of these attacks received serious bodily injuries.

2    The defendant was aware that he was expected to participate

3    in the assault on the rival gang members, and that serious

4    consequences would occur if he failed to do so.  Those

5    consequences included being ostracized from the gang, losing

6    the respect of his fellow gang members, and being subject to

7    a beating and expulsion from the gang.  Afterwards, prison

8    staff recovered items used by the Gangster Disciples, and

9    the Simon City Royal members in the assault with a dangerous

10   weapon, including a 22-inch metal pipe, an 8-inch metal

11   hook, a 12-inch wooden stick, and a 7-inch shank.

12            Investigators reviewed the surveillance video

13   cameras from the prison and identified Carl McMillian, Joe

14   Johnson, James Vaughn, Justin Hannah, Jeremy Smith, Arvis

15   Tolbert, and Donald Jones as participants in the stabbing.

16            Finally, the United States asks the Court to take

17   judicial notice that Greenwood is in the Northern District

18   of Mississippi.

19            This Statement of Facts is provided to assist the

20   Court in determining whether a factual basis exists for

21   defendant's plea of guilty.  The Statement of Facts does not

22   contain each and every fact known to the defendant and to

23   the United States concerning the defendant's and/or others'

24   conduct or other matters.

25            **THE COURT:**  Mr. Smith, did you hear and understand

1　everything that the government's counsel said as to the

2　evidence against you in this case?

3　　　　　　**THE DEFENDANT:** I understand.  But I didn't stab

4　anyone.  I had the broomstick.

5　　　　　　**THE COURT:** I'm sorry?

6　　　　　　**THE DEFENDANT:** I didn't stab anyone.

7　　　　　　**THE COURT:** Okay.

8　　　　　　**THE DEFENDANT:** Because I had the broomstick.  I

9　just wanted to --

10　　　　　　**THE COURT:** Because you have -- I'm sorry, I'm

11　just --

12　　　　　　**THE DEFENDANT:** I had the broomstick.  I didn't

13　stab anyone.

14　　　　　　**THE COURT:** You had the broom stick.  Okay, I'm

15　sorry.  I couldn't understand you.  Speak up.  Or maybe even

16　move the mic to you a little bit more.

17　　　　　　**THE DEFENDANT:** Is that all right?

18　　　　　　**THE COURT:** Uh-huh.

19　　　　　　**THE DEFENDANT:** But I understand.  Yes, ma'am.

20　　　　　　**THE COURT:** Is that the only point of disagreement

21　you have with regard to the evidence that the government's

22　counsel just stated?

23　　　　　　**THE DEFENDANT:** Yes, ma'am.

24　　　　　　**THE COURT:** Taking that into account then, is

25　everything, subject to what you said with respect to the

1  evidence against you, true and correct?

2          **THE DEFENDANT:**  Yes, ma'am.

3          **THE COURT:**  And to the extent that you took issue

4  with one part of the facts as stated by the evidence that

5  the government said, does your conduct still satisfy the

6  elements of proof as to Count 2?

7          **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  Will you be pleading guilty voluntarily

9  and of your own free will here today because you are indeed

10  guilty of the charges in Count 2?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  Has anyone threatened you, threatened

13  anyone close to you, or in any way attempted to force you to

14  plead guilty?

15          **THE DEFENDANT:**  No, ma'am.

16          **THE COURT:**  The Court finds then that there is a

17  factual basis for the Mr. Smith to plead guilty to the

18  charges in Count 2.

19          Regarding the plea agreement between Mr. Smith and

20  the government, Mr. Mims, would you please state its terms

21  into the record.

22          **MR. MIMS:**  Your Honor, the defendant agrees to

23  plead guilty under oath to Count 2 of the indictment, which

24  charges a violation of Title 18, U.S. Code, §§1959(a)(3) and

25  §(2).

39

1          The government agrees not to charge the defendant

2    with any other offenses arising from or related to this

3    charge.  This agreement is limited to the U.S. Attorney's

4    Office for the Northern District of Mississippi and does not

5    bind any other federal district or state or local

6    authorities.

7          Should the defendant breach or otherwise violate

8    this agreement, the government would be released from any

9    sentencing recommendations or agreements the parties have

10   reached herein and would become free to argue for any

11   sentence within statutory limits.

12         The defendant understands that if he breaches this

13   plea agreement, that any statement made during proffers by

14   the defendant to law enforcement agents, or any other

15   statements made in the course of the plea colloquy may be

16   used against the defendant.  The defendant understands the

17   Court may order restitution and agrees that restitution is

18   not limited to the count of conviction.

