1

```
 1              UNITED STATES DISTRICT COURT.
             NORTHERN DISTRICT OF MISSISSIPPI
 2                   OXFORD DIVISION

 3   UNITED STATES OF AMERICA              PLAINTIFF

 4   VS.                                   NO. 3:19-CR-65-9

 5   GREGORY MOFFETT                       DEFENDANT

 6

 7                 CHANGE OF PLEA HEARING

 8

 9           BEFORE HONORABLE DEBRA M. BROWN
           CHIEF UNITED STATES DISTRICT JUDGE
10

11              Greenville, Mississippi
                   March 2, 2022
12

13   APPEARANCES:

14   For the Government:   SCOTT F. LEARY, ESQUIRE
                           U.S. ATTORNEY'S OFFICE
15                         900 Jefferson Avenue
                           Oxford, Mississippi  38655
16

17   For the Defendant:    ROBERT W. DAVIS, ESQUIRE
                           FEDERAL PUBLIC DEFENDER'S OFFICE
18                         1200 Jefferson Avenue
                           Oxford, Mississippi  38655
19

20   Court Reporter:       BRENDA D. BLACKBURN, RPR, CCR #1087
                           FEDERAL OFFICIAL COURT REPORTER
21                         305 Main Street
                           Greenville, Mississippi  38701
22

23

24

25
```

1     (CALL TO ORDER OF COURT AT 11:05 A.M.)

2          **THE COURT:**  Good morning.  Be seated, please.

3     The Court calls the United States of America versus

4 Gregory Moffett, 3:19-CR-65.  This is a change of plea hearing.

5     Who is here as counsel for the government?

6          **MR. LEARY:**  Scott Leary, Your Honor.

7          **THE COURT:**  And counsel for the defendant?

8          **MR. DAVIS:**  Robert Davis, Your Honor.

9          **THE COURT:**  And our representative from probation?

10          **PROBATION OFFICER:**  Andrew Fountain from probation,

11 Your Honor.

12          **THE COURT:**  Thank you.  You-all, you may be seated.

13     You-all may either remain at counsel table, if you wish,

14 or come to the podium.  It is up to you.  If you remain at

15 counsel table, just make sure you have a microphone directly in

16 front of you so that the court reporter can hear everything

17 that's being said.

18     Let's start by having the oath administered to the

19 defendant.

20          **COURTROOM DEPUTY:**  Please raise your right hand.

21     (OATH ADMINISTERED BY COURTROOM DEPUTY.)

22          **THE COURT:**  Be seated, please.

23     **MR. DAVIS:**  Your Honor.

24     **THE COURT:**  Yes, sir.

25          **MR. DAVIS:**  If it please the Court, if the Court is

1    comfortable with us approaching the podium, I would prefer

2    that.

3              THE COURT:  Okay.  I certainly am.

4         And, Mr. Leary, if you would like to -- I know typically,

5    the government uses the Elmo mike.  So if you would like to

6    move it --

7              MR. LEARY:  Thank you, Judge.

8              THE COURT:  -- down towards you, that would be fine.

9              MR. LEARY:  Thank you.

10             MR. DAVIS:  Thank you, Your Honor.

11             THE COURT:  Sir, are you Gregory Moffett?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Mr. Moffett, what is your full legal

14   name?

15             THE DEFENDANT:  Gregory Darnell Moffett.

16             THE COURT:  D-a-r-n-e-l-l?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Mr. Moffett, do you understand that

19   you're now under oath and if you answer any question I ask you

20   falsely, your false answer may be used against you in a

21   prosecution for perjury for making a false statement?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Do you understand you have the right to

24   remain silent and not answer any of the Court's questions?

25             THE DEFENDANT:  Yes, ma'am.

4

1          **THE COURT:**  Now, I have been advised, Mr. Moffett,

2     that you now wish to plead guilty to Count 1 of the Second

3     Superseding Indictment pursuant to a written Plea Agreement

4     with the government.  Is that correct?

5          **THE DEFENDANT:**  Yes, ma'am.

6          **THE COURT:**  Mr. Moffett, I'm going to ask you just

7     speak up a little louder.  I can hear you because you're close.

8     But, again, I want to make sure that our court reporter hears

9     everything that you say.

10          **THE DEFENDANT:**  Yes, ma'am.

11          **THE COURT:**  I'm going to have a number of questions

12     for you, Mr. Moffett.  These questions are designed to make

13     sure that you fully understand your rights and this proceeding.

14     If you do not understand a question I ask you, let me know

15     immediately, and I'll clarify for you.  At any point in this

16     proceeding if you would like to speak with your attorney, just

17     stop and let me know that as well, even if there's a question

18     posed.  Are we in agreement about that?

19          **THE DEFENDANT:**  Yes, ma'am.

20          **THE COURT:**  How old are you, Mr. Moffett?

21          **THE DEFENDANT:**  47.

22          **THE COURT:**  And what's the highest level of school

23     that you've completed?

24          **THE DEFENDANT:**  I have a high school diploma, a GED,

25     and a year and a semester of college.

1        **THE COURT:**  You have a diploma and a GED?

2        **THE DEFENDANT:**  Yes, ma'am.  I got --

3        **THE COURT:**  How did that happen?

4        **THE DEFENDANT:**  I got suspended the first -- the

5    first day of my senior year.  I went to training school, and I

6    got my GED.  I obtained my GED in training school.  But when I

7    got out, I still had enough credits to graduate, and they still

8    gave me my diploma.

9        **THE COURT:**  Okay.  Well, that is wonderful.  I never

10   heard of that before.  But very well.

11       Now, Mr. Moffett, have you consumed any medication, drugs,

12   alcohol, or any other substance that would impair your ability

13   to understand what is going to happen here today?

14       **THE DEFENDANT:**  I don't do any drugs.  I don't drink.

15   I don't smoke cigarettes.  I don't do none of that.  And as far

16   as medication, yes, I take my daily medications.

17       **THE COURT:**  Okay.  Let's talk about your medication

18   then.  How often are you required to take it?

19       **THE DEFENDANT:**  I take my medicines every day on a

20   day-to-day basis.  But I take --

21       **THE COURT:**  Is it once a day?

22       **THE DEFENDANT:**  Well, yes, ma'am.  I have -- I take

23   an anti [sic] for my stomach.  I take that in the morning.  But

24   the rest of my meds, I take at night.

25       **THE COURT:**  Okay.  So you take stomach medication.

6

1  What are the other -- you don't have to tell me the name of the
2  medications, but what are they for?

3        **THE DEFENDANT:**  I take some high blood pressure
4  medication, cholesterol, and plus I take some psychiatric
5  medication.

6        **THE COURT:**  Okay.  Now, to the extent that you take
7  those medications at least once a day, you said you did take
8  the stomach medication this morning?

9        **THE DEFENDANT:**  Yes, ma'am.

10       **THE COURT:**  Do you typically take the blood pressure
11 and the cholesterol medication and the other medication in the
12 morning?

13       **THE DEFENDANT:**  No, ma'am.  I take it at night.

14       **THE COURT:**  Okay.  Now, whether you take it at night
15 or in the morning, does any of the medication affect you in any
16 way, like, make you feel sleepy, or do you feel hyper, or
17 anything to that extent?

18       **THE DEFENDANT:**  You're saying, like, as of right now?

19       **THE COURT:**  Uh-huh.

20       **THE DEFENDANT:**  Oh, no, ma'am.  Not as of right now.
21 No, ma'am, it doesn't.

22       **THE COURT:**  So the medications that you took last
23 night and this morning have had no affect on your general
24 feeling today?

25       **THE DEFENDANT:**  No, ma'am.

1    **THE COURT:**  Okay.  Based upon your earlier answer,

2 have you ever been treated or hospitalized for an addiction to

3 drugs?  I almost feel like I know that answer to that.

4    **THE DEFENDANT:**  (Laughing.)

5    **THE COURT:**  But can you tell me?

6    **THE DEFENDANT:**  Could you repeat that, please, ma'am?

7    **THE COURT:**  Have you ever been treated or

8 hospitalized for an addiction to drugs?

9    **THE DEFENDANT:**  No, ma'am.

10    **THE COURT:**  Have you ever been treated or

11 hospitalized for any kind of a mental illness?

12    **THE DEFENDANT:**  No, ma'am.

13    **THE COURT:**  Now, you did tell me that you do take

14 some type of medication for mental health.

15    **THE DEFENDANT:**  Yes, ma'am.

16    **THE COURT:**  Right?

17    **THE DEFENDANT:**  I've been --

18    **THE COURT:**  How did you come about getting that?  I

19 imagine it's prescription; right?

20    **THE DEFENDANT:**  Yes, ma'am.

21    **THE COURT:**  How did you come about getting that

22 prescription?

23    **THE DEFENDANT:**  I've been incarcerated in the state

24 for 20 years.

25    **THE COURT:**  Okay.

1      **THE DEFENDANT:**  So that's --

2      **THE COURT:**  Was there some event that led to you

3  getting that?

4      **THE DEFENDANT:**  Yes, ma'am.  They got me on

5  antidepressant and medication, and stuff like that.  But I

6  really don't want to just get into my medical history like

7  that.  But basically that's what it's for --

8      **THE COURT:**  Okay.

9      **THE DEFENDANT:**  -- stuff like that.

10      **THE COURT:**  How long ago was it when you first got

11  the prescription for that?  Again, you don't have to tell me

12  what it was for.  Just tell me --

13      **THE DEFENDANT:**  That's been almost twenty, maybe

14  nineteen years.

15      **THE COURT:**  And you've been taking it for nineteen

16  years?

17      **THE DEFENDANT:**  Off and on, yes, ma'am.

18      **THE COURT:**  Okay.  Is it for depression or anxiety?

19      **THE DEFENDANT:**  It's for -- like I said, I really

20  don't want to get into my medical history like that.

21      **THE COURT:**  I understand.

22      **THE DEFENDANT:**  But it's --

23      **THE COURT:**  I understand.

24      **THE DEFENDANT:**  Yes, ma'am.  It helps.  I'll put it

25  like that.

1        **THE COURT:**  The reasons I need to ask you a few

2  questions about this is because I have to make a determination

3  that you are competent to enter a plea.

4        **THE DEFENDANT:**  Oh, yes, ma'am.  I'm very competent

5  to enter whatever plea I agree to.  Yes, ma'am, I'm very

6  competent.

7        **THE COURT:**  Okay.  Well, that's background leading up

8  to that.  Because I have to satisfy myself, and I have to make

9  a finding that you're competent.  So those are the reasons I

10  ask you those questions.  So, again, I don't mean to get in

11  your business in that respect.  But I do have to ask these

12  questions to the extent that -- and I've used the spectrum.  So

13  you don't have to necessarily be specific.  But was the

14  medication that you take on and off -- that you have taken on

15  and off for, you know, the past twenty years, is it for

16  something similar to anxiety or depression, or something in

17  between?

18        **THE DEFENDANT:**  Yes, ma'am.

19        **THE COURT:**  Okay.  When is the last time you took

20  that medication?

21        **THE DEFENDANT:**  Last night.

22        **THE COURT:**  Was it last night?

23        **THE DEFENDANT:**  Yes, ma'am.

24        **THE COURT:**  Okay.  And you typically take it every

25  day?

10

1           **THE DEFENDANT:**  I'm not going just -- I'm not going

2  to lay up here and lie and tell you that I do 'cause I don't

3  sometimes.

4           **THE COURT:**  Okay, that's fine.  You take it when you

5  need it, is that --

6           **THE DEFENDANT:**  Yes, ma'am.

