1

```
 1                  UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF MISSISSIPPI
 2                       OXFORD DIVISION

 3   UNITED STATES OF AMERICA               PLAINTIFF

 4   VS.                                    NO. 3:19-CR-65-10

 5   MICHAEL WILLIE                         DEFENDANT

 6

 7                   CHANGE OF PLEA HEARING

 8

 9            BEFORE HONORABLE DEBRA M. BROWN
            CHIEF UNITED STATES DISTRICT JUDGE

10

11                 Greenville, Mississippi
                     March 16, 2022
12

13   APPEARANCES:

14   For the Government:   JAMES S. "JAY" HALE, JR., ESQUIRE
                           U.S. ATTORNEY'S OFFICE
15                         900 Jefferson Avenue
                           Oxford, Mississippi  38655
16

17   For the Defendant:    DERRICK T. SIMMONS, ESQUIRE
                           SIMMONS & SIMMONS PLLC
18                         Post Office Box 1854
                           Greenville, Mississippi  38702
19

20   Court Reporter:       BRENDA D. BLACKBURN, RPR, CCR #1087
                           FEDERAL OFFICIAL COURT REPORTER
21                         305 Main Street
                           Greenville, Mississippi  38701
22

23

24

25
```

1          (CALL TO ORDER OF THE COURT AT 10:25 A.M.)

2          **THE COURT:**  Good morning.  Be seated, please.

3      Before I call the case, as you-all know, we are not

4   starting at 10:00.  It doesn't matter what the reason is right

5   now.  But my philosophy is that we're not going to let any

6   proceeding that goes before another one make that subsequent

7   proceeding late.  So, I don't mind getting started.  But

8   because we do have -- I know Mr. Hale will be here for the

9   proceeding after that.  But because we will have different

10  defense counsel, if we are not done by five to eleven, then I'm

11  going to have that second one start on time, and we will pick

12  up where we need to.  It just is what it is.

13      So, our first case today is United States of America

14  versus Michael Willie.  This is a change of plea hearing.

15      Who is here as counsel for the government?

16          **MR. HALE:**  Jay Hale, Your Honor.

17          **THE COURT:**  And as counsel for the defendant?

18          **MR. SIMMONS:**  Derrick Simmons, Your Honor.

19          **THE COURT:**  And our representative from probation?

20          **PROBATION OFFICER:**  Andrew Fountain, Your Honor.

21          **THE COURT:**  You-all can remain at your counsel table.

22  Just make sure that there's a microphone in front of you, and

23  of course in front of the defendant, so that we can hear

24  everything you say.  You are welcome to come up to the podium,

25  but I am fine if you stay at counsel table.  We're going to

1  start by having the oath administered to our defendant.

2  **COURTROOM DEPUTY:**  Please stand and raise your right

3  hand.

4  (OATH ADMINISTERED BY COURTROOM DEPUTY.)

5  **THE COURT:**  Good morning, sir.  Are you Michael

6  Willie?

7  **THE DEFENDANT:**  Yes, ma'am.

8  **THE COURT:**  Mr. Willie, what is your full legal name?

9  **THE DEFENDANT:**  Michael Warren Willie.

10  **THE COURT:**  Warren, W-A-R-R-E-N?

11  **THE DEFENDANT:**  Yes, ma'am.

12  **THE COURT:**  Mr. Willie, do you understand that you

13  are now under oath and if you answer any question I ask you

14  falsely, your false answer may be used against you in a

15  prosecution for perjury or making a false statement?

16  **THE DEFENDANT:**  Yes, ma'am.

17  **THE COURT:**  Do you understand you have the right to

18  remain silent and not answer any of the Court's questions?

19  **THE DEFENDANT:**  Yes, ma'am.

20  **THE COURT:**  Now, this Court has been advised that you

21  now wish to plead guilty to Count 1 of the Second Superseding

22  Indictment.  Is that correct?

23  **THE DEFENDANT:**  Yes, ma'am.

24  **THE COURT:**  Is it correct as well that you wish to

25  plead guilty pursuant to a written Plea Agreement with the

4

1  government?

2  **THE DEFENDANT:** Yes, ma'am.

3  **THE COURT:** I have a number of questions to ask you,

4  Mr. Willie. The goal is to make sure that you're fully

5  informed of your rights and that you understand your rights in

6  this proceeding. If at any point you do not understand a

7  question, let me know, and I will clarify it for you. Also, if

8  you would like to speak with your attorney at any point in this

9  proceeding, just stop and let me know that as well, and you

10  will be allowed to have that private conversation. Do you

11  understand all that?

12  **THE DEFENDANT:** Yes, ma'am.

13  **THE COURT:** Mr. Willie, how old are you?

14  **THE DEFENDANT:** 55.

15  **THE COURT:** And what is the highest level of

16  schooling that you completed?

17  **THE DEFENDANT:** The highest level of schooling, I've

18  completed the eleventh grade. But I have a GED.

19  **THE COURT:** Okay. How long ago did you get your GED?

20  **THE DEFENDANT:** In 1999, at the Marshall County

21  Correctional Facility.

22  **THE COURT:** Okay. Very good.

23  Mr. Willie, have you taken or consumed any medication,

24  drugs, alcohol, or anything else that may interfere with your

25  ability to understand the proceedings here today?

5

1          **THE DEFENDANT:**  No, ma'am.