19         Apart from being advised of the applicability of

20   the sentencing guidelines, no promise has been made to the

21   defendant as to what punishment the Court might impose.

22         The defendant's agreement is knowing, free, and

23   voluntary.  The defendant is pleading guilty because he is,

24   in fact, guilty.

25         Your Honor, there's also a 11(c)(1)(C) agreement

1　that I'm happy to address, if the Court wants me to do so.

2　　　　**THE COURT:**　Thank you.

3　　　　Mr. Smith, did the government's attorney accurately

4　state the substance of the plea agreement as you understand

5　its terms to be?

6　　　　**THE DEFENDANT:**　I don't understand the -- the

7　common point --

8　　　　**MS. WASHINGTON:**　The colloquy.

9　　　　**THE DEFENDANT:**　-- I don't understand it.

10　　　　**THE COURT:**　Let me -- take a few minutes and

11　consult with your counsel, and then I'll ask you that

12　question again.

13　　　　(Counsel and defendant conferring.)

14　　　　**MS. WASHINGTON:**　Your Honor, he's just concerned

15　with the language here, and I explained that him.  It does

16　not mean that he cooperated with law enforcement.  And he

17　just wanted to make sure that that language was pointed out

18　there.  And I did explain to him that it does not mean that.

19　　　　**THE COURT:**　Do you understand then what that means,

20　as explained to you by your attorney, Mr. Smith?

21　　　　**THE DEFENDANT:**　Yes, ma'am.

22　　　　**THE COURT:**　So let me ask that question again.  I'm

23　going to back up again.  And, again, you stop us.  Because

24　what is important here is that you understand everything

25　that's going on, including the terms of this plea agreement.

41

1         Your understanding of that agreement as stated by

2 the government's counsel, was it accurate?

3       **THE DEFENDANT:**  Yes, ma'am.

4       **THE COURT:**  And in particular, the government's

5 attorney mentioned a provision of the plea supplement.  And

6 the only question I want to ask you about that is, do you

7 understand that if I decide not to accept the recommendation

8 in that plea supplement, that you may withdraw your guilty

9 plea?

10       **THE DEFENDANT:**  Yes, ma'am.

11       **THE COURT:**  Do you understand that if you decide

12 not to withdraw your guilty plea, under that circumstance,

13 that I may sentence you without considering any

14 recommendation in the plea agreement?

15       **THE DEFENDANT:**  Yes, ma'am.

16       **THE COURT:**  Did you have the opportunity to read

17 and discuss the contents of the plea documents with your

18 attorney?

19       **THE DEFENDANT:**  Yes, ma'am.

20       **THE COURT:**  And Mr. Mims, would you show him the

21 original copy of the agreement, please.

22       (Counsel complied.)

23       **THE COURT:**  I have one question for you.  Mr.

24 Smith, and that is primarily whether or not what is

25 represented to be your signature on those documents is

42

1    indeed where you and no one else signed?

2           **THE DEFENDANT:**  Yes, ma'am.

3           **THE COURT:**  Do you understand all of the terms of

4    the plea agreement?

5           **THE DEFENDANT:**  Yes, ma'am.

6           **THE COURT:**  Mr. Mims, you can go ahead and hand it

7    to Ms. Thomas.

8           (Counsel complied.)

9           **THE COURT:**  I'm going to hand this agreement back

10   to you all, Counsel.  I just have a couple of questions I

11   just want to confirm for purposes of this proceeding.

12          With regard to the plea supplement and plea

13   agreement, Ms. Washington, your bar number is not listed.

14   So that may be helpful.

15          But with respect to the plea supplement, it goes

16   from paragraph four to paragraph six, and I just want the

17   parties to confirm that that is what was intended and

18   nothing was left out in that regard.

19          **MR. MIMS:**  That is correct, Your Honor.

20          **MS. WASHINGTON:**  It's accurate, Your Honor.

21          **THE COURT:**  All right, I'm going to hand the

22   documents back to Ms. Thomas to hand back.  And Ms.

23   Washington, if you would just add your bar number.

24          **MS. WASHINGTON:**  Your Honor, if I may confer with

25   the government for just a moment, please?

43

1        **THE COURT:**  You may.

2             (Counsel confer.)

3        **MR. MIMS:**  Your Honor, if I may address something

4    that counsel opposite brought up to me just now.

5        **THE COURT:**  Uh-huh.