7           **THE COURT:**  -- fair to say?

8           **THE DEFENDANT:**  Yes, ma'am.

9           **THE COURT:**  And you did take it last night?

10           **THE DEFENDANT:**  Yes, ma'am.

11           **THE COURT:**  You told me you're feeling okay right

12  now?

13           **THE DEFENDANT:**  Yes, ma'am.

14           **THE COURT:**  Can you notice a difference when you

15  don't take it?  Like, do you feel worse, or you're kind of, you

16  know, not feeling like yourself?

17           **THE DEFENDANT:**  Actually, it -- sometimes, yes,

18  ma'am.  I'll put it like that.  Sometimes, yes, ma'am.

19           **THE COURT:**  Well, we don't have to worry about that

20  today --

21           **THE DEFENDANT:**  No, ma'am.

22           **THE COURT:**  -- since you took it last night?

23           **THE DEFENDANT:**  No, ma'am.

24           **THE COURT:**  Okay, very good.  That's all I wanted to

25  know.

1          **THE DEFENDANT:** No, ma'am.

2          **THE COURT:** Now, do you have any physical or mental

3   condition that would prevent you from understanding the charges

4   against you or the consequences of the guilty plea?

5          **THE DEFENDANT:** No, ma'am.

6          **THE COURT:** Okay. Well, based upon your responses --

7   and I appreciate your indulging me in that, Mr. Moffett -- I do

8   find you competent to enter a plea in this case today.

9          **THE DEFENDANT:** Yes, ma'am.

10          **THE COURT:** Now, Mr. Davis is your attorney. He's

11  here with you, so I have questions for you about him. Are you

12  satisfied with Mr. Davis as your attorney?

13          **THE DEFENDANT:** (Laughing.)

14          **THE COURT:** Now, don't --

15          **THE DEFENDANT:** Yes, ma'am.

16          **THE COURT:** Don't look at him. I honestly want to

17  know --

18          **THE DEFENDANT:** Yes, ma'am.

19          **THE COURT:** -- if you are satisfied.

20          **THE DEFENDANT:** Yes, ma'am.

21          **THE COURT:** Okay. And, in fact, I see this rapport

22  between you-all as a good sign that you get along well.

23          **THE DEFENDANT:** Yes, ma'am.

24          **THE COURT:** Is that fair?

25          **THE DEFENDANT:** Yes, ma'am.

12

1       **THE COURT:**  Okay.  Now, have you had enough time to

2  speak with Mr. Davis about your case and have him answer any

3  and all questions you have about your case?

4       **THE DEFENDANT:**  Yes, ma'am.

5       **THE COURT:**  And do you believe that Mr. Davis has

6  been acting and is acting in your best interest in this case?

7       **THE DEFENDANT:**  Yes, ma'am.

8       **THE COURT:**  Okay.  We're going to turn to the

9  indictment pending against you, specifically that Second

10  Superseding Indictment.  I'm going to just summarize what that

11  indictment charges, Mr. Moffett.

12      Count 1 of the Second Superseding Indictment charges you

13  with conspiring to participate in racketeering activities

14  including the distribution and possession with intent to

15  distribute controlled substances, specifically methamphetamine,

16  for the purpose of enriching, protecting, and enhancing the

17  Gangster Disciples's criminal enterprise in violation of Title

18  18 United States Code §1962(d).  Now, again, I just really

19  briefly summarized what it says.

20      So, my next question is would you like the Court to read

21  the Second Superseding Indictment to you, or do you waive

22  reading?

23       **MR. DAVIS:**  Your Honor, if it please the Court, we

24  would waive the reading of the Second Superseding Indictment.

25       **THE COURT:**  Very well.

13

1      Mr. Moffett, are you fully aware of what you're charged

2   with in Count 1 of the Second Superseding Indictment?

3          **THE DEFENDANT:**  Yes, ma'am.

4          **THE COURT:**  There are certain elements of proof that

5   are associated with Count 1, and if your case went to trial for

6   any reason, the government would have to prove those elements

7   against you beyond a reasonable doubt before you could be found

8   guilty.  For purposes of this record here today, I'm going to

9   ask the government's attorney to state those elements.

10     Mr. Leary.

11         **MR. LEARY:**  Thank you, Judge.  I want to start out by

12  reading just the substantive RICO statute, and then the

13  elements of the conspiracy to participate in a RICO enterprise.

14     The substantive RICO provisions require the government to

15  prove the existence of an enterprise that affected interstate

16  commerce, that the defendant was associated with the

17  enterprise, that the defendant participated in the conduct of

18  the enterprise's affairs, and that the defendant's conduct

19  constituted a pattern of racketeering activity.  A pattern of

20  racketeering activity occurs when the defendant commits at

21  least two predicate acts within ten years.

22     Now, a RICO -- in order to commit -- I'm sorry, Your

23  Honor.  In order for the government to prove a RICO conspiracy,

24  the government must establish that the defendant and at least

25  one other person agreed to commit the substantive RICO offense,

1   and that the defendant knew of and agreed to the overall

2   objective of the RICO offense.

3       Your Honor, those are the elements of the crime in this

4   case.

5       **THE COURT:** Thank you.

6      Mr. Moffett, having heard those elements of proof, do you

7   have any questions about them or the nature of the charges in

8   the case against you?

9       **THE DEFENDANT:** Yes, ma'am, I heard 'em.

10       **THE COURT:** Okay, do you have any questions about the

11   nature of the charges against you in the Second Superseding

12   Indictment?

13       **THE DEFENDANT:** None at the present moment, no,

14   ma'am.

15       **THE COURT:** All right. We're going to turn now to

16   the maximum possible penalties applicable to Count 1. And they

17   are: Imprisonment for life, a fine of not more than $250,000,

18   supervised release for not more than five years, and a special

19   assessment of $100.

20      If you choose to plead guilty here today, Mr. Moffett, and

21   I accept your plea, I'm going to sentence you at sometime in

22   the future. Do you understand that if you're sentenced to

23   serve a term in prison, that you may be subject to a term of

24   supervised release after you've been released from prison?

25       **THE DEFENDANT:** Yes, ma'am, I understand that.

1        **THE COURT:**  Do you understand as well that if you

2  violate one or more of the conditions of supervised release,

3  you may be returned to prison for all or part of the supervised

4  release period?

5        **THE DEFENDANT:**  Yes, ma'am, I understand that.

6        **THE COURT:**  Next, then --

7        **MR. DAVIS:**  Your Honor, before the Court moves

8  forward --

9        **THE COURT:**  Yes.

10        **MR. DAVIS:**  -- our copy of the Notice of Penalties --

11  and this may be incorrect.  But our copy of the Notice of

12  Penalties indicates that the maximum possible penalty is not

13  more than 20 years imprisonment.  Is that listed incorrectly on

14  our memo?

15        **THE COURT:**  I'll tell you, I have looked at what the

16  Plea Agreement said and had not checked at this time against

17  the Notice of Penalties.  So let's definitely do that.

18        **MR. DAVIS:**  Your Honor, if it please the Court, the

19  Plea Supplement calls for an agreed sentence of ten years.  So

20  either way should the Court accept the Plea Agreement, there's

21  an 11(c)(1)(C) agreement for ten years.  So I don't know that

22  it would apply either way.  But Mr. Moffett did have a question

23  about that, and I wanted to make sure we answered his question.

24        **THE COURT:**  Okay.  We're going to get to the details

25  of that in a minute.  What I would like to do now is just

16

1   advise you of the statutory penalties independent of anything

2   that's in the Plea Agreement.  And so let's double check.

3        And in fact, Ms. Caspary, if you would just pull up the

4   Notice of Penalties.

5        Because, if that is the case then, I would ask y'all --

6   we'll just need to make a revision to -- when we get to the

7   Plea Agreement, a revision about what it states there, too.

8        I think it's Docket Number 305, Ms. Caspary.

9            **COURTROOM DEPUTY:**  Thank you.

10           **MR. DAVIS:**  Your Honor, if it please the Court, I'm

11  looking at the Notice of Penalties here, and this says for

12  Count 1, "Not more than life in prison," and it cites 18 U.S.C.

13  1963; whereas the memorandum here says, "Not more than twenty

14  years," and it cites 18 U.S.C. 1959.  I'm not --

15           **THE COURT:**  Okay.

16           **MR. DAVIS:**  The reason for the confusion obviously is

17  Mr. Moffett noticed the discrepancy here, and I want to clear

18  that up for him.

19           **THE COURT:**  Okay.  No, I certainly want it to be as

20  clear as we can make it, and certainly be correct.  And more

21  important, that Mr. Moffett understand it.

22       Thank you.

23       The memorandum you mentioned --

24           **MR. DAVIS:**  Yes, ma'am.

25           **THE COURT:**  -- is?  Well, what are you referring to?

1    **MR. DAVIS:**  Your Honor, I'm simply referring -- the

2    government provides for defense counsel a sheet --

3         **THE COURT:**  Uh-huh.

4         **MR. DAVIS:**  -- giving us the elements of the offense.

5    And it's done really as a courtesy from the government to us.

6    It's not necessarily a binding document.  It's something that

7    the government does so that we can follow along.  And we

8    appreciate that.  There was just a discrepancy there that I

9    wanted to make sure we corrected.

10        **THE COURT:**  Let me have Mr. Leary address that then.

11        **MR. LEARY:**  Yes, Your Honor.  The sentencing

12   provisions for 19 -- Title 18 U.S.C. 1962 are contained in 18

13   1963.  And Subsection (a) says, "Whoever violates any provision

14   of §1962 of this chapter shall be fined under this title or

15   imprisoned not more than twenty years."  And then if there's a

16   parentheses there that says, "or for life, if the violation is

17   based on the racketeering activity for which the maximum

18   possible penalty includes life imprisonment."

19        So, when we're articulating the maximum possible penalty,

20   it is life.  So the memorandum that the government provided

21   that says "not more than 20 years" is mistaken.  That is wrong.

22   And that should say "not more than life imprisonment" pursuant

23   to 18 U.S.C. 1963.  I apologize for that mistake.  But that's

24   the government's fault.

25        Thank you.

1      **THE COURT:**  All right.  Does the defendant understand

2  that that memorandum is not binding and it certainly is not

3  from the statutory provisions as far as the penalties go?  Does

4  the defendant understand that?  Mr. Moffett?

5      **MR. DAVIS:**  May I have a moment with him, Your Honor?

6      **THE COURT:**  You absolutely may.  And I tell you what,

7  there may be -- you-all can go back to your table, if you need

8  more privacy.  I just want to make sure you have the

9  opportunity to speak with him while you're not at a microphone.

10      **MR. DAVIS:**  Yes, Your Honor.

11      **THE COURT:**  There may be a button there that you can

12  push to turn it off.  But I just want you-all to have your

13  privacy.

14      **MR. DAVIS:**  I don't see a button, Your Honor.  If we

15  could return to counsel table for one moment?

16      **THE COURT:**  Yes.  Return to counsel table, please.

17      (DEFENDANT AND COUNSEL CONFERRING.)

18      **MR. DAVIS:**  Thank you, Your Honor.

19      **THE COURT:**  One other thing that was just pointed out

20  to me -- and Mr. Leary, you may be able to clarify this as

21  well -- Notice of Penalties speaks about not more than three

22  years of supervised release but if you look at the Plea

23  Agreement, it says not more than five.  Is there something

24  particular --

25      **MR. LEARY:**  Yeah.  It's not more than five, Your

1  Honor.  This is -- what happened down here is the VICAR statute

2  got put down instead of the RICO statute.  So suffice it to

3  say, it is not more than five years, Your Honor.