2          **THE COURT:**  Are there any prescriptions that you're

3    required -- any medication that you're required to take

4    pursuant to a prescription on a regular basis?

5          **THE DEFENDANT:**  Yes, ma'am.  High blood pressure and

6    insulin?

7          **THE COURT:**  High blood pressure.  And what else?

8          **THE DEFENDANT:**  And -- I'm a diabetic.

9          **THE COURT:**  Okay.  Now, how often are you required to

10   take those medications?

11         **THE DEFENDANT:**  I take medication in the morning for

12   high blood pressure, and at night for high blood pressure, and

13   take a insulin shot every night.

14         **THE COURT:**  Did you take a high blood pressure pill

15   this morning?

16         **THE DEFENDANT:**  No, ma'am, I didn't take it this

17   morning.  I knew I was going to be in court, and I knew I was

18   going to have to be going to the bathroom quite often.

19         **THE COURT:**  Oh, okay.  Now, did you take the high

20   blood pressure medication yesterday morning?

21         **THE DEFENDANT:**  Yes, ma'am.

22         **THE COURT:**  Are you only required to take it once a

23   day?

24         **THE DEFENDANT:**  I take it twice a day.  I take one

25   pill in the morning and one pill at night.

6

1      THE COURT:  Okay, did you take it last night then?

2      THE DEFENDANT:  Yes, ma'am.

3      THE COURT:  What about the medication for your

4 diabetes?

5      THE DEFENDANT:  Yes, ma'am, I took my shot last

6 night.

7      THE COURT:  Now, the fact that you did not take the

8 high blood pressure this morning, does that in any way have a

9 negative effect on you?

10     THE DEFENDANT:  No, ma'am.

11     THE COURT:  And to the extent that you did take the

12 shot for your diabetes, does that influence or affect you in

13 any way where you don't feel like you're alert?

14     THE DEFENDANT:  No, ma'am.

15     THE COURT:  Okay.  So, you're feeling good today?

16     THE DEFENDANT:  Yes, ma'am.

17     THE COURT:  Wonderful.

18   Have you ever been treated or hospitalized for and

19 addiction to drugs?

20     THE DEFENDANT:  No, ma'am.

21     THE COURT:  Have you ever been treated or

22 hospitalized for any type of mental or emotional illness?

23     THE DEFENDANT:  No, ma'am.

24     THE COURT:  And do you have any physical or mental

25 condition that would prevent you from hearing everything that's

7

1 going to happen today or from understanding the consequences of
2 the guilty plea?

3       **THE DEFENDANT:** No, ma'am.

4       **THE COURT:** Mr. Willie, I do find, then, that you are
5 competent to enter a plea in this case today.

6     Now, Mr. Simmons, your attorney is there with you. Before
7 I proceed further, I have to ask you a few questions about his
8 legal representation. Are you satisfied with Mr. Simmons'
9 representation of you?

10       **THE DEFENDANT:** Yes, ma'am.

11       **THE COURT:** Do you believe Mr. Simmons has
12 represented your best interest in this case?

13       **THE DEFENDANT:** Yes, ma'am.

14       **THE COURT:** And have you had enough time, based on
15 your own estimation, to speak with Mr. Simmons about your case
16 and have him answer any and all questions that you had to your
17 full satisfaction?

18       **THE DEFENDANT:** Yes, ma'am.

19       **THE COURT:** We're going to turn to the indictment
20 pending against you now, Mr. Willie. Have you reviewed a copy
21 of the indictment, the Second Superseding Indictment?

22       **THE DEFENDANT:** Yes, ma'am.

23       **THE COURT:** Count 1 of that Second Superseding
24 Indictment charges you with a certain crime, and I'm going to
25 summarize what those charges say.

8

1       Count 1 charges you with conspiracy to participate in

2   racketeering activities, including to distribute and possess

3   with intent to distribute controlled substances for the purpose

4   of enriching, supporting, and enhancing the Gangster Disciples

5   criminal enterprise in violation of Title 18 United States Code

6   §962(d).

7       Now, again, I've just summarized those charges.  Would you

8   like to have the Second Superseding Indictment read, or do you

9   waive the reading of the Indictment?

10          **THE DEFENDANT:**  I waive it, Your Honor.  I'm quite

11  familiar.  Mr. Simmons went over it numerous times with me.

12          **THE COURT:**  Very good.  I'm glad to hear that.

13      Are you fully aware of what you're charged with in Count 1

14  of the Second Superseding Indictment?

15          **THE DEFENDANT:**  Yes, ma'am.

16          **THE COURT:**  And have you discussed the Indictment and

17  the case with your attorney?

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  Then, Mr. Willie, there are certain

20  elements of proof associated with Count 1, which if your case

21  went to trial the government would have to prove against you

22  beyond a reasonable doubt before you could be found guilty.

23  For purposes of the record here today, I'm going to ask the

24  government's attorney to state those elements for the record.

25      Mr. Hale.

9

1        **MR. HALE:**  To prove a RICO conspiracy, the government

2   must establish, one, that two or more people agreed to commit a

3   substantive RICO offense, and two, that the defendant knew of

4   and agreed to the overrule the overall objective to the RICO

5   offense.