6        **MR. MIMS:**  In paragraph five of the plea agreement,

7    it states that defendant understands that if he breaches his

8    plea agreement any statements made during proffers by the

9    defendant to law enforcement agents or any statements made

10   in the course of plea colloquy may be used against him.  The

11   defendant has not made any statements.  He's not made any

12   proffers to law enforcement agents.  He does not want there

13   to be any indication that people may see this on the record

14   and think he has.  And I believe defense counsel would like

15   to strike that part of this paragraph.  I'm okay with that,

16   if the Court is okay with us striking through it.

17       **THE COURT:**  It's you all's plea agreement.

18   Whatever you choose to do, that would be fine.  I just ask

19   in the next situation you all take care of this before we

20   have the hearing.

21       **MR. MIMS:**  Yes, ma'am.

22            (Counsel confer.)

23       **THE COURT:**  On the plea agreement, paragraph five,

24   whose initials are near the area -- whose initials are

25   these?

1          **MR. MIMS:**  Your Honor, on the left is Robert Mims

2     for the government.

3          **THE COURT:**  Okay.

4          **MS. WASHINGTON:**  And in the middle is counsel for

5     the defendant, Victoria Washington.

6          **THE COURT:**  And did Mr. Smith actually initial this

7     as well?

8          **THE DEFENDANT:**  Yes, ma'am.

9          **THE COURT:**  Okay.

10         Mr. Smith, you understand the modification made

11    here, do you?

12         **THE DEFENDANT:**  Yes, ma'am.

13         **THE COURT:**  And that is to strike out that sentence

14    in paragraph five regarding the plea colloquy?

15         **THE DEFENDANT:**  Yes, ma'am.

16         **THE COURT:**  You understand the reason for it?

17         **THE DEFENDANT:**  Yes, ma'am.

18         **THE COURT:**  Okay.  And, again, it's y'all's plea

19    agreement.  I just want to make sure that you're on board

20    with the revision that was made.

21         All right, the plea agreement will be filed, and

22    the plea supplement filed under seal.

23         I may have asked this earlier.  But,

24    Ms. Washington, can you confirm that before Mr. Smith signed

25    the plea documents, that you discussed the terms with him as

1  well as the facts of the case and what the government has

2  relative to the case?

3            **MS. WASHINGTON:**  Yes, Your Honor.

4       **THE COURT:**  Do you believe that Mr. Smith will be

5  entering into this plea freely and voluntarily with full

6  knowledge of the charges and the consequences of the guilty

7  plea?

8            **MS. WASHINGTON:**  Yes, Your Honor.

9       **THE COURT:**  Mr. Smith, what we're going to turn to

10 next then are some questions, and more so, things that I

11 want to advise you of with respect to sentencing if you

12 plead guilty here today.

13           Do you understand, first, that the offense in Count

14 2 is a felony?

15           **THE DEFENDANT:**  Yes, ma'am.

16      **THE COURT:**  Do you understand that since it is a

17 felony, if you plead guilty to it and the Court accepts your

18 plea, then you may be deprived of the right to vote, hold

19 public office, sit on a jury, and possess any kind of

20 firearm whatsoever?

21           **THE DEFENDANT:**  Yes, ma'am.

22      **THE COURT:**  Also with respect to sentencing, the

23 Court will by guided by the sentencing guidelines issued by

24 the sentencing commission.  Now, these guidelines are only

25 advisory.  And that means the Court is not bound to follow

46

1    them, if the Court chooses not to do so.  Can you confirm

2    for me that you and your attorney have discussed how these

3    sentencing guidelines might apply to your case?

4         **THE DEFENDANT:**  Yes, ma'am.

5         **THE COURT:**  Do you understand that your guideline

6    sentence will not be able to be determined until after there

7    has been a presentence report prepared, and it will also

8    contain reported facts about you as well as the probation

9    officer's recommendation as to the sentencing guidelines

10   applicable to your case?

11        **THE DEFENDANT:**  Yes, ma'am.

12        **THE COURT:**  Do you understand that the Court will

13   not be able to ultimately determine what your guideline

14   sentence is until you've had the opportunity to challenge

15   the reported facts and the guidelines recommended by the

16   probation officer?

17        **THE DEFENDANT:**  Yes, ma'am.

18        **THE COURT:**  Do you understand that under some

19   circumstances the Court has the authority to depart upward

20   or downward from the guidelines, which means the Court may

21   impose a harsher sentence or one that is not as harsh as the

22   one that's called for by the guidelines?

23        **THE DEFENDANT:**  Yes, ma'am.

24        **THE COURT:**  Do you understand that if you are

25   sentenced to serve time in prison, you will not be sentenced

1    to parole, because parole has been abolished in this federal

2    court?