4        **THE COURT:**  Okay.  Well, I'm going to just, for

5  Mr. Moffett's clarification, start over again with the maximum

6  possible penalties.

7        With Mr. Leary's clarification, Mr. Moffett, the maximum

8  possible penalties are imprisonment for life -- and anybody

9  stop me if I'm wrong about any of this as we go through -- a

10  fine of not more than $250,000, supervised release after

11  imprisonment for not more than three years, and a special

12  assessment of $100.

13        Okay.  Did we get that right this time?

14        **MR. LEARY:**  Yes, Your Honor.

15        (COUNSEL AND DEFENDANT CONFERRING.)

16        **THE COURT:**  Mr. Moffett, do you understand these

17  maximum possible penalties?

18        You're shaking your head no?

19        **THE DEFENDANT:**  In a way, I do.  But in a way, I

20  don't.  Because it's just too much that's being flipped.  And

21  he just said five years.  You said three years.  The papers say

22  three years.  And then it said life, and now it's -- and on

23  here, it's saying twenty years.  It's just so much that's

24  flipped.  I'm confused.  I'm really not understanding.  I'm

25  confused on that.

20

1       **THE COURT:**  Let's make sure we get it clear.  Because

2  it is most important that you understand than anybody else in

3  this room right now.

4       So, starting with the term -- and this is just the maximum

5  possible penalties.

6       **THE DEFENDANT:**  Yes, ma'am, I understand that.

7       **THE COURT:**  Starting with the term of imprisonment,

8  the government's attorney, Mr. Leary, just explained that that

9  memorandum, which is not binding on anybody, there was an error

10 made there.  And so the actual maximum possible penalty by

11 statute is not more than life imprisonment.  So that takes care

12 of that one.

13      Now, I know you may not agree with it.  But I just want

14 you to be able to understand what happened.

15      **THE DEFENDANT:**  Yes, ma'am.

16      **THE COURT:**  Okay?

17      **THE DEFENDANT:**  Yes, ma'am.

18      **THE COURT:**  The fine.  We're good, as far as the not

19 more than $250,000 fine.

20      So when it comes to the supervised release term, it looks

21 like we had another scrivener's error where the Notice of

22 Penalty says "not more than three years," and then the --

23 what's in the Plea Agreement at least says, "not more than five

24 years."  In this situation, the error -- the scrivener's error

25 actually weighs in your favor because it's a lower term.  Okay.

1          And then the special assessment didn't change.

2          So, do you under -- do you understand?  And again, I --

3                    **THE DEFENDANT:**  Yes, ma'am.

4                    **THE COURT:**  -- know it's two different things --

5                    **THE DEFENDANT:**  Yes, ma'am.

6                    **THE COURT:**  -- about you understanding versus you

7 agreeing.

8                    **THE DEFENDANT:**  Yes, ma'am.

9                    **THE COURT:**  But do you understand?

10                   **THE DEFENDANT:**  Yes, ma'am.

11                   **THE COURT:**  Okay.

12         And, Mr. Moffett, I know I said this before.  But if you

13 have any questions, now is the time to ask them, particularly

14 before I ask for your plea.  So don't ever be afraid to speak

15 up, if that is the case.

16                   **THE DEFENDANT:**  Oh, I'm very outspoken, ma'am.

17                   **THE COURT:**  I can tell.

18                   **THE DEFENDANT:**  Yes, ma'am.

19                   **THE COURT:**  I get it.  I get it totally.

20         Okay.  So we have covered all the maximum possible

21 penalties.  Now, I'm going to ask you that question again.  Do

22 you understand these penalties as I have stated them?

23                   **THE DEFENDANT:**  Yes, ma'am, I understand.

24                   **THE COURT:**  Okay.  Now, the next thing we're going to

25 do, we're going to turn to the evidence that the government

1  would be prepared to prove against you if your case went to

2  trial. I want you to listen carefully to this as well.

3      Mr. Leary, what is the government's evidence?

4          **MR. DAVIS:** Your Honor, had this matter gone to

5  trial, the government would have proven the following evidence:

6      First, that the defendant, Gregory Moffett, as set forth

7  in Count 1 of the Second Superseding Indictment was a member of

8  the Gangster Disciples, a street gang operating nationwide, and

9  which constituted an enterprise under federal law. The

10  Gangster Disciples operated inside and outside of the state

11  prison system in Mississippi, and members are in every state

12  prison across the state including the Mississippi State

13  Penitentiary at Parchman, Mississippi.

14      The government asks the Court to take judicial notice that

15  the Mississippi State Penitentiary in Parchman is within the

16  Northern District of Mississippi.

17      Mr. Moffett, as a member of the Gangster Disciples, agreed

18  that a co-conspirator would commit at least two acts of

19  racketeering involving narcotics, murder, attempted murder,

20  obstruction of justice, money laundering, and intimidation of

21  witnesses and/or victims.

22      Subsection A, Your Honor -- may I talk to the defense

23  counsel for one moment?

24          **THE COURT:** You may.

25          (COUNSEL CONFERRING.)

1          **THE COURT:**  Okay, back up.  You could have asked that

2   question out, because I -- when Mr. Davis was talking about

3   something in the Plea Supplement, I had saved that question to

4   ask at the end.  But you-all let me know that.  But go ahead.

5          **MR. LEARY:**  Thank you, Your Honor.

6          **THE COURT:**  Uh-huh.

7          **MR. LEARY:**  The evidence would have shown that the

8   Gangster Disciples Street Gang is a criminal organization with

9   a national presence.  The Gangster Disciples are a part of an

10  ongoing organization that has functioned continuously for a

11  common purpose since its inception during the 70s.  Since that

12  time, the organization has expanded its reach into several

13  states.  In the last twenty years, it has made a name for

14  itself as being one of, if not the most violent and prevalent

15  gangs in the state of Mississippi.  The gang is well-known for

16  its criminal activities inside and outside the state of

17  Mississippi, including murder, attempted murder, and drug

18  trafficking.

19     The gang's primary symbols used to include membership are

20  a six-point star, a heart with wings, an inverted shepherd's

21  cane, an inverted pyramid and/or an inverted cross.  To become

22  a member, there is an application form and a background check

23  conducted that investigates each aspiring member.  Once

24  initiated, a member receives a number usually beginning with

25  the number 6.  Afterwards, a member is expected to attend

1    meetings regularly.  The structure of the organization is a
2    centralized authoritarian formal organization with codes, a
3    constitution, and strict rules governing the gang's activities.
4    The Gangster Disciples in Mississippi state prisons are members
5    of the Folk Nation Alliance, which consists of other violent
6    criminal gangs, like the Simon City Royals.  Correctional
7    facilities are considered plugged in when there are enough
8    members of the Folk Nation, primarily Simon City Royals and
9    Gangster Disciples, to form a hierarchy within the facility.
10   Once the facility is plugged in, a facility board is formed
11   that consists of members of the Gangster Disciples, and often
12   one or two members of the Simon City Royals.  While this board
13   is supposed to act autonomously for the facility, actions are
14   often taken at the direction of ranking officers for both the
15   Simon City Royals and Gangster Disciples.
16       The enterprise engages in narcotics trafficking, money
17   laundering, extortion, murder, and attempted murder.  The
18   Gangster Disciples enterprise is clearly engaged in interstate
19   commerce because witness testimony and seized evidence
20   demonstrates that its members and associates distribute
21   methamphetamine across state lines and use the United States
22   mail and Visa/Mastercard prepaid debit stored value cards to
23   engage in money laundering often facilitated by the use of wire
24   and electronic communications via cellular and landline
25   telephones as well as e-mail, internet, and the wiring of money

25

1 through Money Gram or Western Union.  Cooperating
2 coconspirators confirmed that narcotics are typically procured
3 from sources in other states, such as California and Arizona.
4 The GDs are -- also employ encrypted messaging applications,
5 like Telegram, to conduct daily meetings.  Contraband cellular
6 telephones allow the enterprise to conduct conference calls
7 using 800 numbers.

8     Mr. Moffett was identified by the MDOC officials as a
9 member of the GDs.  He has tattoos consistent with gang
10 membership.  Witnesses would have identified him as a ranking
11 member of the organization.  And e-mails from the gang's
12 members identified him as being a member of the gang.

13     Witnesses that the government would have called would have
14 described how Moffett smuggled in contraband to East
15 Mississippi Correctional Facility State Prison through guards
16 and maintenance personnel.  The contraband included narcotics.
17 The proceeds from the smuggling of contraband was secured by
18 using different means to hide the source of the funds, and then
19 funneled up to the leadership across the state in Mississippi
20 and out in the free world.  Money from the criminal activity
21 inside of the prison was sent to Moffett and others to --
22 usually through female nominees in the free world.  The money
23 transactions were conducted to secure the source of funds.

24     The government would have proven that in May of 2018,
25 LaTroy Daniels, Mr. Moffett, and Michael Willie conspired to

1 kill members of rival again. Specifically, on or around May

2 15, 2018, members of the GD and Simon City Royals planned to

3 execute a bag and tag order against two individuals who are

4 identified as DR and CB, who were imprisoned in the East

5 Mississippi Correctional Facility located in Meridian. The bag

6 and tag order was ordered after one of the victims disrespected

7 a high-ranking member of the Simon City Royals, Jonathan Davis,

8 a/k/a Merc. Davis reported this incident in the board

9 consisting of the GDs and Simon City Royal gang members located

10 across the state in both this district and the Southern

11 District of Mississippi. The members of this board included:

12 LaTroy Daniels, Justin Leake, Jonathan Davis, Joshua Miller,

13 Anthony Murphy, Greg Moffett, and Bryce Francis. The

14 leadership members ordered the bagging and tagging of victims

15 DR. and CB. Mr. Moffett, as a key member of the security for

16 the GDs in that zone where the victims were located, organized

17 and planned the entire operation prior to the victims being

18 stabbed. Mr. Moffett instructed subordinate members if they

19 did not carry out orders themselves, they themselves would be

20 stabbed.

21 After receiving the order, several gang members carried

22 shanks, metal objects sharpened on one end, and used them to

23 assault both victims. Afterwards, prison staff recovered a

24 22-inch metal pipe, an eight-inch metal hook, a twelve-inch

25 wooden stick, and seven-inch shank. The victims sustained

1   serious bodily injury as a result of the attack.

2       Federal law enforcement obtained several reports compiled

3   by the organization as well as reports compiled by participants

4   in the crime.  The gang members were required to draft and file

5   after-action-reports.  As such, law enforcement is in

6   possession of several of these reports which detail planning,

7   the participants, and the reason for the attack.

8       On April 15, 2019, Mr. Moffett and Mr. Willie exchanged

9   messages discussing Derrick Houston becoming a superintendent,

10  administrator, or leader of the GD's operations in the

11  Mississippi prison system.

12      The government is in possession of text messages, e-mails,

13  official MDOC records, and other documents which would show

14  that Mr. Moffett participated in selling narcotics while

15  incarcerated inside of the Mississippi State Prison.  The

16  government would have shown that Mr. Moffett is responsible for

17  distributing methamphetamine and spice.

18      This statement of facts is provided to assist the Court in

19  determining whether a factual basis exists for the defendant's

20  plea of guilty.  The statement of facts does not contain each

21  and every fact known to the defendant or the United States

22  concerning such conduct.

23      Your Honor, those are the facts that would have been

24  proven had this case gone to trial.

25          **THE COURT:**  Very well.

28

1     **MR. DAVIS:** May I respond, Your Honor?

2     **THE COURT:** You may.