6        The substantive RICO provision requires that the

7   government prove, one, the existence of an enterprise that

8   affected interstate commerce; two, the defendant was associated

9   with the enterprise; three, the defendant participated in the

10  conduct of the enterprise's affairs; and four, participation

11  constituted a pattern of racketeering activity.  A pattern of

12  racketeering activity occurs when the defendant commits at

13  least two predicate acts within ten years.  A conviction for

14  RICO conspiracy pursuant to 18 U.S.C. 1962(d) does not require

15  the defendant actually commit two or more racketeering acts,

16  only that the defendant adopt the goal of furthering or

17  facilitating the criminal endeavor.

18        **THE COURT:**  Thank you.

19        Mr. Willie, having heard those elements of Count 1, do you

20  have any questions about them or the nature of the charges in

21  the case against you?

22        **THE DEFENDANT:**  No, ma'am, I have none.

23        **THE COURT:**  We're going to turn now, Mr. Willie, to

24  the maximum possible penalties applicable to Count 1, and they

25  are:  Imprisonment for life, a fine of not more than $250,000,

1  supervised release after imprisonment for not more than five

2  years, and a special assessment of $100.

3      If you plead guilty here and the Court accepts your plea,

4  I'm going to sentence you, of course, at some point in the

5  future, Mr. Willie.  Do you understand that if you're sentenced

6  to serve time in prison, you may be subject to a term of

7  supervised release following that term of imprisonment?

8              THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that if you violate one

10 or more of the conditions of supervised release, you may be

11 returned to prison for all or a part of that supervised release

12 period?

13             THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  Do you understand the maximum possible

15 penalties that the Court has just mentioned?

16             THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Next, then, we're going to turn to the

18 evidence that the government has against you and would be

19 prepared to prove against you if your case went to trial.

20     Mr. Hale, would you please advise of the government's

21 evidence against Mr. Willie.

22         MR. HALE:  Had this matter proceeded to trial, the

23 United States of America would have introduced evidence and

24 established the following facts beyond a reasonable doubt.

25     The Defendant, Michael Willie, as set forth in Count 1 of

1  the Second Superseding Indictment, was a member of the Gangster
2  Disciples, a street gang operating nationwide and which
3  constituted an enterprise under federal law.  The Gangster
4  Disciples operate inside and outside of the state prison system
5  in Mississippi, and members are in every state prison across
6  the state, including the Mississippi State Penitentiary located
7  in Parchman, Mississippi.

8      The government would ask that the Court take judicial
9  notice that the Mississippi State Penitentiary is within the
10 Northern District of Mississippi.

11     Willie, as a member of the Gangster Disciples, agreed that
12 a coconspirator would commit at least two acts of racketeering
13 involving narcotics, murder, and attempted murder, obstruction
14 of justice, money laundering, and intimidation of witnesses
15 and/or victims.

16     The evidence would show that the Gangster Disciple street
17 gang is a criminal organization with a national presence.  The
18 Gangster Disciple members are part of an ongoing organization
19 that has functioned continuously for a common purpose since its
20 inception during the 1970s.  Since that time, the organization
21 has expanded its reach into several states.  In the last twenty
22 years, it has made a name for itself as being one of, if not
23 the most violent and prevalent gangs in Mississippi.  The gang
24 is well-known for its criminal activities inside and outside of
25 the state prison system, including murder, attempted murder,

12

1    and drug trafficking.  The gang's primary symbols used to

2    indicate membership are a six-point star, a heart with wings,

3    an inverted shepherd's cane, an inverted pyramid, and/or an

4    inverted cross.  To become a member, there is an application

5    form and a background check conducted that investigates each

6    aspiring member.  Once initiated, a member receives a number

7    usually starting with 6.  Afterwards, a member is expected to

8    attend meetings regularly.  The structure of the organization

9    is a centralized authoritarian formal organization with codes,

10   a constitution, and strict rules and regulations governing the

11   gang's activities.

12        The Gangster Disciples in Mississippi state prisons are

13   members of the Folk Nation Alliance, which consists of other

14   violent criminal gangs like the Simon City Royals.

15   Correctional facilities are considered plugged in when there

16   are enough members of the Folk Nation, primarily the Simon City

17   Royals and Gangster Disciples, to form a hierarchy within the

18   facility.  Once the facility is plugged in, a Facility Board is

19   formed that consists of members from the Gangster Disciples,

20   often one or more -- and often one or two members from the

21   Simon City Royals.  While this board is supposed to act

22   autonomously for the facility, actions are often taken at the

23   direction of ranking officers from both the Simon City Royals

24   and the Gangster Disciples.

25        The enterprise engages in narcotics trafficking, money

13

1   laundering, extortion, murder, and attempted murder.  The

2   Gangster Disciple enterprise is clearly engaged in interstate

3   commerce, because witness testimony and seized evidence

4   demonstrates that its members and associates distribute

5   methamphetamine across state lines and use the United States

6   Mail and Visa/Mastercard prepaid debit or stored value cards to

7   engage in money laundering, often facilitated by the use of

8   wire and electronic communications via cellular and landline

9   telephones as well as e-mail, internet, and the wiring of money

10  through Money Gram or Western Union.  Cooperating

11  coconspirators confirm that narcotics were typically procured

12  from sources in other states like California and Arizona.  The

13  Gangster Disciples also employed encrypted messaging

14  applications like Telegram to conduct daily meetings.

15  Contraband cellular telephones allow the enterprise to conduct

16  conference calls using 1-800 numbers.