3           **THE DEFENDANT:**  Yes, ma'am.

4           **THE COURT:**  Do you understand that regardless of

5    the guidelines range, the Court may sentence you to a term

6    of imprisonment up to the maximum time allowed by law?  And

7    we discussed those maximums earlier.

8           **THE DEFENDANT:**  Yes, ma'am.

9           **THE COURT:**  Do you understand that under some

10   circumstances you or the government may have the right to

11   appeal any sentence that I impose?

12          **THE DEFENDANT:**  Say that again.

13          **THE COURT:**  Do you understand under some

14   circumstances you and the government may appeal any sentence

15   that I impose?

16          **THE DEFENDANT:**  Yes, ma'am.

17          **THE COURT:**  I have one final series of questions

18   for you.  But I want to ask you about your legal

19   representation first.

20          Are you satisfied with your attorney's

21   representation of you?

22          **THE DEFENDANT:**  Yes, ma'am.

23          **THE COURT:**  And have you had sufficient time to

24   discuss your case with your attorney, and have your attorney

25   answer any and all of your questions to your full

48

1   satisfaction?

2           **THE DEFENDANT:**  Yes, ma'am.

3           **THE COURT:**  And do you believe that your attorney

4   has represented your best interest in this case?

5           **THE DEFENDANT:**  Yes, ma'am.

6           **THE COURT:**  These final set of questions concern

7   your constitutional rights, more particularly your giving up

8   of these rights if you plead guilty here today.  A lot of

9   them will begin with the questions that I -- with the

10  introduction I used before with, Do you understand.  So,

11  just bear with me as we go through them.

12          Do you understand that you have the right to

13  maintain a plea of not guilty?

14          **THE DEFENDANT:**  Yes, ma'am.

15          **THE COURT:**  Do you understand that under the laws

16  of this country, you have the right to a speedy and public

17  trial on the charges against you?

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  Do you understand that if you had a

20  trial, you would be presumed innocent and the government

21  would have to prove your guilt beyond a reasonable doubt

22  before you could be found guilty?

23          **THE DEFENDANT:**  Yes, ma'am.

24          **THE COURT:**  Do you understand that if you had a

25  trial, the government's witnesses would have to come into

49

1   court and testify in your presence, that your attorney could

2   cross-examine the government's witnesses, and your attorney

3   could call witnesses to testify on your behalf?

4           **THE DEFENDANT:** Yes, ma'am.

5           **THE COURT:** Do you understand as well that if you

6   had a trial, you would have the right to require that

7   witnesses come to court and testify?

8           **THE DEFENDANT:** Yes, ma'am.

9           **THE COURT:** Do you understand that if you had a

10   trial you would have the right to testify in your own

11   defense, but if you chose not to exercise that right, the

12   fact that you did not testify could not be used against you?

13           **THE DEFENDANT:** Yes, ma'am.

14           **THE COURT:** Do you understand that if you had a

15   trial and were convicted, you would have the right to appeal

16   not only your conviction but also your sentence?

17           **THE DEFENDANT:** Yes, ma'am.

18           **THE COURT:** Based upon your questions then,

19   Mr. Smith, I want you to confirm for me that you understand

20   that if you plead guilty here today and the Court accepts

21   your plea, there's not going to be a trial, and I'm going to

22   proceed with sentencing you at a point to be determined

23   after I've considered a presentence investigation report?

24           **THE DEFENDANT:** Yes, ma'am.

25           **THE COURT:** Do you have any questions at all about

50

1  your constitutional rights or your giving up of your

2  constitutional rights?

3          THE DEFENDANT:  No, ma'am.

4      THE COURT:  Has your attorney specifically

5  discussed giving up these rights with you?

6          THE DEFENDANT:  Yes, ma'am.

7      THE COURT:  Having discussed giving up these rights

8  with your attorney, is it still your wish to plead guilty to

9  Count 2 of the indictment?

10         THE DEFENDANT:  Yes, ma'am.

11     THE COURT:  Then my question to you, Mr. Smith, is,

12 in the case of the United States versus Jeremy Smith, how do

13 you plead to Count 2 of the indictment?

14         THE DEFENDANT:  Guilty.

15     THE COURT:  It is the Court's finding in this case

16 then that, Mr. Smith, you are fully competent and capable of

17 entering an informed plea, that you're aware of the nature

18 of the charges and the consequences of the guilty plea, and

19 that your guilty plea is knowing and voluntary, supported by

20 an independent basis and fact and not the result of force,

21 threats, or promises.  So, the Court accepts your plea, and

22 you're now adjudged guilty of the charges in Count 2 of the

23 indictment.