3     **MR. DAVIS:** Your Honor, if it please the Court,

4 Mr. Moffett wants me to make note of one thing, and then I have

5 something to say to the Court.

6   Mr. Moffett does not deny membership in the Gangster

7 Disciples.  He acknowledges that he is a member.  He would like

8 to point out that he does not have tattoos consistent with gang

9 membership.  He wanted the Court to know that specifically,

10 even though he does not deny membership.

11   Beyond that, Your Honor, Mr. Moffett and I went through

12 the Factual Basis fairly extensively yesterday.  We spent, I

13 guess, a little bit more than an hour together going through

14 it.  Mr. Moffett wants me to relay to the Court that he is

15 satisfied that should this matter go to trial that the

16 government would put on proof consistent with the Factual

17 Basis, and that he believes the elements of the offense would

18 be met.

19     **THE COURT:** All right.

20   Mr. Moffett, I just want to first confirm that you

21 understood the government's evidence against you as stated by

22 Mr. Leary?

23     **THE DEFENDANT:** I understand it, yes, ma'am.

24     **THE COURT:** Okay.  Now, your counsel has pointed out

25 that with respect to the statement that the government just

29

1  made that you do not agree with the part of it that says that

2  you have tattoos indicative of gang membership, although you do

3  not deny gang membership.  Is that correct?

4          **THE DEFENDANT:**  I don't deny gang membership, no,

5  ma'am.

6          **THE COURT:**  Okay.

7          **THE DEFENDANT:**  But I've had my tattoos over twenty

8  -- I know about twenty years.  And there's no fresh tattoos on

9  me.  And you can check.  I can strip buck-naked right now.

10          **THE COURT:**  No, sir.

11          **THE DEFENDANT:**  No disrespect.  No disrespect.

12          **THE COURT:**  No need.

13          **THE DEFENDANT:**  I'm just saying you can check my

14  tattoos and see that I have no gang affiliation tattoos on me

15  period.

16          **THE COURT:**  Okay.  Well, all I need to know then is

17  if we remove that sentence from the statement that the

18  government's attorney just made, does your conduct as stated by

19  the government's counsel still consist of the elements

20  associated with Count 1 of the Second Superseding Indictment?

21  Are those elements of proof that we mentioned earlier, are they

22  still satisfied, if we do not in any way give any weight to

23  that statement about the tattoos?

24          **THE DEFENDANT:**  Yes, ma'am.

25          **THE COURT:**  Do you wish to plead guilty here today,

1  Mr. Moffett, because you are indeed guilty and that your guilty

2  plea would be voluntary?

3          **THE DEFENDANT:**  Would you repeat that, please, ma'am?

4          **THE COURT:**  Will you be pleading guilty here today

5  freely and voluntary with full knowledge of the charges and of

6  your own free will?

7          **THE DEFENDANT:**  Yes, ma'am.  It's of my own free

8  will.  I wasn't groomed into agreeing to something, or none of

9  that.  But, yes, ma'am.  I -- yes, ma'am.

10          **THE COURT:**  Now, has anyone threatened you or in any

11  way attempted to force you to plead guilty?

12          **THE DEFENDANT:**  No, ma'am.  I don't -- no, ma'am.

13          **THE COURT:**  Okay.  The Court finds then that there is

14  a factual basis, Mr. Moffett, for you to enter a plea in this

15  case today.

16      Now, I'm going to turn to the Plea Agreement.  And as

17  Counsel knows, I e-mailed you-all about one section in the Plea

18  Supplement that I wanted you-all to address.  And it seems like

19  we may need to address one other thing to the extent that the

20  Plea Agreement does mention a different maximum amount of

21  supervised release as the maximum possible penalties.  So

22  that's another thing.

23      Okay, well.  All right.  Well, you-all tell me.  I just --

24  my probation officer believes the five years is correct.  So

25  can we all come to some agreement about what the maximum

1   possible penalties are as it concerns the term of supervised

2   release?

3       And, you know, Mr. Fountain, if you need to speak with

4   counsel, too.  Again, my task here is to make sure that I

5   advise Mr. Moffett properly.

6         **MR. LEARY:**  Your Honor, if it pleases the Court, I'll

7   reflect what's in paragraph one of the Plea Agreement, which

8   states that the Plea Agreement between the government and

9   Mr. Moffett, or that the defendant agrees to plead guilty under

10   oath to Count 1 of the superseding indictment, which charges

11   the defendant with a RICO conspiracy in violation of Title 18

12   U.S.C. §1962(d) and which covers carries the maximum possible

13   penalty of life imprisonment, not more than a $250,000 fine,

14   not more than a five-year term of supervised release, and a

15   special assessment of $100.  I believe that to be correct.

16       Does probation agree?

17         **PROBATION OFFICER:**  Yes, sir.

18         **THE COURT:**  Okay.  Well, you know, we just spent some

19   time -- and in fact, I just explained to Mr. Moffett that it

20   was three years, so --

21         **MR. LEARY:**  I'm sorry, Your Honor.  I didn't pick

22   that up.  I thought we were okay.  That's my fault.  I'm sorry,

23   I thought we were --

24         **THE COURT:**  Okay.  Let me go back to Mr. Moffett

25   again.

32

1    Okay, so this concerns the maximum possible penalties.  I
2    hate to back up with this.  But it is important for me to make
3    sure that you are adequately informed of the correct term as it
4    concerns supervised release.  So, Mr. Moffett, we're going to
5    go back, now, to the maximum possible penalties again.  The
6    Plea Agreement that I was just ready to ask Mr. Leary to go
7    through and present its substance on the record, it does list
8    that the maximum possible crimes include -- excuse me --
9    maximum possible penalties include not more than a five-year
10   term of supervised release.  Okay.

11   The Notice of Penalties says "not more than three."  So,
12   where we are now -- and I want you to be able to speak with
13   your counsel about which one is correct -- is that the
14   five-year term of supervised release -- the not more than
15   five-year term of the supervised release is the maximum
16   possible penalties.  So what say you, Mr. Davis?

17        **MR. DAVIS:**  Your Honor, if it please the Court, the
18   Notice of Penalties that we received in the Second Superseding
19   Indictment cites 18 U.S.C. 3583 and says not more than three
20   years.  The -- the Plea Agreement says not more than five
21   years.  And frankly, if it please the Court, Your Honor, I
22   would have to physically pull the statute and look myself.  I
23   don't keep that sort of information in my noggin.

24        **THE COURT:**  Okay.  Well, if you don't, I'm ready to.
25        **MR. DAVIS:**  All right.

1    **THE COURT:** Because I want to make sure that

2 Mr. Moffett is advised correctly.

3    And, Mr. Leary, do you have it in front of you?

4    **MR. LEARY:** I do, Your Honor. I've got the statute

5 right here.

6    **THE COURT:** Okay. Can you, please, show that to

7 Mr. Davis?

8    (PAUSE.)

9    **THE COURT:** Y'all want to take a moment --

10    **MR. DAVIS:** No.

11    **THE COURT:** -- and go out and --

12    **MR. DAVIS:** If it please the Court, Your Honor, I

13 think I can do it right here.

14    **THE COURT:** All right.

15    **MR. DAVIS:** Thank you, though.

16    **THE COURT:** Uh-huh.

17    (PAUSE.)

18    **THE COURT:** All right, Mr. Davis.

19    **MR. DAVIS:** Your Honor, I have --

20    **THE COURT:** Just one second.

21    (COURT CONFERRING WITH PROBATION OFFICER.)

22    **THE COURT:** All right, Mr. Davis.

23    **MR. DAVIS:** Your Honor, I have -- Mr. Leary has

24 provided me with a copy of the code section. And in a Class A

25 or B felony, the maximum possible supervised release is five

34

1   years, according to the statute.  And it's obviously --

2        **THE COURT:**  And you've apprised -- you've spoken with

3   Mr. Moffett about that?

4        **MR. DAVIS:**  I have.  And I showed it to him in the

5   code book.  And if it please the Court, even though our Notice

6   of Penalties says "three years," I think the Court and

7   Mr. Leary would both agree that the code will trump a Notice of

8   Penalties.

9        **THE COURT:**  The code does.  So I'm going to go back

10  yet again to the maximum possible penalties and make sure that

11  Mr. Moffett is clear what they are before I ask him for his

12  plea.

13     The maximum possible penalties, Mr. Moffett:  Imprisonment

14  for life, a fine of not more than $250,000, supervised release

15  for not more than five years, and a special assessment of $100.

16       **THE DEFENDANT:**  Yes, ma'am.

17       **THE COURT:**  Do you understand?

18       **THE DEFENDANT:**  Yes, ma'am.  Yes, ma'am.

19       **THE COURT:**  I do want counsel to approach, please.

20       **(BENCH CONFERENCE BETWEEN THE COURT AND COUNSEL:)**

21       **THE COURT:**  To the extent that a Notice of Penalties

22  is incorrect --

23       **THE REPORTER:**  Judge, I can't hear.

24       **THE COURT:**  Okay.  To the extent that a Notice of

25  Penalties contains an error, what, if any, effect does it have

1    on the enforcement of the indictment?  I just want to make sure

2    we're clear about that.

3              **MR. DAVIS:**  In my opinion, Your Honor, I think you've

4    given him notice of the penalties from the bench.  And if he --

5    if that caused him to change his mind, now is the opportunity

6    for him to change his mind --

7              **THE COURT:**  I know.

8              **MR. DAVIS:**  -- in my opinion.

9              **THE COURT:**  But I just want to make sure, because I

10   see this coming back at some point, even though in the Plea

11   Agreement, I believe, he does waive collateral appeals and that

12   kind of thing.

13             **MR. DAVIS:**  Except for --

14             **THE COURT:**  Prosecutorial misconduct.

15             **MR. DAVIS:**  -- and ineffective assistance.

16             **THE COURT:**  Uh-huh.

17             **MR. DAVIS:**  Which, this might be both.  I don't know,

18   but --

19             **THE COURT:**  Well --

20             **MR. DAVIS:**  In my opinion, Your Honor, I think when

21   the Court cleared up the error, and when the Court instructed

22   us that it was a five-year penalty, or five-year supervised

23   release --

24             **THE COURT:**  Uh-huh.

25             **MR. DAVIS:**  -- and when I showed Mr. Moffett in the

36

1   code book itself that it was five years, if that changes his

2   position with respect to entering this plea, now is his

3   opportunity.

4           **THE COURT:**  That's right.

5           **MR. DAVIS:**  And I think if he waives it, he's waived

6   it.  That's my opinion.

7           **THE COURT:**  Okay, well --

8           **MR. DAVIS:**  For whatever my opinion is worth.

9           **THE COURT:**  Yeah, I know.  I know.  But doesn't mean

10  it's not going to come back anyway.  So, but I just wanted to

11  ask y'all the question so I could make sure as well.  Now, the

12  bottom line is, regardless of all these clarifications, I -- as

13  I told you before, I just need to make sure that I advise him

14  correctly.

15          **MR. DAVIS:**  Yes, Your Honor.

16          **THE COURT:**  He may decide that he doesn't want to

17  plead any more.  But that's his call.  So, as long as we're

18  clear.  And I wanted to ask y'all again about the efficacy of

19  the indictment with that error in the Notice of Penalties.

20          **MR. LEARY:**  Your Honor, the --

21          **THE COURT:**  And I don't know if I've ever run across

22  one.