17       Willie was identified by the Mississippi Department of

18  Corrections officials as a member of the Gangster Disciples.

19  Witnesses would have identified him as a ranking member in the

20  organization.  And e-mails from the gang's members identified

21  him as being in the gang.

22       Witnesses would have described how Willie smuggled in

23  contraband at East Mississippi Correctional Facility State

24  prison through guards and maintenance personnel.  The

25  contraband includes narcotics.  The proceeds from the smuggle

14

1  of contraband was structured by using different means to hide

2  the source of the funds and then funneled up to leadership

3  members across the state, in prison and out in the free world.

4  Money from the criminal activity inside the prison was sent to

5  Willie and others to different, usually, female nominees in the

6  free world.  The money transactions were conducted to obscure

7  the source of the funds.

8      In May of 2018, LaTroy Daniels, Gregory Moffett, and

9  Michael Willie conspired to kill members of a rival gang.

10  Specifically, on or around May 15, 2018, members of the

11  Gangster Disciples and Simon City Royals planned to execute a,

12  quote, bag and tag order against two individuals, DR and CB,

13  who were imprisoned at the East Mississippi Correctional

14  Facility located in Meridian, Mississippi.  The bag and tag

15  order was ordered after one of the victims disrespected a

16  high-ranking member of the Simon City Royals named Jonathan

17  Davis a/k/a Merc.  Davis reported this incident to the board

18  consisting of the Gangster Disciples and Simon City Royals gang

19  members located across the state, in both this district and the

20  Southern District of Mississippi.  The leadership members

21  ordered the bagging and tagging of victims DR and CB.  Willie,

22  a key member of the security for the Gangster Disciples in the

23  zone where the victims were located, helped organize and plan

24  the entire operation prior to the victims being stabbed.

25  Willie instructed subordinate members if they did not carry out

1    the order, that they themselves would be stabbed.  After

2    receiving the order, several of the gang members carried

3    shanks, in other words metal objects sharpened at one end, and

4    used it to assault both victims.  The victims sustained serious

5    bodily injuries as a result of the attack.

6        Federal law enforcement obtained several reports compiled

7    by the organization as well as reports compiled by participants

8    in the crime.  The gang members are required to draft and file

9    after-action-reports.  As a result, law enforcement is in

10   possession of several of these reports which detail the

11   planning, the participants, and the reason for the attack.

12       On or about April 15, 2019, Gregory Moffett and Michael

13   Willie exchanged messages discussing Derrick Houston becoming

14   the superintendent, administrator, or the leader overseeing the

15   Gangster Disciples inside the Mississippi prison system.

16       The government is in possession of text messages, e-mails,

17   Mississippi Department of Corrections records, and other

18   documents which would show that Willie participated in the sale

19   of narcotics while incarcerated inside of the Mississippi

20   prison system.  The government would have shown that Willie is

21   responsible for distributing methamphetamine and spice.

22       This statement of facts is provided to assist the Court in

23   determining whether a factual basis exists for the defendant's

24   plea of guilty.  The statement of facts does not contain each

25   and every fact known to the defendant and to the United States

16

1  concerning the defendant and/or others' conduct and other
2  matters.
3          **THE COURT:** Mr. Willie, did you understand what was
4  said about you as far as the government's evidence is
5  concerned?
6          **THE DEFENDANT:** Yes, ma'am.
7          **THE COURT:** Is everything that was said about you,
8  just you and your conduct, true and correct?
9          **THE DEFENDANT:** Could I ask a question to that?
10         **THE COURT:** You may, sir.
11         **THE DEFENDANT:** With my attorney?
12         **THE COURT:** You absolutely may.
13         (DEFENDANT AND COUNSEL CONFERRING.)
14         **MR. SIMMONS:** Court's indulgence, Your Honor.
15         **THE COURT:** Mr. Simmons, I suggest that you-all turn
16  off your mike. I'd rather not hear you. You can just press
17  the button down at the bottom and make sure that your voices
18  aren't being amplified. And then turn it back on when you're
19  ready.
20         (DEFENDANT AND COUNSEL CONFERRING.)
21         **MR. SIMMONS:** We're ready to proceed, Your Honor.
22         **THE COURT:** All right, I'm going to ask you that
23  question then again, Mr. Willie. Is what was said about you
24  and about your conduct with respect to the government's
25  evidence true and correct?

1      **THE DEFENDANT:**  Yes, ma'am.

2      **THE COURT:**  Will you be pleading guilty voluntarily

3  and of your own free will because you are in fact guilty of the

4  charges in Count 1?

5      **THE DEFENDANT:**  Yes, ma'am.

6      **THE COURT:**  Has anyone threatened you or in any way

7  attempted to force you to plead guilty?

8      **THE DEFENDANT:**  No, ma'am.

9      **THE COURT:**  The Court finds then that there is a

10  factual basis for Mr. Willie to enter a plea here today.

11      We will turn next to the Plea Agreement between Mr. Willie

12  and the government.

13      Mr. Hale, would you please state its substance for the

14  record.

15      **MR. HALE:**  The Plea Agreement is as follows:  The

16  defendant agrees to plead guilty under oath to Count 1 of the

17  Second Superseding Indictment, which charges the defendant with

18  a RICO conspiracy in violation of Title 18 U.S.C. §1962(d).