24         The Court also accepts the plea agreement presented

25 to the Court today.

51

1        After this point, Mr. Smith, I mentioned that the

2  presentence investigation report will be prepared.  It will

3  be prepared by the probation office.  You're going to be

4  questioned for purposes of that report.  I encourage you to

5  have your attorney present while you're being questioned by

6  a probation officer.  I also encourage you to be as

7  forthright and honest in answering those questions.  They

8  are important because your responses will be incorporated

9  into the presentence investigation report.  I do rely upon

10  it as the primary source for determining what your sentence

11  will be, what I believe would be an appropriate sentence in

12  your case.  So it is important that you answer those

13  questions honestly, even if it's something you would rather

14  not speak about.

15        I'm going to set your sentencing hearing for

16  January 22nd.

17        Any conflicts with that date that counsel is aware

18  at this point?

19        **MR. MIMS:**  No, Your Honor.

20        **MS. WASHINGTON:**  No, Your Honor.

21        **THE COURT:**  Would you like to consult something,

22  Ms. Washington?

23        **MS. WASHINGTON:**  Yes.

24        **THE COURT:**  Please.

25        **MS. WASHINGTON:**  May I?

52

1      **THE COURT:**  Yes.

2          (Brief pause.)

3      **MS. WASHINGTON:**  No, Your Honor, I have no

4  conflicts with that date.

5      **THE COURT:**  Sentencing will be set for

6  January 22nd.  I'm going to enter an order with that date.

7          At your sentencing hearing, Mr. Smith, you will

8  have the opportunity to speak on your own behalf if you

9  wish, as well as your counsel.  If you also wish, you may

10  submit reference letters on your behalf.  You're not

11  required to do so.  And even if you do submit them, you're

12  not required to do so by a certain deadline.  I just

13  encourage you to try to get them in as soon as possible.  Go

14  ahead and ask those persons who you may want to write a

15  letter on your behalf to write them so they can be provided

16  to your attorney and then filed on the docket.

17          Is there anything further from anyone?

18      **MR. MIMS:**  No, ma'am.

19      **PROBATION OFFICER:**  Your Honor --

20      **THE COURT:**  Yes.

21      **PROBATION OFFICER:**  -- if I may, I provided

22  Ms. Washington with a release form to obtain records for the

23  defendant.

24      **THE COURT:**  You may.  I take it that's something

25  y'all may speak about during your interview.  Or is it

53

1    something you need --

2         **PROBATION OFFICER:**  Well, in this case, Your Honor,

3    considering the volume of what we need to get, it's -- I

4    would rather have it now.  Because sometimes those

5    interviews may be a week or two delayed.

6         **THE COURT:**  Okay.  You want to do that, get it --

7         **PROBATION OFFICER:**  She already has it, Your Honor.

8    I would like to have him sign it before he leaves the

9    courtroom.

10        **MS. WASHINGTON:**  Sure.

11        **PROBATION OFFICER:**  Thank you.

12        **THE COURT:**  I'll ask, though, Mr. Smith, to the

13   extent that you heard what the probation officer is asking

14   for, if you have any questions about that, you certainly can

15   speak with your attorney about it before you sign it.

16        **THE DEFENDANT:**  Yes, ma'am.

17        **THE COURT:**  But go ahead.

18        (Defendant and counsel conferring.)

19        **THE COURT:**  All right.  Any questions you have

20   about that form at all?

21        **THE DEFENDANT:**  No, ma'am.

22        **THE COURT:**  All right.  That being the case then,

23   Mr. Smith, I will see you January 22nd.  You are remanded to

24   the custody of the United States Marshal.

25        This matter is adjourned.

54

1          MS. WASHINGTON:   Thank you, Your Honor.

2          (Recessed:  2:37 p.m.)

55

1                        <u>CERTIFICATE</u>

2       I, Brenda D. Blackburn, Federal Official Court Reporter,

3   in and for the United States District Court for the Northern

4   District of Mississippi, do hereby certify that pursuant to

5   Section 753, Title 28, United States Code, that the

6   foregoing 54 pages are a true and correct transcript of the

7   stenographically reported proceedings held in the

8   above-entitled matter and that the transcript page format is

9   in conformance with the regulations of the Judicial

10  Conference of the United States.

11      Witness my hand, this <u>28th</u> day of February, 2020.

12

13      <u>/s/Brenda D. Blackburn</u>

14      BRENDA D. BLACKBURN, RPR, CCR NO. 1087
        Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25