23          **MR. DAVIS:**  Do you agree we need --

24          **MR. LEARY:**  No.  And the government apologizes for

25  that -- that mistake.  The government agrees with defense

1   counsel Davis's statement that the efficacy of the indictment

2   is in place --

3           THE COURT:  Uh-huh.

4           MR. LEARY:  -- because the elements -- I mean, the

5   indictment is a correct indictment pursuant to the law.  And I

6   would also concur that the defendant has been given a correct

7   explanation of the sentence in this case.  And if he chooses

8   to --

9           THE COURT:  Uh-huh.

10          MR. LEARY:  -- he can back out.

11          THE COURT:  Okay.

12          MR. LEARY:  But the government --

13          THE COURT:  Well, no, I just wanted to --

14          MR. LEARY:  But the government does --

15          THE COURT:  Okay.

16          MR. LEARY:  -- apologize.

17          THE COURT:  I just want to make sure.  Because I

18  always try to look ahead.  It is what it is.  But that's why,

19  again, I don't mind clearing it up here in the courtroom, so

20  that we make sure that he is well aware of the situation before

21  I ask him for his plea and that he makes an informed plea at

22  the time.  So that's all I wanted to know.

23      Okay.

24          MR. LEARY:  Thank you.

25          MR. DAVIS:  Thank you, Judge.

1          **THE COURT:**  All right.

2          **(BENCH CONFERENCE CONCLUDED.)**

3          **THE COURT:**  Where I think we are now -- and

4   Mr. Moffett, I will tell you, given some of the back and forth,

5   again, stop me if there's something you have a question about.

6   I've said it before, and I'll say it again, you are the most

7   important person in the room when it comes to understanding

8   what is going on here.

9          **THE DEFENDANT:**  Yes, ma'am.

10         **THE COURT:**  So we will not move forward further until

11  you are convinced that you understand everything.  It doesn't

12  even matter whether or not I understand what has happened here

13  today, but that you understand.

14         **THE DEFENDANT:**  Yes, ma'am.  I understand.

15         **THE COURT:**  Okay.  So, again, stop me if you have any

16  questions, concerns, anything.

17         **THE DEFENDANT:**  Yes, ma'am.

18         **THE COURT:**  All right.  So, where we were is talking

19  about our Plea Agreement.  And Mr. Leary, I'm going to let you

20  take it from here as to the substance of the Plea Agreement.

21         **MR. LEARY:**  Thank you, Your Honor.

22      And I'll just start at the beginning.  The plea agreement

23  between the defendant, Mr. Moffett, and the government is as

24  follows:  The defendant agrees to plead guilty under oath to

25  Count 1 of the Second Superseding Indictment, which charges

Mr. Moffett with RICO conspiracy in violation of Title 18 United States Code §1962(d), and which carries a sentence that is previously articulated by the Court, that being the maximum possible penalty of life imprisonment, not more than a $250,000 fine, and not more than a five-year term of supervised release, and a special assessment of $100.

The United States agrees not to charge Mr. Moffett with any other offenses arising from or related to the above referenced charge, and to dismiss the remaining counts of sentencing. This agreement is limited to the United States Attorney's Office for the Northern District of Mississippi, and cannot bind any other state, federal, or local prosecuting authority.

Should the defendant breach or otherwise violate any provisions of this plea agreement, including attempting to withdraw an already entered guilty plea, the government will be released from any sentencing agreements the parties have reached, and would become free to argue for any sentence within the statutory limits. Should the defendant have already pled guilty or been sentenced, the defendant's guilty plea or sentence will still be in affect in the event of any breach.

The defendant understands that if he breaches this plea agreement, that any statement made during the plea colloquy may be used against the defendant in any subsequent criminal prosecution. The defendant knowingly, intelligently, and

voluntarily waives any objection based on the federal rules of evidence, 410, or Rule 11(f) of the Federal Rules of Criminal Procedure.

The defendant understands that the Court may order restitution in this case.

Except for prosecutorial misconduct and ineffective assistance of counsel, the defendant expressly waives any and all right to appeal the conviction and/or sentence imposed in this case, and the manner in which the sentence was imposed on any ground whatsoever, including but not limited to the grounds set forth in Title 18 United States Code §3742.

And except for prosecutorial misconduct and ineffective assistance of counsel, the defendant, Mr. Moffett, also expressly waives all right to contest or collaterally attack the conviction or sentence and the manner in which it was imposed in any post-conviction proceeding including but not limited to Title 18 United States Code §2255. Mr. Moffett waives these rights in exchange for the concessions made by the United States herein.

Apart from being advised of the applicability of the United States Sentencing Guidelines, and other than as set forth elsewhere in the plea documents, no promise or representation whatsoever has been made to Mr. Moffett as to what punishment might be imposed if he accepts the plea of guilty. This agreement fully reflects all promises,

1   agreements, and understandings between Mr. Moffett and the

2   United States.

3        Your Honor, there's a Plea Supplement that is in this case

4   that has been executed by the parties.  I would respectfully

5   point Your Honor to subparagraph four of that Plea Supplement

6   that contains some special provisions.  I believe that there

7   was a question that was arisen in this case concerning just the

8   first line of paragraph four.  And it states that the United

9   States agrees to recommend.  And this is pursuant to Rule

10  11(c)(1)(C) of the Federal Rules of Criminal Procedure.  A

11  review of Rule 11(c)(1)(C) provides that that sentence should

12  state that "the United States agrees," comma.  No -- and we

13  would respectfully request, and we'll have both parties sign

14  this amendment to delete the two words "to recommend," so that

15  the sentence -- the first part of the sentence in paragraph

16  four states that "The United States agreed," comma, "pursuant

17  to Rule 11(c)(1)(C) of the Federal Rules of Criminal

18  Procedure," comma, and then continues thereafter.

19        **THE COURT:**  What about the last sentence of that

20  paragraph?

21        **MR. LEARY:**  That is a correct statement for

22  11(c)(1)(C).

23        **THE COURT:**  I think for the same reason that you said

24  the recommend language in the first sentence would be stricken,

25  then perhaps it may be consistent, if not at least required, to

42

1    alter the last sentence in that respect.

2          **MR. DAVIS:**  Your Honor, is the Court saying then that

3    what the last sentence should say is, "Should the Court not

4    accept this sentence, the defendant will not be bound" -- or

5    "should the Court not accept that agreement"?

6          **THE COURT:**  Yes.

7          **MR. DAVIS:**  Okay.

8          **THE COURT:**  Maybe something to that effect.

9          **MR. DAVIS:**  "Should the Court" --

10         **THE COURT:**  You understand where I'm going.

11         **MR. DAVIS:**  Or "Should the Court not accept this

12   agreement, the defendant will not be bound by the Plea

13   Agreement."

14         **THE COURT:**  And let me just state for the record, so

15   everybody is clear.  The Court is not in any way involved in

16   this.  All the Court wants is for there to be some consistency

17   in what the terms of the agreement are to the extent that

18   Mr. Moffett needs to have some assurance about what those terms

19   mean.

20         **MR. DAVIS:**  Your Honor, if it please the Court, I

21   have spoken with Mr. Moffett about the first sentence.  The

22   last sentence that the Court has pointed out simply seems to

23   make the two sentences flow more, and be more consistent with

24   one another.  I've explained to Mr. Moffett that actually this

25   amendment redounds to his favor.  This is -- it actually makes

43

1  the Plea Supplement more favorable to Mr. Moffett as opposed to
2  not as favorable.
3         **THE COURT:**  I would agree with that statement.
4         **MR. LEARY:**  I'm sorry, Your Honor, my point was that
5  if the Court doesn't accept this agreement, then Mr. Moffett is
6  free to withdraw.
7         **THE COURT:**  Okay.
8         **MR. LEARY:**  That's what I wanted to raise.
9         **THE COURT:**  That is the pivotal point here, which is
10  why I wanted to raise it before the plea hearing.  Because it
11  is a question of whether or not Mr. Moffett will or will not
12  have the right to withdraw his guilty plea.  So, that must be
13  clear.
14      What is the plan for submitting a modified Plea Agreement
15  in that respect?
16         **MR. LEARY:**  We can --
17         **THE COURT:**  Is that going to happen today?
18         **MR. LEARY:**  We can handwrite an addendum and then
19  initial it right now, if that pleases the Court.
20         **THE COURT:**  Okay.  What I would like for you-all to
21  do is make sure that is done now.  Because I want to announce
22  for the record what will happen to the Plea Agreement, the
23  physical copy of the Plea Agreement.  Once those changes have
24  been made, I want to ask Mr. Moffett does he understand it.
25  And if he understands the effect of it, and then we go from

44

1    there.  I don't want to move further until we do that.  If

2    you-all want to -- again, you can do it from the podium or do

3    it from the table.

4            (PAUSE.)

5            **MR. DAVIS:**  Your Honor, if it please the Court

6    paragraph four now reads:  "The United States agrees pursuant

7    to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure

8    that, one, the defendant's sentence run concurrently."

9            **THE COURT:**  You know what, actually -- well, I am

10   going to -- approach.

11           **(BENCH CONFERENCE BETWEEN THE COURT AND COUNSEL:)**

12           **THE COURT:**  Okay.  I just want to go back, because

13   you're reading from the Plea Agreement.

14           **MR. DAVIS:**  It's the Plea Supplement.

15           **THE COURT:**  I mean, the Plea Supplement.  You

16   said you --

17           **MR. DAVIS:**  Yes, Your Honor.

18           **THE COURT:**  -- don't want to seal.  And, in fact, I

19   wanted to ask you about that.  I can understand why Mr. Moffett

20   doesn't want this sealed.  And in fact there may be some other

21   factors that bear on the reason he doesn't want to.

22           **MR. DAVIS:**  Well, the Supplement --

23           **THE COURT:**  Frankly, I would --

24           **MR. DAVIS:**  -- I think would be --

25           **THE COURT:**  -- the Plea Supplement is going to be

1  under seal.

2      I know.  No, no, no.  I mean, the proceedings.

3          **MR. DAVIS:**  Okay.

4          **THE COURT:**  The transcript, to the extent there has

5  been some mention.  You mentioned the Plea Supplement, about

6  what it was going to say, and you were just ready to read that

7  paragraph.  And that's why I had to stop you.

8          **MR. DAVIS:**  Yes, Your Honor.

9          **THE COURT:**  Now, we -- what we can do -- well, no, it

10 was -- the way we do the seal thing -- and I think Ms. Brenda

11 can confirm for us -- if something is sealed, there would be a

12 redacted copy and then, you know, it will still be under --

13 under the Plea Supplement, it's going to be restricted anyway.

14         **MR. DAVIS:**  Because he --

15         **THE COURT:**  But it is about what we have said during

16 this proceeding.

17         **MR. DAVIS:**  Yes, Your Honor.  And we can redact

18 whatever.  Mr. Moffett is going to want a copy of the

19 transcript.  He's already told me he wants a copy.

20         **THE COURT:**  See, that's the very thing I'm thinking

21 about, because it's not just for him.  It's for other people.

22 That's what I'm thinking.

23         **MR. DAVIS:**  I don't know the answer to that, Your

24 Honor.

25         **THE COURT:**  I don't think he should -- well, we'll

46

1  deal with that when we get to it.

2          **MR. DAVIS:** Yes, Your Honor.

3          **THE COURT:** But y'all -- you know my concern.  And I

4  think you know why I have the concern.  Especially because this

5  case is not new to me.  I know what has gone on before, and I

6  know some of the other people, you know, who have pled before.

7  So, I don't want that paragraph read.  So, let's just -- we're

8  going to have to --

9          **MR. DAVIS:** Yes, Your Honor.

10         **THE COURT:** -- figure out some way to do it.

11         **MR. DAVIS:** Yes, Your Honor.