19      The United States agrees not to charge the defendant with

20  any offenses arising from or related to the above charge and to

21  dismiss all remaining counts.

22      This agreement is limited to the United States Attorney's

23  Office for the Northern District of Mississippi, and does not

24  bind any other state or federal prosecuting authority or any

25  regulatory authorities.  This agreement does not apply --

1   excuse me.  This agreement applies only to the crimes committed

2   by the defendant.  Should the defendant breach or otherwise

3   violate this Plea Agreement, the government will be released

4   from any sentencing recommendations or agreements that the

5   parties have reached.  Should the defendant have already

6   pleaded guilty or been sentenced, the defendant's plea or

7   sentence will still be in effect, and any breach by the

8   defendant does not give him the right to withdraw his guilty

9   plea.

10       The defendant understands that if he breaches his Plea

11  Agreement, any statement made during the plea dialogue may be

12  used against the defendant in a criminal prosecution.

13       The defendant understands the Court may order restitution.

14  Except for prosecutorial misconduct and ineffective assistance

15  of counsel, the defendant hereby expressly waives all rights to

16  appeal the conviction and/or the sentence imposed in this case

17  and the manner in which it was imposed.

18       Except for prosecutorial misconduct and ineffective

19  assistance of counsel, the defendant also hereby expressly

20  waives all rights to contest or collaterally attack the

21  conviction and/or sentence, and the manner in which the

22  sentence was imposed.

23       Apart from being advised of the applicability of the U.S.

24  Sentencing Guidelines and other than as set forth in the plea

25  documents, no promises or representations whatsoever have been

1   made to the defendant as to what punishment the Court might

2   impose if it accepts the plea of guilty.  This agreement fully

3   reflects all promises, agreements, and understandings between

4   the defendant and the United States Attorney.

5       The defendant's agreement is knowing, free, and voluntary,

6   and is not the product of force, threat, or coercion.  The

7   defendant is pleading guilty because he is in fact guilty.

8           **THE COURT:**  Mr. Hale, there was -- as I'm looking at

9   the Plea Supplement, there was one matter that I see that based

10  upon what you-all proposed to the Court, there were some edits

11  made to a provision of the Plea Supplement in paragraph four.

12  And my question is -- and this is without any recitation of

13  what paragraph four says, my question is about the last

14  sentence of that paragraph to the extent that it still uses

15  information or words that speaks about I think the very thing

16  that you-all corrected.

17      Do you see what I'm referring to?

18          **MR. HALE:**  Your Honor, may we approach?

19          **THE COURT:**  You may.

20                  **(BENCH CONFERENCE BETWEEN THE**

21                  **COURT AND COUNSEL AS FOLLOWS, TO**

22                  **WIT:)**

23          **THE COURT:**  Do you see what I'm talking about?

24          **MR. HALE:**  Sure.  But we're not to the recommend.

25          **THE COURT:**  Well, the reason that I had e-mailed

20

1   you-all about this is because it used the 11 (c)(1)(b) language

2   and the same recommend -- recommendations when this says 11

3   (c)(1)(C) --

4           **MR. HALE:**  Right.

5           **THE COURT:**  Which means that if the Court accepts it,

6   it's binding.

7           **MR. HALE:**  Correct.

8           **THE COURT:**  So -- and I'm just telling you what we

9   did with the other plea agreements.

10          **MR. HALE:**  Okay.

11          **THE COURT:**  That was actually eliminated as well.

12  Just to make sure there's no misunderstanding.

13          **MR. HALE:**  Okay.  Just the word, "recommendation"?

14          **THE COURT:**  I think it said --

15          **MR. HALE:**  So --

16          **THE COURT:**  I think it said -- yeah.  The way they

17  edited it before, it said, "Should the Court not accept this

18  agreement," or something like that.  Just took out that word.

19          **MR. HALE:**  Okay.  Let me get --

20          **THE COURT:**  I just don't want this coming back to us

21  at any point in time.

22          **MR. HALE:**  Sure.

23          **THE COURT:**  Because the defendant is saying that he

24  may have understood, even if he's saying he is now.

25          **MR. HALE:**  Sure.

1             **THE COURT:**  And, of course --

2             **MR. SIMMONS:**  I've been primarily dealing with

3  Attorney Sam Stringfellow.

4             **THE COURT:**  Uh-huh.

5             **MR. SIMMONS:**  And we made these changes --

6             **THE COURT:**  Uh-huh.

7             **MR. SIMMONS:**  -- after the Moffett --

8             **THE COURT:**  Uh-huh.

9             **MR. SIMMONS:**  -- initially on the record.

10           **MR. HALE:**  You said "this agreement"?

11             **THE COURT:**  Yeah.  I mean, I'm not telling y'all what

12  to say.

13           **MR. HALE:**  No, no.

14             **THE COURT:**  But you know what I'm saying that --

15           **MR. HALE:**  Yes, ma'am.

16             **THE COURT:**  -- that's still contradictory a little

17  bit, to me, to the extent he used that word.  And I just want

18  to make sure.  And I will ask Mr. Willie on the record if he

19  understands why --

20           **MR. HALE:**  You want to have Mr. Willie initial that?

21  "Should the Court not accept this agreement for the

22  recommendation" --

23             **MR. SIMMONS:**  Oh, yeah.

24             **THE COURT:**  So, you'll speak with him.  And we'll get

25  back on the -- okay.