12         **THE COURT:** Now, that's what I'm thinking.  Now, is

13  he -- you talk to him -- he's your client -- about the sealed

14  part of this transcript.  Now, it can just be one short period.

15  And I guess I understand to the extent that he is thinking if

16  anything is sealed, you know.

17         **MR. DAVIS:** He is --

18         **THE COURT:** I don't know any other way, because we

19  need to fix this on the record, unless y'all are going to -- I

20  mean, I know you're going to submit a hard copy of it.  But to

21  the extent that I need to ask him questions about what he

22  understands as to the amendments made to the Plea Agreement,

23  that's just kind of something I'm going to need to do on the

24  record.

25         **MR. DAVIS:** Yes, Your Honor.

1      **THE COURT:**  So, now, I got -- now, here is another

2   option.  The only other option I can think of is for y'all to

3   totally trash this Plea Agreement and y'all come up with a

4   clean one.  But --

5      **MR. DAVIS:**  I can -- we can do that.

6      **THE COURT:**  -- I guess the bottom line is we're going

7   to be back with me having to explain, period.  Because we've

8   started with this one.

9      **MR. DAVIS:**  Okay.

10      **THE COURT:**  So, no, just -- that's not an option.

11      **MR. DAVIS:**  Okay.

12      **THE COURT:**  It's just really my concern about it

13   being read on the record.  Now, if he --

14      **MR. DAVIS:**  Okay.

15      **THE COURT:**  If he doesn't have any problem about it

16   being read on the record --

17      **MR. DAVIS:**  We can waive reading it, Your Honor.

18      **THE COURT:**  Okay.  But, no -- but that still gets me

19   to the point where I need to explain to him -- I need to ask

20   him, "Do you see the changes are made?  Do you see -- do you

21   understand why they were made, and everything?"  Now, I can do

22   that without reading the entire provision to him.

23      **MR. DAVIS:**  Let's do that, Your Honor.

24      **THE COURT:**  But if he has some questions about it,

25   then we're going to have to do a little bit more.  So, but his

1   instruction to you is he absolutely does not want this sealed?

2          **MR. DAVIS:**  He will -- no, he does not, and will

3   stomp his foot over that very thing.

4          **THE COURT:**  Okay.  Well, but he's comfortable with

5   this provision being read in the record?

6          **MR. DAVIS:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  Well, you can go ahead and read it

8   then.

9          **MR. DAVIS:**  Well, what I'll do is just say I've

10  explained the changes to him, and he agrees with it.  And you

11  can ask him if he agrees with the changes.  He's initialed

12  them.

13         **THE COURT:**  Okay.  I can do that.

14         **MR. DAVIS:**  Thank you, Your Honor.

15         **THE COURT:**  All right.

16         **(BENCH CONFERENCE CONCLUDED.)**

17         **THE COURT:**  All right, I called counsel to the bench

18  because I was concerned about something that is typically in

19  our district by local rule that is filed in a certain way.  I

20  wanted to ensure that the contents of that would not be read in

21  open court.  But given Mr. Davis's consultation with the Court,

22  I'm going to let him proceed how he thinks best.

23         **MR. DAVIS:**  Thank you, Your Honor, and thank you for

24  the correction.

25      If it please the Court, we have redacted or altered the

49

1    Plea Supplement.  We have stricken two words from the first

2    sentence.  We have stricken two words from the last sentence

3    and added two additional words to the last sentence.  Myself,

4    Mr. Leary, and Mr. Moffett have all initialed those changes.

5    And if the Court would like to *voir dire* Mr. Moffett, I believe

6    he agrees to those changes and is fine with them and

7    understands them.

8            **THE COURT:**  The Court absolutely would like to ask

9    Mr. Moffett questions.

10       Mr. Moffett, do you agree to the changes that have been

11   made to that paragraph?

12           **THE DEFENDANT:**  Yes, ma'am.  Where I can withdraw my

13   plea?

14           **THE COURT:**  If --

15           **THE DEFENDANT:**  If you don't --

16           **THE COURT:**  The effect of that will be --

17           **THE DEFENDANT:**  Yes, ma'am.

18           **THE COURT:**  Yes, the effect of those changes will be

19   that if I decide --

20           **THE DEFENDANT:**  Yes, ma'am.

21           **THE COURT:**  -- that I'm not going to accept the Plea

22   Agreement, then you will have the right to withdraw your plea.

23           **THE DEFENDANT:**  Yes, ma'am.

24           **THE COURT:**  That is correct.

25           **THE DEFENDANT:**  Yes, ma'am.

1          THE COURT:  Okay.  But as to the specific changes

2     that were made to get you to that point, do you understand the

3     changes that were made?

4          THE DEFENDANT:  Yes, ma'am.  I have brought that -- I

5     had brought the same question up to my lawyer about that before

6     we even came to this when I seen it.

7          THE COURT:  Okay.

8          THE DEFENDANT:  And he had said something to the --

9     he had said something to them about it.  I told him that

10    changed a whole lot.

11         THE COURT:  Uh-huh.

12         THE DEFENDANT:  You know what I'm saying?  And then

13    you brought it up and, you know, it got corrected.  So, yes,

14    ma'am, I understand.

15         THE COURT:  Okay.  And to the extent that you

16    understand the changes that were made, I'm going to see a copy

17    of that in a minute, because I need to look and see what they

18    are.  But where you have initialed by those changes, those

19    initials -- your initials of that means that you understand and

20    agree to those changes.  Is that fair?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  Okay.  That being the case then, I think

23    that's all we need to take up.  But you-all present to me the

24    copy with the changes.

25         MR. LEARY:  Yes, Your Honor.  Your Honor, at this

51

1    time, the government would submit the original Plea Agreement.

2              **THE COURT:**   (Examining document.)

3        Okay.  So, I see the changes.  The "GM" is Mr. Moffett.

4    Is that correct, Mr. Moffett?

5              **THE DEFENDANT:**  Yes, ma'am.

6              **THE COURT:**  As far as initials are concerned.  We

7    have "SFL."  That's Mr. Leary; correct?

8              **MR. LEARY:**  Yes, Your Honor.

9              **THE COURT:**  And then -- I can barely make out your

10   handwriting, Mr. Davis.

11             **MR. DAVIS:**  I'm sorry, Your Honor.

12             **THE COURT:**  Is that a RD?

13             **MR. DAVIS:**  "CD."

14             **THE COURT:**  "CD."

15             **MR. DAVIS:**  Chip Davis.

16             **THE COURT:**  Okay, Chip Davis.  So, that is your

17   initials?

18             **MR. DAVIS:**  Yes, Your Honor.

19             **THE COURT:**  So, the Court has reviewed it, and the

20   Court, to the extent that the parties have indicated it is

21   their intent to modify the paragraph in that way, then the

22   Court understands that.

23        The Plea Agreement will be filed, and the Plea Supplement,

24   as is standard in this district, will by filed under seal.

25        Now, since we've gotten to a point, Mr. Moffett, where we

52

1   understand the terms of the Plea Agreement -- and in fact those

2   are some questions I have for you in that respect.  Do you

3   understand all the terms of the Plea Agreement with the

4   modifications made?

5         **THE DEFENDANT:**  Yes, ma'am.  Now, I do.  Because,

6   see, in the Plea Agreement, it was saying that I can't -- I

7   can't do this, I can't do that.  If I plead guilty, then I

8   can't come back and -- but this here, it classifies and

9   verifies it.  Yes, ma'am.

10        **THE COURT:**  That is absolutely right.

11    Were all the other terms of the Plea Agreement accurate as

12   Mr. Leary stated them a minute ago?

13         **THE DEFENDANT:**  Yes, ma'am.

14        **THE COURT:**  Now, to the extent that he mentioned that

15   the Plea Agreement contains a provision where you waive certain

16   things, I want to ask you this question:  Do you specifically

17   understand that except for claims of prosecutorial misconduct

18   or the ineffective assistance of counsel that you waive your

19   rights to appeal and collaterally attack your conviction and

20   sentence?  Do you understand that?

21         **THE DEFENDANT:**  Yes, ma'am.

22        **THE COURT:**  Okay.  And the other paragraph that was

23   just modified, do you understand that if I reject the Plea

24   Agreement, that you will have the right to withdraw your guilty

25   plea in that event?

1       **THE DEFENDANT:** Yes, ma'am.

2       **THE COURT:** And then do you understand that if I

3   reject the Plea Agreement and you don't withdraw your plea,

4   then do you understand that I may impose a more severe sentence

5   than what is called for?

6       **THE DEFENDANT:** That's the -- that was the purpose of

7   me trying to get that clarified, you know what I'm saying, to

8   where I can, you know, take away my Plea Agreement.

9       **THE COURT:** Okay. So let me -- well, I just want to

10  make sure that I ask this question and you answer it then. So,

11  the Court has the option of accepting the Plea Agreement or

12  rejecting the Plea Agreement, or the other option is that I

13  defer ruling on it. If I reject the Plea Agreement and you

14  don't withdraw your guilty plea, do you understand that I may

15  impose a more severe sentence or a less severe sentence as the

16  case may be if you don't withdraw your guilty plea?

17      **THE DEFENDANT:** I wouldn't even take that chance to

18  try to leave it -- leave that up to you. I would just go on

19  and get back. Because I'd be scared. I'm scared now.

20      **THE COURT:** Okay. So, but you got to answer my

21  question.

22      **THE DEFENDANT:** Well, yes, ma'am, I understand. Yes.

23      **THE COURT:** I'm going to say it again.

24      **THE DEFENDANT:** Yes, ma'am.

25      **THE COURT:** If I reject the Plea Agreement and you

54

1  don't withdraw your guilty plea --

2          **THE DEFENDANT:**  Uh-huh.

3          **THE COURT:**  -- do you understand that I may impose a

4  more severe sentence than what you-all may have had some

5  agreement about?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  Very good.  I think we are all straight.

8      Oh, one other thing I wanted to ask the parties as well,

9  because the Plea Agreement says in paragraph two that the

10  government does agree -- and Mr. Leary mentioned this -- the

11  government agrees to not charge the defendant with any other

12  offenses, and to dismiss the remaining counts.  And just so

13  that I understand, and I know you-all understand, that's the

14  remaining counts of all other indictments in this case.  Right,

15  Mr. Leary?

16          **MR. LEARY:**  That is correct, Your Honor.

17          **THE COURT:**  And is that the defendant's

18  understanding?

19          **MR. DAVIS:**  Yes, Your Honor.

20          **THE COURT:**  Okay.  Very good.

21      Mr. Moffett, I do see that there is a signature

22  represented to be yours on the plea documents.  Can you confirm

23  for the Court that you did in fact sign the Plea Agreement and

24  the Plea Supplement?

25          **THE DEFENDANT:**  Yes, ma'am.  You heard me?

1    **THE COURT:** Did you have the opportunity to read and

2  discuss the plea documents with your attorney before you signed

3  them?

4    **THE DEFENDANT:** And disagree with them also, yes,

5  ma'am. Disagree -- I'm saying, like, what I didn't understand,

6  let him know my opinion. Or like I told you, I'm very

7  opinionated. I'm very well outspoken. But, yes, ma'am, we did

8  discuss it, and I do understand.

9    **THE COURT:** Okay. Well, that's why he's there

10  actually.

11    **THE DEFENDANT:** Yes, ma'am.

12    **THE COURT:** If he can't answer your questions, then

13  that's what the Court needs to know.

14    **THE DEFENDANT:** Yes, ma'am.

15    **THE COURT:** So, you know, that's why I asked you

16  earlier whether or not he had answered all of your questions to

17  your satisfaction.