22

1          **(BENCH CONFERENCE CONCLUDED.)**

2          (COUNSEL CONFERRING WITH DEFENDANT.)

3          **MR. SIMMONS:**  May I approach, Your Honor?

4          **THE COURT:**  You may.

5          **MR. SIMMONS:**  Did you want us to initial that?

6          **THE COURT:**  Yes.  And government as well.

7          **MR. SIMMONS:**  May I approach?

8          **THE COURT:**  Yes.

9      Ms. Guidry.

10     (DOCUMENT HANDED TO COURT.)

11         **THE COURT:**  All right.  To the extent that the Court

12 raised a concern about one provision of the Plea Supplement as

13 it appeared to be contradictory, I first want to ask

14 Mr. Willie.

15     Mr. Willie, your attorney has just spoken with you in

16 private about the edit to that provision of the Plea

17 Supplement.  Do you understand why the edit was made?

18         **THE DEFENDANT:**  Yes, ma'am.  We already had the

19 discussion prior.

20         **THE COURT:**  Oh, okay.  Very good.  And do you -- I

21 see that you have initialed that edit that was just made?

22         **THE DEFENDANT:**  Yes, ma'am.

23         **THE COURT:**  And if Counsel would just confirm that

24 the other initials belong to both counsel for the government

25 and counsel for the defendant?

23

1        **MR. HALE:**  That's correct, Your Honor.

2        **MR. SIMMONS:**  That's correct, Your Honor.

3        **THE COURT:**  Okay.  I just wanted to get that

4    straight.

5        **MR. SIMMONS:**  Your Honor, I just -- on behalf of

6    Mr. Willie, he just requested a copy of it.  I just wanted to

7    make sure I let him know I am going to get him a copy of it.

8        **THE COURT:**  Okay.

9        One thing that the government mentioned when the

10   government was going over the Plea Agreement, Mr. Willie, is

11   that you waive -- to the extent that the Court accepts this

12   Plea Agreement, you waive all rights to contest or collaterally

13   attack your conviction and your sentence except as to

14   prosecutorial misconduct or ineffective assistance of counsel.

15   I just want to ask you specifically, you understand that to be

16   the case; is that correct?

17       **THE DEFENDANT:**  Yes, ma'am.

18       **THE COURT:**  With respect to the Plea Supplement and

19   the provision that we were discussing, do you understand if the

20   Court accepts the Plea Agreement, then the Court will be bound

21   by the agreement that you came up with the -- to the -- I'm

22   sorry -- that you came up with the attorneys, the government's

23   attorney, about this provision.  Do you understand that?

24       **THE DEFENDANT:**  Yes, ma'am.

25       **THE COURT:**  Now, do you understand if the Court does

24

1  not accept the Plea Agreement, that the Court will give you the

2  right to withdraw your guilty plea if you wish?

3          **THE DEFENDANT:**  Yes, ma'am.

4          **THE COURT:**  Do you understand that if you do not

5  withdraw your guilty plea in that instance, the Court may

6  sentence you to a term of imprisonment that may be different

7  without taking into account anything that was said in that

8  paragraph of the Plea Supplement?  Do you understand that?

9          **THE DEFENDANT:**  Yes, ma'am.

10          **THE COURT:**  Did you have the opportunity to read and

11  discuss the contents of the plea documents with your attorney

12  before you signed them?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  And can you confirm for the Court that

15  the signature on the plea documents -- and if you-all need this

16  copy back -- is indeed where you signed, Mr. Willie?

17          **THE DEFENDANT:**  Yes, ma'am.

18          **THE COURT:**  Mr. Simmons, would you confirm that you

19  discussed the plea documents with Mr. Willie before he signed

20  them as well as reviewed the facts of the case and the

21  government's evidence?

22          **THE DEFENDANT:**  I did, Your Honor.

23          **THE COURT:**  Do you believe that Mr. Willie will be

24  entering into this plea freely and voluntarily with full

25  knowledge of the charges and the consequences of the guilty

25

1    plea?

2              **MR. SIMMONS:**  I do, Your Honor.

3              **THE COURT:**  Very well, then.  The Plea Agreement will

4    be filed; the Plea Supplement will be filed under seal.

5         All right, I mentioned to you-all, since we did not start

6    on time, that the Court may continue this to a later time.  But

7    I guess I want to ask, since we do have counsel for the next

8    matter, defense counsel in the courtroom.  Mr. Farese, we

9    started a little bit late.  Are you fine with us proceeding, or

10   have any issue with the Court starting the matter that you're

11   here for a bit late?

12             **MR. FARESE:**  We have no objection to that, Your

13   Honor.

14             **THE COURT:**  Okay.  We will move forward then.  I'm

15   sure Counsel appreciate your indulgence.

16        Mr. Willie, do you understand the offense in Count 1 of

17   the Second Superseding Indictment is a felony?

18             **THE DEFENDANT:**  Yes, ma'am.

19             **THE COURT:**  Do you understand that if you plead

20   guilty to that felony and the Court accepts your plea, you will

21   by convicted of this felony, and that conviction will deprive

22   you of certain civil rights, such as the right to vote, hold

23   public office, sit on a jury, and possess any kind of firearm

24   or other weapon?

25             **THE DEFENDANT:**  I understand.