18    **THE DEFENDANT:** Yes, ma'am.

19    **THE COURT:** Okay.

20    **THE DEFENDANT:** That's the reason I signed it. Yes,

21  ma'am.

22    **THE COURT:** Okay. So, you've had the opportunity to

23  read the plea documents and discuss them with Mr. Davis before

24  you signed them?

25    **THE DEFENDANT:** Yes, ma'am.

1        **THE COURT:**  Okay.  And even more importantly, you've

2    had the opportunity to discuss the plea documents with him with

3    respect to the modifications that were made to them today;

4    correct?

5        **THE DEFENDANT:**  You say "today"?

6        **THE COURT:**  Uh-huh.

7        **THE DEFENDANT:**  Yes, ma'am.

8        **THE COURT:**  Okay.

9        **THE DEFENDANT:**  Yes, ma'am.

10        **THE COURT:**  So, Mr. Davis, I would like you to

11    confirm, from your perspective as counsel, that you discussed

12    the plea documents with Mr. Moffett, both today and prior to

13    today, and tell me whether or not you reviewed the facts of the

14    case with him and whether or not you believe that Mr. Moffett

15    will be entering into a plea freely and voluntarily with full

16    knowledge of the charges and the consequences of the guilty

17    plea.

18        **MR. DAVIS:**  Yes, Your Honor.  Mr. Moffett and I have

19    spent a fair amount of time together.  And as he has noted -- I

20    wouldn't call him opinionated.  I would call him thorough.

21    He's very, very thorough.  He looks at everything.  He studies

22    these documents.  A few times when I've presented plea

23    agreements or other documents to him, he's actually asked me,

24    please go away and come back tomorrow or the next day or next

25    week, and let me think about this.  So, he's actually digested

1    things overnight.  And then when I've come back, he had other

2    questions.  So, I definitely believe that Mr. Moffett

3    understands.  And I definitely believe he's entering this Plea

4    Agreement freely and voluntarily and knowingly.

5              **THE COURT:**  Okay.  Very well.

6         So, I've already said that the Plea Agreement will be

7    filed; the Plea Supplement filed under seal, as is standard in

8    this district.

9         Is there anything else about the Plea Agreement before we

10   move on?  Mr. Moffett, any questions?

11             **THE DEFENDANT:**  Not to my knowledge, no, ma'am.

12             **THE COURT:**  Okay.  So we're moving on.

13        Mr. Moffett, do you understand that the offense in Count 1

14   of the Second Superseding Indictment is a felony?

15             **THE DEFENDANT:**  Yes, ma'am.

16             **THE COURT:**  Do you understand that if you plead

17   guilty to that felony and the Court accepts your plea, that you

18   will be of course convicted of that felony; and that conviction

19   may deprive you of the right to vote, hold public office, sit

20   on a jury, and possess any kind of firearm or weapon

21   whatsoever?  You understand that?

22             **THE DEFENDANT:**  Yes, ma'am.

23             **THE COURT:**  Okay.  To the extent that you do plead

24   guilty, Mr. Moffett, and the Court accepts your plea, I, of

25   course, am going to sentence you at sometime in the future.

58

1    I'm going to be guided by the United States Sentencing

2    Commission's guidelines.  Now, those guidelines are only

3    advisory.  So, this Court is not bound to follow them if the

4    Court chooses not to do so.  Can you confirm for me that you

5    and your attorney have discussed how the sentencing guidelines

6    might apply to your case?

7              **THE DEFENDANT:**  Yes, ma'am.

8              **THE COURT:**  Do you understand that the Court won't be

9    able to determine any guideline sentence for you until after a

10   Presentence Investigation Report has been prepared and you've

11   had the opportunity to review it with your attorney and discuss

12   whether or not you have any objections to the reported facts or

13   the application of the guidelines recommended by the probation

14   officer?

15             **THE DEFENDANT:**  Yes, ma'am.

16             **THE COURT:**  Do you understand that in some

17   circumstances, the Court has the authority to depart from the

18   guidelines either in a upward manner or a downward manner; and

19   all that means is that the Court may impose a sentence that is

20   greater than what is called for by the guidelines or that is

21   less than what is called for by the guidelines?

22             **THE DEFENDANT:**  So it could be lesser than the

23   recommended --

24             **THE COURT:**  Yes.

25             **THE DEFENDANT:**  -- ten years that they come up with?

59

1   It could be less?

2         **THE COURT:**  This Court has the authority to give you

3   a greater sentence or a lesser sentence than what is called for

4   by the guidelines.

5         **THE DEFENDANT:**  Yes, ma'am.

6         **THE COURT:**  Yes, sir.

7         **THE DEFENDANT:**  Yes, ma'am.

8         **THE COURT:**  Do you understand that regardless of the

9   guidelines range, though, the Court has the authority to

10   sentence you up to the maximum time allowed by law?

11         **THE DEFENDANT:**  Yes, ma'am.

12         **THE COURT:**  Do you understand as well that if you are

13   sentenced to serve time in prison, you will not be released on

14   parole because parole has been abolished in this federal court?

15   There's no parole in this federal court.  You may have it on

16   the state level, but there's no parole in federal court.

17         **THE DEFENDANT:**  So I'll have to do every day.

18         **MR. DAVIS:**  Eighty-five percent.

19         **THE COURT:**  I think the way the Bureau of Prisons

20   does it, they do have some type of percentage.  And there may

21   be some other factors that go into whether or not you do serve

22   day-for-day.  But as far as the topic of parole is concerned,

23   it does not exist in the federal system.  Do you understand

24   that?

25         **THE DEFENDANT:**  Yes, ma'am.

1          **THE COURT:**  Do you understand that?

2          **THE DEFENDANT:**  Now, I do, yes, ma'am.

3          **THE COURT:**  Okay.  I think we are at our last set of

4 questions, Mr. Moffett.

5          **THE DEFENDANT:**  (Laughing.) Yes, ma'am.

6          **THE COURT:**  So I'm going to ask you for your plea,

7 after I go through these last set of questions.

8     The last set of questions concern your constitutional

9 rights, and in particular your waiver or giving up of those

10 rights if you plead guilty here today.  All of these questions

11 are going to start for the most part, "Do you understand,"

12 which I said at the outset is the most important thing, that

13 you understand here today.

14     First, do you understand that you have the right to plead

15 not guilty?

16          **THE DEFENDANT:**  That's a question?

17          **THE COURT:**  That's a question.

18          **THE DEFENDANT:**  Oh, yes, ma'am.

19          **THE COURT:**  Do you understand that under the

20 Constitution and the laws of this country, you are entitled to

21 a speedy and public trial by jury on the charges against you?

22          **THE DEFENDANT:**  Yes, ma'am.

23          **THE COURT:**  Do you understand that if you had a

24 trial, you would be presumed innocent of the charges and the

25 government would have to prove your guilt beyond a reasonable

1  doubt before you could be found guilty?

2         **THE DEFENDANT:**  Yes, ma'am.

3         **THE COURT:**  Do you also understand that if you had a

4  trial, the government's witnesses would have to come into court

5  and testify in your presence, that your attorney could

6  cross-examine the government's witnesses, and your attorney

7  could call witnesses to testify on your behalf?

8         **THE DEFENDANT:**  Yes, ma'am.

9         **THE COURT:**  Do you understand that you would have the

10  right, if you had a trial, to require that witnesses come to

11  court and testify?

12         **THE DEFENDANT:**  Yes, ma'am.

13         **THE COURT:**  Are you also aware that if you had a

14  trial, you would have the right to testify in your own defense,

15  but if you chose not to testify in your own defense, the fact

16  that you did not testify could not be used against you?

17         **THE DEFENDANT:**  Yes, ma'am.

18         **THE COURT:**  Do you understand that if you had a trial

19  and were convicted, you would have the right to appeal not only

20  your sentence but also your conviction?

21         **THE DEFENDANT:**  Yes, ma'am.

22         **THE COURT:**  Now, based upon your responses to these

23  last questions, Mr. Moffett, do you understand that if you

24  plead guilty here today and the Court accepts your plea,

25  there's not going to be a trial.  You will have waived all of

62

1  the constitutional rights that I just asked you about; I'm

2  going to enter a judgment of conviction based on your guilty

3  plea and then I'm going to sentence you after I've considered

4  the Presentence Investigation Report.  Do you understand all of

5  that?

6             **THE DEFENDANT:**  Yes, ma'am.

7             **THE COURT:**  Okay.  I know that was a lot.

8     So, Mr. Moffett, do you have any questions about these

9  constitutional rights at all?

10             **THE DEFENDANT:**  No, ma'am.

11             **THE COURT:**  Do you have any questions about waiving

12  or giving up your constitutional rights if you plead guilty?

13             **THE DEFENDANT:**  No, ma'am.

14             **THE COURT:**  Have you discussed giving up these

15  constitutional rights with your attorney?

16             **THE DEFENDANT:**  Yes, ma'am.

17             **THE COURT:**  Having discussed giving up these rights

18  with your attorney, is it still your wish to plead guilty to

19  Count 1 of the Second Superseding Indictment?

20             **THE DEFENDANT:**  Yes, ma'am.

21             **THE COURT:**  We're at the time for the pivotal

22  question, Mr. Moffett.  So I have to ask -- and I appreciate

23  your thoroughness and your opinions, because they are important

24  here today.  This is your life, and it is your decision.  Do

25  you have any questions about what we've discussed thus far,

63

1    this proceeding, or anything else before I ask you for your

2    plea?

3              **THE DEFENDANT:**  No, ma'am.

4              **THE COURT:**  In the case of the United States of

5    America versus Gregory Moffett, Mr. Moffett, how do you plead

6    to Count 1 of the indictment?

7              **THE DEFENDANT:**  Guilty.

8              **THE COURT:**  It is the finding of this Court then in

9    the case of the United States versus Gregory Moffett that,

10   Mr. Moffett, you're fully competent and capable of entering an

11   informed plea; that you're aware of the nature of the charges

12   and the consequences of the guilty plea, and that your guilty

13   plea is knowing, voluntary, and supported by an independent

14   basis of fact, which contains each of the essential elements of

15   the offense and it is not the result of the force, threats, or

16   promises.

17        So, the Court accepts your guilty plea, Mr. Moffett.  You

18   are now convicted of Count 1 -- of the charges in Count 1 of

19   the Second Superseding Indictment.

20        With respect to the Plea Agreement, the Court is going to

21   defer ruling on it.

22        Mr. Moffett, there will be a written Presentence Report

23   prepared by the probation office.  I've mentioned it throughout

24   this proceeding.  You're going to be questioned by a probation

25   officer for purposes of that report.  I always encourage every

1   defendant who is being questioned by probation to have his or

2   her attorney present while they are being questioned.  I also

3   encourage every defendant to answer those questions honestly.

4   And let me tell you why, Mr. Moffett.  Your responses are going

5   to be incorporated in that Presentence Report.  And that

6   Presentence Report is going to end up with me eventually.  It

7   is the main thing that I read to determine what I believe is an

8   appropriate sentence.  There may be some things you would

9   rather not talk about.  There may be some things that are

10  embarrassing to you.  And for instance, I mentioned this -- you

11  mentioned this morning that there were certain things that you

12  did not want to answer about, you know, your mental health.

13  All I can say is I encourage you to answer those questions

14  honestly, because those are factors that I take into account

15  when I decide what the appropriate sentence is.  So, I can't

16  require that you answer honestly.  I can just encourage you

17  that you answer honestly.  I do believe that it is in your best

18  interest if you do.