26

1    **THE COURT:**  To the extent that the Court will be

2    sentencing you, Mr. Willie, I'm going to be guided by the

3    Sentencing Commission's guidelines.  Now, those guidelines are

4    only advisory.  So the Court is not bound to follow them if the

5    Court chooses not do so.  Have you and your attorney discussed

6    how these sentencing guidelines might apply to your case?

7            **THE DEFENDANT:**  Yes, ma'am.

8            **THE COURT:**  Do you understand the Court won't be able

9    to determine your guideline sentence until after a Presentence

10   Investigation Report has been prepared and you and your

11   attorney as well as the government's attorney have had the

12   opportunity to review it and determine if you have any

13   objections to the reported facts or the application of the

14   guidelines recommended by the probation officer.

15           **THE DEFENDANT:**  Yes, ma'am.

16           **THE COURT:**  Do you understand that regardless of your

17   guidelines range, the Court has the authority to sentence you

18   up to the maximum time allowed by law?

19           **THE DEFENDANT:**  Yes, ma'am.

20           **THE COURT:**  Do you understand that if you are

21   sentenced to serve time in prison, you will not be released on

22   parole based on this federal sentence, because parole has been

23   abolished in this federal court?

24           **THE DEFENDANT:**  Yes, ma'am.

25           **THE COURT:**  Do you understand that under some

27

1    circumstances, you or the government may have the right to

2    appeal any sentence that the Court imposes?

3              **THE DEFENDANT:**  Yes, ma'am.

4              **THE COURT:**  I have a final series of questions for

5    you, Mr. Willie, before I ask for your plea.  These questions

6    concern your constitutional rights, and in particular your

7    waiver or giving up those rights if you plead guilty here

8    today.  A lot of these questions will begin with the words, "Do

9    you understand," as some of the questions have throughout this

10   proceeding.  But I just ask that you bear with me as we go

11   through them.

12        Do you understand that you have the right to plead not

13   guilty?

14             **THE DEFENDANT:**  Yes, ma'am.

15             **THE COURT:**  Do you understand that under the

16   Constitution and the laws of this country, you are entitled to

17   a speedy and public trial by jury on the charges against you?

18             **THE DEFENDANT:**  Yes, ma'am.

19             **THE COURT:**  Do you understand that if you had a

20   trial, you would be presumed innocent of the charges and the

21   government would have to prove your guilty beyond a reasonable

22   doubt before you could be found guilty?

23             **THE DEFENDANT:**  Yes, ma'am.

24             **THE COURT:**  Do you understand that if you had a

25   trial, the government's witnesses would have to come into court

28

1 and testify in your presence, that your attorney could

2 cross-examine the government's witnesses, and your attorney

3 could call witnesses to testify on your behalf?

4    **THE DEFENDANT:** Yes, ma'am.

5    **THE COURT:** Do you understand that you would have the

6 right to require that witnesses come to court and testify?

7    **THE DEFENDANT:** Yes, ma'am.

8    **THE COURT:** Are you also aware that if you wished to

9 testify in your own defense, you would have the right to do so,

10 but if you chose not to testify, the fact that you did not

11 testify could not be used against you?

12    **THE DEFENDANT:** Yes, ma'am.

13    **THE COURT:** Do you understand that if you had a trial

14 and you were convicted, you would have the right to appeal your

15 conviction and your sentence?

16    **THE DEFENDANT:** Yes, ma'am.

17    **THE COURT:** Based upon your responses then,

18 Mr. Willie, do you understand that if the Court accepts your

19 plea, there's not going to be a trial; I'm going to enter a

20 judgment of conviction based on your plea, and then I'm going

21 to sentence you after I've considered the Presentence

22 Investigation Report?

23    **THE DEFENDANT:** Yes, ma'am.

24    **THE COURT:** Do you have any questions at all about

25 the constitutional rights that we just discussed, or their

29

1    waiver?

2              **THE DEFENDANT:**  No, ma'am.

3              **THE COURT:**  Has your attorney specifically discussed

4    the waiver of these constitutional rights with you?

5              **THE DEFENDANT:**  Yes, ma'am.

6              **THE COURT:**  Is it still your wish then, Mr. Willie,

7    to plead guilty to Count 1 of the Second Superseding

8    Indictment?

9              **THE DEFENDANT:**  Yes, ma'am.

10             **THE COURT:**  Mr. Willie, I'm ready to ask you for you

11   plea.  So, if you have any questions or concerns, this would be

12   the time to bring them up.  Any questions; any concerns?

13             **THE DEFENDANT:**  I have none, Your Honor.

14             **THE COURT:**  In the case of the United States of

15   America versus Michael Willie, how do you plead to Count 1 of

16   the Second Superseding Indictment?

17             **THE DEFENDANT:**  I plead guilty, Your Honor.

18             **THE COURT:**  It is the finding of this Court, then, in

19   this case, Mr. Willie, that you're fully competent and capable

20   of entering an informed plea, that you're aware of the nature

21   of the charges and the consequences of the guilty plea, and

22   that your guilty plea is knowing, voluntary, and supported by

23   an independent basis and fact which contains each of the

24   essential elements of the offense, and it is not the result of

25   force, threats, or promises.

1      The Court accepts your plea, Mr. Willie.  You're now

2  adjudged guilty of Count 1 of the Second Superseding

3  Indictment.

4      The Court is going to defer a decision on the Plea

5  Agreement.  The Court's decision on the Plea Agreement will be

6  announced either at or before sentencing.