19      Now, after that Presentence Report has been prepared, you

20  and your attorney will have the opportunity to review it and

21  make a decision about whether or not you're going to file any

22  objections to any of the reported facts or the application of

23  the guidelines recommended by the probation officer.  If you do

24  decide that you're going to file objections -- and the

25  government has the opportunity to file objections too -- and

1  those objections are not resolved by the time of your

2  sentencing hearing, then I will take them up one at a time at

3  your sentencing hearing, or sometimes I set a separate hearing

4  just on the objections.  But rest assured, they will be

5  addressed before I sentence you.

6      Now, at your sentencing hearing, you will have the

7  opportunity to speak on your own behalf.  You've already told

8  me that you're not shy.  So, you will have the right to speak,

9  and the Court will listen to anything you want to take into

10 consideration before I sentence you.  Your attorney will also

11 have the opportunity to speak on your behalf at the hearing.

12     I'm going to set sentencing for June 15, 2022.  That is a

13 Wednesday.  Unless you-all tell me that someone has a conflict.

14     **MR. DAVIS:**  Not at the present, Your Honor.

15     **THE COURT:**  Okay.  Sentencing will be set for June

16 15, 2022.  I'm going to enter an order with that date.  There

17 will be some other deadlines associated with sentencing, some

18 presentencing deadlines, Mr. Moffett, that your attorney will

19 discuss with you.

20     There will be one thing that I'm not going to set a

21 deadline for.  And that is if you wish to submit any reference

22 letters from people you know who know you well and you want me

23 to take what they say into account before I sentence you, go

24 ahead and ask those persons to write those letters so they can

25 be provided to your attorney and your attorney can file them on

66

1  the docket in your case to make sure that I see them before I

2  sentence you.  I will tell you, I read every one of those

3  letters.  Sometimes there are a lot of them.  I want to make

4  sure that I read them.  Because there are a lot of occasions

5  where those letters present a different side of a defendant

6  than what is in that Presentence Report.  So, that is an option

7  for you.  You do not have to submit any reference letters,

8  though.  I will in no way hold it against you, if you don't

9  submit not one.  I just want to let you know of the option to

10 do so, if you want to.  I will read all of those letters as

11 well.

12          **THE DEFENDANT:**  Yes, ma'am.

13          **THE COURT:**  Mr. Moffett, there was one thing I was

14 curious about.  You mentioned it earlier.  You said that you

15 had been in prison, you know, either twenty years or close to

16 twenty years, and you're just forty-seven years old today.

17 What -- if you don't mind telling me -- and it will come out in

18 the Presentence Report -- what is it that, the crime -- what

19 was the crime that you committed that had you put in prison

20 when you were, what, 27 years old about, or a little younger?

21          **THE DEFENDANT:**  I've basically been locked up since I

22 was 18.  But, yes, ma'am, that charge there, they got me

23 charged with murder.

24          **THE COURT:**  With murder?

25          **THE DEFENDANT:**  Yes, ma'am.

67

1        **THE COURT:**  Did you end up entering a guilty plea in

2   that case, or was there a trial?

3            **THE DEFENDANT:**  I went to trial.

4        **THE COURT:**  Okay.  I was just curious.  That's a long

5   time.  And, I mean, you're 47.  That's young, by my standards.

6   So, I was just curious about that.

7        Again, these things will come out in the Presentence

8   Report, but I wanted to ask you about that, to the extent that

9   you are willing to tell me about it now.

10       I want to ask everybody in here, Counsel, probation

11  officer, Mr. Moffett, is there anything that we missed and

12  should address before we adjourn this proceeding today?

13           **MR. LEARY:**  Nothing from the government, Your Honor.

14       **MR. DAVIS:**  Your Honor, from the defendant, as I

15  mentioned before, Mr. Moffett is very, very thorough.  He is

16  very meticulous about his paperwork.  He was asking -- and I

17  know the answer about the Plea Supplement.  But other than the

18  Plea Supplement, Mr. Moffett has asked that he be allowed to

19  have a copy of these plea documents.  Does the Court --

20       **THE COURT:**  A copy of the plea documents themselves?

21       **MR. DAVIS:**  Yes, Your Honor.  The Second Superseding

22  Indictment, the Elements, the Plea Agreement, and the Factual

23  Basis.

24       **THE COURT:**  As I understand it -- and you can answer

25  this question for me -- under, I believe, a standing order in

1  this district, what is the defendant allowed to have, at least

2  keep on his person?

3      **MR. DAVIS:**  As I understand it, the Plea Supplement

4  is obviously verboten.  A Presentence Investigation Report is

5  contraband.  And I believe Jencks material is considered a

6  no-no, as is other witness statements.  Anything essentially

7  that contains a witnesses statement.  I don't know of anything

8  specifically in the plea documents, other than the Plea

9  Supplement that is specifically excluded.

10     **THE COURT:**  What I will do is take that request under

11  advisement, and I will either -- because what I want to do is

12  review the standing order and just confirm for myself.

13     I'm trying to think about how I would let you-all know,

14  though.  I guess it could be informal, to the extent that

15  you've asked on the record.  And I don't want to enter any

16  order.  Because if I did, and if it was different -- if what I

17  found was different -- well, I guess I could make a quick

18  one-sentence order, or something to that effect, to the extent

19  that it may be necessary.  But if it is pursuant to a standing

20  order, again, it's not forbidden in the standing order, then I

21  don't need to enter any order in that respect.  But I will take

22  that request under advisement.

23     Specifically, though, you're asking for a copy of the

24  indictment?

25     **MR. DAVIS:**  The Second Superseding Indictment, the

1  Plea Agreement, not -- we know the answer to the Plea

2  Supplement.

3          **THE COURT:** Uh-huh.

4          **MR. DAVIS:** But the Plea Agreement, the Elements of

5  the offense and the Factual Basis.

6          **THE COURT:** Okay. I will let you know. I will tell

7  you, though, that if it is not within the confines of what is

8  typically allowed, I'm probably not going to allow it either.

9  In fact, I can just tell you right now, I'm not going to allow

10 it. You would have to present some special consideration or

11 some special factors that the Court would have to take into

12 consideration. So I just want to confirm for myself what is

13 and what is not allowed, and then I will advise in that

14 respect.

15         **MR. DAVIS:** Thank you, Your Honor.

16         **MR. LEARY:** Your Honor, if I could just state, the

17 government has hesitancy on the Factual Basis just because we

18 have other people's names in it. And so I will just say

19 hesitancy, because I haven't thought about it long enough to

20 say.

21         **THE COURT:** Understood. And I tell you what,

22 Counsel, you-all, to the extent that I've taken this request

23 under advisement, if you would like to, after this hearing,

24 present I guess additional considerations for the Court to

25 consider in that respect, you can just e-mail the Court and let

1  me know those at that time.

2      But otherwise, Mr. Moffett, I just want you to understand

3  I just want to look at what our standing order -- or what our

4  typical order does allow.

5      Mr. Fountain.

6          **PROBATION OFFICER:**  May I approach?

7          **THE COURT:**  You may.

8      Counsel, would you like to?

9      Or do you just want to talk to me?

10         **PROBATION OFFICER:**  Oh, it doesn't matter.  It

11 doesn't matter.  They can come on.

12         **THE COURT:**  Just a second.

13                  **(BENCH CONFERENCE BETWEEN THE**

14                  **COURT AND COUNSEL OUTSIDE THE**

15                  **HEARING OF THE JURY AS FOLLOWS,**

16                  **TO WIT:)**

17         **PROBATION OFFICER:**  You told me to speak up, now.

18         **THE COURT:**  Oh, no, no, no.

19         **PROBATION OFFICER:**  When you asked for his plea, you

20 asked for his plea in Count 1 of the indictment, and didn't

21 specify it was the Second Superseding Indictment.

22         **THE COURT:**  Oh.

23         **PROBATION OFFICER:**  So I just wanted to clarify that.

24         **THE COURT:**  I think I will.

25         **PROBATION OFFICER:**  I just wanted to bring it up

71

1   while I was --

2          **THE COURT:**  I tell you --

3          **PROBATION OFFICER:**  -- bringing stuff up.

4          **THE COURT:**  -- y'all have just taken me around the

5   world today.

6          **PROBATION OFFICER:**  It's a minor thing.

7          **THE COURT:**  No, that's a major thing.

8          **PROBATION OFFICER:**  But while we were splitting

9   hairs, we could just go on and get it right.

10         **THE COURT:**  That's a major thing.

11         **PROBATION OFFICER:**  Okay.

12         **THE COURT:**  Okay.

13         **PROBATION OFFICER:**  Thank you.

14         **(BENCH CONFERENCE CONCLUDED.)**

15         **THE COURT:**  All right, Mr. Moffett, you tired of

16  standing?

17         **THE DEFENDANT:**  (Laughing.) Yes, ma'am.  Yes, ma'am.

18         **THE COURT:**  What I have strived to do throughout this

19  proceeding today is to make sure that we are clear and that

20  there is no need for anyone to come back and question anything

21  that we have done here today.  I was advised -- and in fact you

22  answered, when I asked you for your plea, I asked for just the

23  indictment and I may not have said Second Superseding

24  Indictment.  So to make sure that we are clear about what

25  you're pleading to consistent with the Plea Agreement, I'm

72

1  going to ask you that question again.

2      In the case of the United States of America versus Gregory

3  Moffett, how do you plead to Count 1 of the Second Superseding

4  Indictment?

5          **THE DEFENDANT:**  Guilty.

6          **THE COURT:**  Then, the Court finds then that you have

7  entered a guilty plea to the Second Superseding Indictment as

8  to Count 1, knowing, voluntarily, with the full knowledge of

9  the charges and the consequences of the guilty plea, and not as

10  a result of force, threats, or promises.

11      We should have a very clear record here today, gentlemen,

12  before we leave out of this courtroom.

13          **MR. DAVIS:**  Yes, Your Honor.

14          **THE COURT:**  I'm going to ask you one last time,

15  Mr. Moffett, because I just want to make sure that you have

16  your moment.  Is there anything that you would like the Court

17  to clarify, or any questions you have about what has happened

18  during this hearing today?

19          **THE DEFENDANT:**  No, ma'am.

20          **THE COURT:**  All right, sir.  I appreciate your

21  patience with all of us.

22      Anything further from anyone else?

23          **MR. DAVIS:**  No, Your Honor.

24          **MR. LEARY:**  Nothing from the government, Your Honor.

25          **THE COURT:**  Mr. Moffett, I look forward to seeing you

73

1    June 15th.  If for any reason that date changes, we will enter

2    a Notice, and your attorney will let us know.  And, of course,

3    I will take your other requests that was made on your behalf

4    under advisement.

5            **THE DEFENDANT:**  Yes, ma'am.

6            **THE COURT:**  We are adjourned.

7                        (Adjourned:  12:39  P.M.)

8                        CERTIFICATE

9            I, Brenda D. Blackburn, Federal Official Court

10   Reporter, in and for the United States District Court for the

11   Northern District of Mississippi, do hereby certify that

12   pursuant to Section 753, Title 28, United States Code, that the

13   foregoing 72 pages are a true and correct transcript of the

14   stenographically reported proceedings held in the

15   above-entitled matter and that the transcript page format is in

16   conformance with the regulations of the Judicial Conference of

17   the United States.

18           Witness my hand, this 10th day of June, 2022.

19

20                    _____BRENDA D. BLACKBURN_____

                      BRENDA D. BLACKBURN, RPR, CCR NO. 1087
21                    FEDERAL OFFICIAL COURT REPORTER

22

23

24

25