7      Mr. Willie, you've heard me mention that written

8  Presentence Report.  I'm going to enter an order requiring the

9  probation office to prepare the Presentence Report.  You are

10  going to be questioned for purposes of that report.  I

11  encourage you to have your attorney present while you're being

12  questioned.  I further encourage you to be honest in answering

13  these questions.  There may be some questions you would rather

14  not answer, and I understand that.  There may be some

15  information you would rather not provide.  But I assure you

16  that to the extent that the Court is going to rely primarily on

17  that Presentence Report, it is in your best interest to answer

18  those questions honestly.  So please keep that in mind.

19      I'm going to set your sentencing hearing for July 13,

20  2022, unless someone tells me that they have a conflict.  Okay.

21          **THE DEFENDANT:**  Your Honor.

22          **THE COURT:**  Yes, sir.

23          **THE DEFENDANT:**  Question.

24          **THE COURT:**  Yes, sir.

25          **THE DEFENDANT:**  In the questions from the probation

31

1  officer --

2           **THE COURT:**  Wait, speak -- lean into the microphone.

3           **THE DEFENDANT:**  Would I be able to give my answers?

4           **THE COURT:**  Oh, absolutely.

5           **THE DEFENDANT:**  Okay.

6           **THE COURT:**  Absolutely.  Your answers are the only

7  ones that count with respect to this.  And, again, it is

8  important that your answers are incorporated, because it is

9  what I'm going to look at when I determine what I believe is an

10  appropriate sentence.  So, yes, sir.

11          **THE DEFENDANT:**  Okay.

12          **THE COURT:**  So the sentencing date that I'm going to

13  enter by order will be July 13, 2022.  That order will contain

14  some other presentencing deadlines.

15      One thing I am not going to set a deadline for, Mr.

16  Willie, is the submission of reference letters, character

17  reference letters.  You are not required to submit them.  But

18  if you would like to submit them, all I ask is that you go

19  ahead and ask those persons who you feel would write one on

20  your behalf to go ahead and do so, so that you can provide it

21  to your attorney and he can file it on the docket in this case.

22  Oftentimes, those letters present a different side of a

23  defendant.  That's why I let you -- I'm going to let you know

24  of that option.  If you don't submit any, it absolutely will

25  not be held against you.  It is totally up to you.  So, they

32

1    can come from anyone:  Friends, family, people in your church,

2    people in your community, anyone at all.  So just keep that in

3    mind, too.  But it is not a requirement.  That's what I wanted

4    to stress.

5           **THE DEFENDANT:**  Is there a limit -- excuse me -- is

6    there a limitation?

7           **THE COURT:**  No, sir.  You can submit as many as you

8    like.  So, again, it's up to you.  And I will read all of them.

9    To the extent that I do take those letters into account, please

10   try not to submit them last minute.  Because if it's a lot --

11   and it sounds to me like you may be planning on asking a lot of

12   people to write on your behalf -- I want to make sure that I

13   have time before I sentence you to read every word carefully.

14   So, you have plenty of time before July 13 to get those letters

15   requested and then submitted.

16       Is there anything further from anyone?

17           **MR. HALE:**  Not from the government, Your Honor.

18           **THE COURT:**  Anything we need to correct or otherwise

19   address?

20           **THE DEFENDANT:**  No, ma'am.

21           **THE COURT:**  Probation officer?

22           **PROBATION OFFICER:**  No, Your Honor.

23           **THE COURT:**  Okay.

24       Mr. Willie, I will see you then July 13th.  There being no

25   further business on this matter --

1          **MR. SIMMONS:**  Your Honor.

2          **THE COURT:**  Yes.  Uh-huh.

3          **MR. SIMMONS:**  I'm sorry.  Mr. Willie does request, if

4   at all possible if he could be transported back to Panola

5   County as soon as possible.  He has expressed some concern

6   about his insulin and it being administered according to -- in

7   talking to him this morning, the facility is better in Panola

8   County regarding him receiving his insulin.

9          **THE COURT:**  I generally do not get involved in the

10  marshal's decision about transport.  However, I am certain that

11  if it is an issue with your medication, Mr. Willie, that those

12  proper decisions will be made to make sure that you get your

13  medication that you're supposed to get on a regular basis.  If

14  for some reason you are not getting that medication, even if

15  you go back to Panola County, let your attorney know.  And

16  trust me, I will address that promptly.  Okay.

17         Anything further?

18         All right, I will see you-all July 13.  This matter is

19  adjourned.

20         (Adjourned:  11:05 A.M.)

21

22

23

24

25

34

1                           CERTIFICATE

2             I, Brenda D. Blackburn, Federal Official Court

3    Reporter, in and for the United States District Court for the

4    Northern District of Mississippi, do hereby certify that

5    pursuant to Section 753, Title 28, United States Code, that the

6    foregoing 33 pages are a true and correct transcript of the

7    stenographically reported proceedings held in the

8    above-entitled matter and that the transcript page format is in

9    conformance with the regulations of the Judicial Conference of

10   the United States.

11            Witness my hand, this 18th day of June, 2022.

12

13                          BRENDA D. BLACKBURN
                      _____
                      BRENDA D. BLACKBURN, RPR, CCR NO. 1087
14                    FEDERAL OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25