1

1          UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF MISSISSIPPI
2                OXFORD DIVISION

3   UNITED STATES OF AMERICA                    PLAINTIFF

4   VS.                                 NO. 3:19-CR-65-11

5   DERRICK HOUSTON                              DEFENDANT

6

7                CHANGE OF PLEA HEARING

8

9          BEFORE HONORABLE DEBRA M. BROWN
        CHIEF UNITED STATES DISTRICT JUDGE
10

11             Greenville, Mississippi
                  May 11, 2022
12

13  APPEARANCES:

14  For the Government:   SAMUEL R. STRINGFELLOW, ESQUIRE
                          U.S. ATTORNEY'S OFFICE
15                        900 Jefferson Avenue
                          Oxford, Mississippi  38655
16

17  For the Defendant:    JOSEPH M. HOLLOMON, ESQUIRE
                          JOE M. HOLLOMON & Associates, PA
18                        Post Office Box 22683
                          Jackson, Mississippi 39225-2683
19

20  Court Reporter:       BRENDA D. BLACKBURN, RPR, CCR #1087
                          FEDERAL OFFICIAL COURT REPORTER
21                        305 Main Street
                          Greenville, Mississippi  38701
22

23

24

25

1                (CALL TO ORDER OF COURT AT 3:32 P.M.)

2          **THE COURT:**  Be seated, please.

3     Our next case today is United States of America versus

4  Derrick Houston, 3:19-CR-65.  We're here for a change of plea

5  hearing.

6     Who is here on behalf of the government?

7          **MR. STRINGFELLOW:**  Sam Stringfellow for the United

8  States.

9          **THE COURT:**  And on behalf of the defendant?

10        **MR. HOLLOMON:**  Good afternoon, Your Honor.  Joe

11  Hollomon on behalf of Derrick Houston.

12         **THE COURT:**  Good afternoon.

13     You-all may remain at your counsel table if you wish.  If

14  you do remain at counsel table, just make sure there's a

15  microphone in front of you so that I can hear you, and make

16  sure that our court reporter picks up everything that is said.

17         **MR. HOLLOMON:**  Yes, Your Honor.

18         **THE COURT:**  We'll start by having the oath

19  administered to the defendant.

20           (OATH ADMINISTERED BY COURTROOM DEPUTY.)

21         **THE COURT:**  You may be seated, sir.

22     Sir, are you Derrick Houston?

23         **THE DEFENDANT:**  Yes, ma'am.

24         **THE COURT:**  What is your full legal name,

25  Mr. Houston?

1    **THE DEFENDANT:** Derrick Lashawn Houston.

2    **THE COURT:** Could you spell your middle name?

3    **THE DEFENDANT:** L-A-S-H-A-W-N.

4    **THE COURT:** Mr. Houston, do you understand that

5    you're now under oath and if you answer any question I ask you

6    falsely, your false answer may be used against you in a

7    prosecution for perjury for making a false statement?

8    **THE DEFENDANT:** Yes, ma'am.

9    **THE COURT:** Do you understand you have the right to

10   remain silent and not answer any of the Court's questions?

11   **THE DEFENDANT:** Yes, ma'am.

12   **THE COURT:** The Court is advised that you now wish to

13   plead guilty to Count 1 of the Second Superseding Indictment

14   pursuant to a written Plea Agreement. Is that correct?

15   **THE DEFENDANT:** Yes, ma'am.

16   **THE COURT:** I have a number of questions to ask you,

17   Mr. Houston. The goal is to make sure that you're fully

18   informed of your rights and that you understand your rights in

19   this proceeding. Because it is important that you understand

20   your rights, if there's any question that I ask and you don't

21   understand it or need some clarification, just stop and let me

22   know, and I will provide that clarification.

23       At any point in this proceeding if you would like to speak

24   with your counsel, stop me as well and let me know that, and

25   you will be able to have that private conversation with your

4

1  attorney.  But you must let me know that that is what you want

2  to do.  Because otherwise, I'm just going to proceed on.

3  Agreed?

4           **THE DEFENDANT:**  Agreed.

5           **THE COURT:**  How old are you, sir?

6           **THE DEFENDANT:**  42.

7           **THE COURT:**  What is the highest level of school that

8  you've completed?

9           **THE DEFENDANT:**  Eleventh.  Eleventh --

10          **THE COURT:**  Eleventh grade.

11          **THE DEFENDANT:**  Eleventh grade.

12          **THE COURT:**  Do you have a GED or any type of diploma

13  equivalent?

14          **THE DEFENDANT:**  Yes.  I have a GED.  And I just

15  enrolled for theology class -- it's called -- I just became an

16  ordained minister, and I'm still taking more classes on the

17  ministry.

18          **THE COURT:**  Now, how long ago did you get your GED?

19          **THE DEFENDANT:**  2011.

20          **THE COURT:**  Okay.  I'm going to -- it is your

21  choice -- you may remove your mask if you like.  It may help.

22  But you are not required to do so, if you would rather keep

23  it on.

24          **THE DEFENDANT:**  Thank you.

25          **THE COURT:**  Okay.  I just wanted to make sure that I

1  could hear you clearly.

2     All right, so you have your GED?

3          **THE DEFENDANT:** Yes.

4          **THE COURT:** My next question is whether or not you've

5  taken any medication, drugs, consumed any alcohol or anything

6  that may impair your ability to understand what's going to

7  happen here during this proceeding?

8          **THE DEFENDANT:** No, I'm fine.

9          **THE COURT:** Okay. Well, let me -- I need you to

10  answer yes or no to the question, though.

11          **THE DEFENDANT:** I'm not on any drugs.

12          **THE COURT:** Have you consumed any alcohol in the past

13  24 to 48 hours?

14          **THE DEFENDANT:** No, ma'am.

15          **THE COURT:** Have you taken any medication in the past

16  24 to 48 hours?

17          **THE DEFENDANT:** Yes. Yes, ma'am.

18          **THE COURT:** Okay. Let's talk about the medication.

19  Is it something you take pursuant to a prescription?

20          **THE DEFENDANT:** Yes, ma'am.

21          **THE COURT:** And can you tell me how often you have to

22  take it?

23          **THE DEFENDANT:** I take it twice a day. I take

24  Wellbutrin.

25          **THE COURT:** In the morning and in the evening?

6

1          **THE DEFENDANT:**  In the morning and the evening.

2          **THE COURT:**  Okay.  What is that for?  I think I know.

3  But tell me what that's for.

4          **THE DEFENDANT:**  Depression.  Depression.

5          **THE COURT:**  Okay, you take it twice a day?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  Did you take it this morning?

8          **THE DEFENDANT:**  Yes, ma'am.

9          **THE COURT:**  When you take it, does it in any way

10  affect your demeanor?  Like, do you get tired, or do you have a

11  hard time understanding things?

12          **THE DEFENDANT:**  No, ma'am.

13          **THE COURT:**  Okay.  So, it doesn't have any adverse

14  effect on you at all?

15          **THE DEFENDANT:**  No, ma'am.

16          **THE COURT:**  Are there any other medications that you

17  take that you're prescribed to take?

18          **THE DEFENDANT:**  Yes.  High blood pressure medicine.

19          **THE COURT:**  Okay, how often do you take that?

20          **THE DEFENDANT:**  Twice a day.

21          **THE COURT:**  Do you take it -- wait.  Let me first

22  ask, is it in the morning and the evening?

23          **THE DEFENDANT:**  Yes, ma'am.

24          **THE COURT:**  Did you take it this morning?

25          **THE DEFENDANT:**  Yes, ma'am.

1      **THE COURT:**  Okay.  Does that medication in any way

2  interfere your ability to understand things?

3      **THE DEFENDANT:**  No, ma'am.

4      **THE COURT:**  Okay.  Any other medications?

5      **THE DEFENDANT:**  That's all.

6      **THE COURT:**  All right.  I had asked whether or not

7  you had consumed or taken anything else, prescription or

8  otherwise, that may interfere with your ability to understand

9  things and understand the consequences of the guilty plea.

10  Anything else that you've taken in that respect?

11      **THE DEFENDANT:**  No, ma'am.

12      **THE COURT:**  Now, have you ever been treated or

13  hospitalized for an addiction to drugs?

14      **THE DEFENDANT:**  No, ma'am.

15      **THE COURT:**  What about any treatment or

16  hospitalization for any type of mental or emotional illness?

17      **THE DEFENDANT:**  Yes, ma'am.

18      **THE COURT:**  You have been?

19      **THE DEFENDANT:**  Yes.

20      **THE COURT:**  Could you tell me about that, please,

21  sir?

22      **THE DEFENDANT:**  I was on -- I've been on suicide

23  watch.  I was a mental health patient for probably thirty

24  years.  I've always had a psychiatrist.  That's pretty much it.

25      **THE COURT:**  Okay, so for the past thirty years,

1  you've had some type of mental illness or condition?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Did I hear you say that?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Okay.  And you've been provided some

6  treatment for it over the years?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  And you did mention the medication that

9  you were currently on for depression.

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  And is that medication helping you?  I

12 mean, you're not depressed today, are you?

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  And so it is aiding in your ability to

15 not be depressed or have any type of other mental health

16 condition that would influence your ability to understand

17 what's going to happen here today?

18             THE DEFENDANT:  Yes, I understand.

19             THE COURT:  Have you ever been hospitalized for any

20 type of mental or emotional illness?

21             THE DEFENDANT:  No.  Nothing other than the suicide

22 attempt.

23             THE COURT:  Okay, and when you say "suicide attempt,"

24 so were you taken to a hospital --

25             THE DEFENDANT:  Yes.

1        **THE COURT:** -- at the time?

2        **THE DEFENDANT:** Yes.

3        **THE COURT:** How long ago was your last attempt?

4        **THE DEFENDANT:** 2001.

5        **THE COURT:** 2001. Okay, so a number of years ago?

6        **THE DEFENDANT:** Yes, ma'am.

7        **THE COURT:** Beyond that, you've been fine otherwise,

8 not gone to the hospital for any type of reason related to your

9 emotional health; mental health?

10        **THE DEFENDANT:** No more than seeing a psychiatrist,

11 but not hospitalized?

12        **THE COURT:** Are you currently seeing a psychiatrist?

13        **THE DEFENDANT:** Yes.

14        **THE COURT:** How often?

15        **THE DEFENDANT:** I think I see him about once a month

16 now.

17        **THE COURT:** Okay.

18        **THE DEFENDANT:** The medication is fine. So, it's

19 really no reason. Just come and give him an update on how

20 things are going.

21        **THE COURT:** But you're feeling fine here today; no

22 issues at all?

23        **THE DEFENDANT:** Yes, ma'am, I'm fine.

24        **THE COURT:** You do feel fine?

25        **THE DEFENDANT:** Yes, ma'am.

1    **THE COURT:**  All right.  Any issues?

2    **THE DEFENDANT:**  No, ma'am.

3    **THE COURT:**  Okay.  Now, I've asked you this question

4  in specific and general terms, but I want to make sure before

5  we move on.  Is there any mental or physical reason or any

6  mental or physical condition that you have that would interfere

7  with your ability to understand what's going to happen during

8  this hearing today?

9    **THE DEFENDANT:**  No, ma'am.

10   **THE COURT:**  All right.  Based upon your responses,

11  Mr. Houston, the Court finds that you're competent to enter a

12  plea in this case.

13    Now, I have some questions for you about your legal

14  representation.

15   **THE DEFENDANT:**  Okay.

16   **THE COURT:**  Your attorney is there with you.  Are you

17  satisfied with his representation of you?

18   **THE DEFENDANT:**  Yes, ma'am.

19   **THE COURT:**  Do you believe that he's represented your

20  best interest in this case?

21   **THE DEFENDANT:**  Yes, ma'am.

22   **THE COURT:**  Have you had enough time to speak with

23  him about your case and have him answer any and all questions

24  about your case to your satisfaction?

25   **THE DEFENDANT:**  Yes, ma'am.

1        **THE COURT:**  We're next then, Mr. Houston, going to

2    turn to the indictment pending against you, specifically the

3    Second Superseding Indictment.  Count 1 of the Second

4    Superseding Indictment -- and I'm just going to summarize -- it

5    charges you with conspiracy to participate in racketeering

6    activities including to distribute and possess with the intent

7    to distribute controlled substances for the purpose of

8    enriching, protecting, supporting, and enhancing the Gangster

9    Disciples criminal enterprise in violation of Title 18 United

10   States Code §1962(d).  Now, again, I just summarized what

11   Count 1 says.

12       Would you like to have the Court read the indictment, the

13   Second Superseding Indictment, to you, or do you waive reading

14   of the indictment?

15       **THE DEFENDANT:**  I waive reading.

16       **THE COURT:**  All right.  Very well.

17       Now, I do want to confirm that you have -- that you're

18   fully aware of what you're charged with in Count 1 of the

19   Second Superseding Indictment.  Are you?

20       **THE DEFENDANT:**  Yes, ma'am.

21       **THE COURT:**  And you have discussed the charges in

22   that count with your attorney?

23       **THE DEFENDANT:**  Yes, ma'am.

24       **THE COURT:**  Now, there are certain elements of proof

25   associated with Count 1.  If your case went to trial, the

1  government would have to prove these elements beyond a

2  reasonable doubt before you could be found guilty.  Given that,

3  I'm going to ask the government's attorney to state those

4  elements for our record here today.

5        Mr. Stringfellow.

6        **MR. STRINGFELLOW:**  Thank you, Your Honor.

7        To prove a RICO conspiracy, the government must establish

8  that two or more people agreed to commit a substantive RICO

9  offense, and that the defendant knew of and agreed to the

10  overall objective of the RICO offense.

11        The substantive RICO provision requires the government to

12  prove the existence of an enterprise affecting interstate

13  commerce; two, that the defendant was associated with the

14  enterprise; three, that the defendant participated in the

15  conduct of the enterprise's affairs; and four, that

16  participation constituted a pattern of racketeering activity.

17  A pattern of racketeering activity is really defined when a

18  defendant commits at least two predicate acts within ten years.

19        **THE COURT:**  Having heard those elements, Mr. Houston,

20  do you have any question about them or the nature of the

21  charges in the case against you?

22        **THE DEFENDANT:**  No, ma'am.

23        **THE COURT:**  Next, then, we're going to turn to the

24  maximum possible penalties applicable to your case.

25        Before I do, I wanted some clarification from counsel.  I

13

1    did look at the Notice of Penalties, and I did look at the Plea

2    Agreement documents in this case.  The Plea Agreement says the

3    maximum term of imprisonment is zero to twenty years while the

4    Notice of Penalties says life imprisonment.  So can someone

5    help me out with what is correct?

6            **MR. STRINGFELLOW:**  Yes, Your Honor.  So, the

7    mandatory minimum amount of drugs that is charged in the

8    indictment when charged as an overt act triggers the change in

9    the maximum possible penalty.  It does not add the mandatory

10   minimum penalty, but it just adds simply that it goes from

11   twenty to Life.  Because the Plea Agreement has agreed in

12   essence to a lesser included drug amount, one that does not

13   carry the Life Imprisonment range, is why in the Plea Agreement

14   we have the not more than twenty years.  Or at least that is

15   the way the parties have constructed it.

16           **THE COURT:**  All right.  I just wanted to make sure to

17   the extent that it is my obligation, Mr. Houston, to advise you

18   of the maximum possible penalties.

19       Yes, sir?

20           **MR. HOLLOMON:**  Your Honor, we concur with the

21   statement of Mr. Stringfellow.  That's exactly how we

22   interpret it.

23           **THE COURT:**  Very well then.

24           **MR. HOLLOMON:**  Thank you.

25           **THE COURT:**  All right, Mr. Houston, the maximum

14

1    possible penalties applicable to Count 1 of the Second

2    Superseding Indictment are as follows:  Imprisonment for twenty

3    years, a fine of not more than $250,000, supervised release

4    after imprisonment for not more than five years, a special

5    assessment of $100.

6         And I do want to -- you understood what I -- the question

7    that I asked counsel and why I asked them?  Did you understand

8    what I was asking him about as far as the maximum possible

9    penalties were concerned?

10              THE DEFENDANT:  Yes, ma'am.  You wanted to know what

11   was the max; right?

12              THE COURT:  Yes.  So I can correctly tell you.

13   Because it certainly is a factor in your decision to plead here

14   today.

15              THE DEFENDANT:  Uh-huh.

16              THE COURT:  So you're straight with all of that?

17              THE DEFENDANT:  Can you tell me what's the minimum?

18              THE COURT:  I don't know if it is a minimum per se,

19   because we're not dealing with a minimum at this point.  Right,

20   Mr. Stringfellow?

21              MR. STRINGFELLOW:  That's correct, Your Honor.

22              THE COURT:  Okay.

23              MR. HOLLOMON:  We concur, Your Honor, there is no

24   minimum.

25              THE COURT:  Okay.  Now, you hear what Counsel said,

1    including yours?

2              **THE DEFENDANT:**  Can I have a minute with my counsel?

3              **THE COURT:**  Yes, you absolutely may.

4         And Mr. Hollomon?

5              **MR. HOLLOMAN:**  Yes, Your Honor.

6              **THE COURT:**  Could you turn off that microphone?

7    Because we want to make sure you have a private conversation.

8              **MR. HOLLOMAN:**  Thank you, Judge.

9              **COURTROOM DEPUTY:**  I don't think it will turn off

10   there, but I did mute it on my end.

11             **THE COURT:**  All right.  It's muted.  Go ahead, sir.

12             (PAUSE.)

13             **MR. HOLLOMON:**  Judge, my client asked the question

14   regarding what it meant regarding the minimum.  I explained to

15   him that there is no minimum.  There is no minimum penalty that

16   must be imposed.  It could be zero to twenty, and he

17   understands that.

18             **THE COURT:**  All right.  Is that correct, Mr. Houston?

19             **THE DEFENDANT:**  Yes, ma'am.

20             **THE COURT:**  Okay, very good.  Well, we will move on.

21        To the extent that you do plead guilty here, Mr. Houston,

22   and the Court accepts your plea, I'm going to sentence you at

23   some point in the future.  Do you understand that if you're

24   sentenced to serve a term of imprisonment, that you may have to

25   also be subject to supervised release after you've been

1  released from prison?

2       **THE DEFENDANT:**  Yes, ma'am.

3       **THE COURT:**  Do you understand that if you violate one

4  or more of the conditions of supervised release, you may be

5  returned to prison for all or part of the supervised release

6  period?

7       **THE DEFENDANT:**  Yes, ma'am.

8       **THE COURT:**  Now, do you have any questions at all

9  about the maximum possible penalties?

10      **THE DEFENDANT:**  No, ma'am.

11      **THE COURT:**  The next thing we're going to do, then,

12  sir, is we're going to turn to the government's evidence

13  against you, the evidence that the government would be prepared

14  to prove at trial if your case went to trial.

15      Mr. Stringfellow.

16      **MR. STRINGFELLOW:**  Thank you, Your Honor.

17      The defendant, Derrick Houston, as set forth in Count 1 of

18  the Second Superseding Indictment, agreed that a co-conspirator

19  would commit at least two acts of racketeering involving

20  narcotics, murder and attempted murder, obstruction of justice,

21  money laundering, and intimidation of witnesses and/or victims.

22  Examples of the defendant's participation and facilitation of

23  the pattern of racketeering are set forth below.  Bear in mind,

24  these are only examples of culpability from a large body of

25  evidence collected during the past two years of this

1    investigation.

2        The defendant -- the proof would show that the defendant

3    is a self-admitted member of the Gangster Disciples, and he has

4    admitted to holding various positions of authority within the

5    organization, including Superintendent Administrator.  The

6    government is in possession of numerous text messages, e-mails,

7    and MDOC documentation that would have demonstrated both

8    defendant's membership in the enterprise and his prior

9    leadership positions.

10       The United States would have shown that the Gangster

11   Disciples operate throughout the state of Mississippi and have

12   a significant presence in the state prison system, specifically

13   Mississippi State Penitentiary located in Sunflower County,

14   Mississippi is one such location where the Gangster Disciples

15   maintain a significant presence.  The defendant as a leader of

16   the organization directed or helped facilitate the

17   organization's criminal activities at MSP and throughout the

18   state.

19       In July of 2018, the defendant planned the bombing of a

20   state prison guard's vehicle after the guard was responsible

21   for contraband being seized that was scheduled to be smuggled

22   into the prison.  The loss of the contraband resulted in the

23   defendant being punished by the gang.  Afterwards, the

24   defendant ordered the guard be sent a message, and the guard's

25   truck was subsequently fire bombed with a Molotov cocktail and

18

1   destroyed.

2       As a member of the organization, the defendant helped

3   oversee a vast money laundering conspiracy.  Gangster Disciple

4   members were required to contribute a certain amount of money

5   to the gang each month.  This money was then loaned out to

6   various members and associates for various criminal activities,

7   including drug trafficking.  These loans were referred to as

8   "investments."  After the members sold the drugs, the profits

9   from the drug sales were sent back to the gang's coffers to

10  repay the loan amount plus interest.

11      There is ample evidence of defendant's involvement in the

12  conspiracy to murder Eugene Palmer, Paul Evans, and other GD

13  members who the enterprise identified as traitors as further

14  detailed in Overt Acts numbered 10 through 12, 14, 16 through

15  17, 19, 20, and 24 of the Second Superseding Indictment.

16  Palmer and Evans were both stabbed by low-ranking members of

17  the organization and suffered serious bodily injuries.  Both

18  identified the defendant as the person who ordered the

19  stabbings.  There are hundreds of messages on the cellphone

20  seized from the defendant wherein he discusses the plan to have

21  Palmer and Evans killed.  Cooperators would have testified

22  about the plan to murder the Gangster Disciple traitors and

23  electronic evidence would have corroborated the anticipated

24  testimony.

25      In addition, the government is in possession of thousands

of SMS/MMS messages, emails, and other electronic evidence of the defendant directing and managing the GD organization. The evidence shows him supervising the criminal activities of subordinates; issuing orders to kill rival gang members and subordinate gang members whom they believed have violated GD rules of conduct and presided over Gangster Disciple gang meetings where criminal activity was discussed, proceeds from criminal activity were collected, which included but not limited to collection of drug proceeds from subordinate gang members, and beatings of fellow GD gang members were administered.

In addition, apart from supervising and directing the criminal activities of members and associates of the enterprise, the defendant participated directly in the criminal activities of the GD enterprise, which included attempted murder, narcotics distribution, and money laundering.

Finally, the government is in possession of evidence showing the defendant participated in selling narcotics, including evidence of him setting up transactions, setting prices and quantities to be sold and/or purchased. Overall, throughout the course of the conspiracy, defendant was solely responsible for distributing three pounds of marijuana.

The government would ask the Court to take judicial notice that Sunflower County is in this district.

**THE COURT:** It is so noted.

20

1    **MR. STRINGFELLOW:**  Thank you.

2    **THE COURT:**  Mr. Houston, did you hear and understand

3    the government's evidence against you?

4    **THE DEFENDANT:**  Yes, ma'am.

5    **THE COURT:**  Now, is everything that was said about

6    you and about your conduct true and correct?

7    **THE DEFENDANT:**  Yes, ma'am.

8    **THE COURT:**  Is it your intent to plead guilty here

9    today freely, voluntarily, and willingly with full knowledge of

10   the charges and the consequences of the guilty plea because you

11   are in fact guilty?

12   **THE DEFENDANT:**  Yes, ma'am.

13   **THE COURT:**  Has anyone in any way attempted to

14   threaten you or force you to plead guilty?

15   **THE DEFENDANT:**  No, ma'am.

16   **THE COURT:**  The Court finds, then, that there is a

17   factual basis for Mr. Houston to plead guilty to the charges in

18   Count 1 of the Second Superseding Indictment.

19       We'll turn next to the plea agreement between Mr. Houston

20   and the government.

21       Mr. Stringfellow, would you state its substance for the

22   record?

23   **MR. STRINGFELLOW:**  Yes, Your Honor.

24       The defendant has agreed to plead guilty under oath to

25   Count 1 of the Second Superseding Indictment, which again

1   charges him with RICO conspiracy, the penalties for which, at

2   the Court's discretion, carry a range of imprisonment of zero

3   to twenty years, a fine of not more than $250,000, a term of

4   supervised release that is not more than five years, and a

5   special assessment of $100.  The government agrees not to

6   charge the defendant with any other offenses related to this

7   charge and to dismiss any remaining counts.

8        This agreement is limited to the U.S. Attorney's Office

9   for this district, and does not bind any other federal, state,

10  or local prosecuting, administrative, or regulatory

11  authorities.  It applies only to crimes committed by the

12  defendant and doesn't apply to any pending forfeiture

13  proceedings, nor will it preclude any past, present, or future

14  civil or forfeiture actions.  Should the defendant breach this

15  agreement, including attempting to withdraw his guilty plea,

16  the government will be released from any sentencing

17  recommendations or agreements the parties have reached, and the

18  government would be free to argue for any sentence within the

19  statutory limits.  Should the defendant have already pleaded

20  guilty or been sentenced, then his guilty plea or sentence will

21  remain in effect and any breach does not give him the right to

22  withdraw his guilty plea.

23       The defendant has waived his rights under Federal Rules of

24  Evidence 410 and Rule 11(f) of the Federal Rules of Criminal

25  Procedure.

22

1        The defendant understands restitution could apply or may

2    apply.

3        The defendant, with the exception of prosecutorial

4    misconduct and ineffective assistance of counsel has agreed to

5    waive his rights to appeal the conviction and/or sentence and

6    the manner in which the sentence was imposed.

7        He has also reserved the right to raise any issues

8    regarding prosecutorial misconduct and ineffective assistance

9    of counsel as it relates to a collateral attack.  But he has

10   waived his right to bring forth suit under 2255, and waives the

11   right to contest or collaterally attack the conviction and/or

12   sentence with the exception for prosecutorial misconduct and

13   ineffective assistance of counsel.

14       The defendant acknowledges that there has been no promise

15   whatsoever made to him as to the sentence he shall receive if

16   the Court were to accept the plea of guilty.  The defendant's

17   agreement is knowing, free, and voluntary and not the product

18   of force, threats, or coercion.  He's pleading guilty because

19   he is guilty.

20       **THE COURT:**  Mr. Houston, did the government's

21   attorney accurately state the terms of the Plea Agreement as

22   you understand those terms to be?

23       **THE DEFENDANT:**  Yes, ma'am.

24       **THE COURT:**  Now, I have been provided, prior to this

25   hearing, a copy of the plea documents.  I'm sure you've seen

23

1   them.  You have seen the plea documents, of course?

2           **THE DEFENDANT:**  Yes, ma'am.

3           **THE COURT:**  There is a signature on those documents

4   that is represented to be your signature.  And I want you to

5   confirm for me that you did indeed sign it?

6           **THE DEFENDANT:**  Yes, ma'am, it's my signature.

7           **THE COURT:**  Okay.  Did you have the opportunity to

8   read and discuss the plea documents with your attorney before

9   you signed them?

10          **THE DEFENDANT:**  Yes, ma'am.

11          **THE COURT:**  And do you understand all of the terms of

12  the plea documents?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  Mr. Hollomon, would you please confirm

15  that before Mr. Houston signed the plea documents, you

16  discussed the terms with him, the facts of the case, and the

17  government's evidence relative to the case?

18          **MR. HOLLOMON:**  Your Honor, I will confirm that.  I

19  spent many hours with Mr. Houston going over the evidence and

20  possible defenses, and most recently, these plea documents,

21  including the Plea Supplement and the Plea Agreement.  He read

22  them; went over them.  He had very good questions that I

23  conveyed to Mr. Stringfellow.  Corrections or changes were

24  made.  So he is very familiar with both these documents.

25          **THE COURT:**  All right.  Do you believe that

24

1  Mr. Houston will freely and voluntarily with full knowledge of

2  the charges and the consequences of the guilty plea enter the

3  plea today here?

4       **MR. HOLLOMON:**  I do, Your Honor.

5       **THE COURT:**  One other question for you, Mr. Houston.

6  And it pertains to something that the government's attorney

7  mentioned is in the plea agreement.  And I just want to make

8  sure you understand it.  That to the extent that the Court

9  accepts the Plea Agreement, that you understand that you would

10 waive all of your rights to appeal or collaterally attack your

11 conviction and your sentence with the only two exceptions as to

12 prosecutorial misconduct or ineffective assistance of counsel.

13 I want to make sure you understand that.  Do you?

14      **THE DEFENDANT:**  Yes, ma'am.

15      **THE COURT:**  Do you understand as well that if the

16 Court rejects the Plea Agreement -- if the Court rejects the

17 Plea Agreement, then the rejection will include all of the

18 terms that are in those plea documents.  Do you understand

19 that?

20      **THE DEFENDANT:**  Yes, ma'am.

21      **THE COURT:**  And do you understand if the Court

22 rejects the plea document, that I will give you the opportunity

23 to withdraw your plea?

24      **THE DEFENDANT:**  Yes, ma'am.

25      **THE COURT:**  Do you understand that in the event that

25

1    that happens and I give you the opportunity to withdraw your

2    plea and you don't withdraw it, do you understand that the

3    Court will be free to impose whatever sentence the Court

4    believes is appropriate without in any way being bound by

5    anything in those plea documents?  Do you understand that?

6           **THE DEFENDANT:**  Yes, ma'am.

7           **THE COURT:**  Okay.

8        The Plea Agreement will be filed; and the Plea Supplement

9    will be filed under seal.

10        Mr. Houston, do you understand that the offense in Count 1

11   of the Second Superseding Indictment is a felony?

12          **THE DEFENDANT:**  Yes, ma'am.

13          **THE COURT:**  Do you understand that if you plead

14   guilty to that felony and the Court accepts your plea, then

15   that conviction may deprive you of certain civil rights, such

16   as the right to vote, hold public office, sit on a jury, and

17   possess any kind of firearm whatsoever?

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  To the extent that the Court will be

20   sentencing you, I'm going to be guided by the United States

21   Sentencing Commission's guidelines.  Now, those guidelines are

22   only advisory.  So the Court is not bound to follow them, if

23   the Court chooses not to do so.  Have you and your attorney

24   discussed how the sentencing guidelines might apply to your

25   case?

26

1    **THE DEFENDANT:**  Yes, ma'am.

2    **THE COURT:**  Okay, you're looking at your counsel.  Do

3    you have a question for your counsel?

4    **THE DEFENDANT:**  Yes, ma'am.

5    **THE COURT:**  Okay.  You-all take a minute then, and

6    have a discussion.

7    (PAUSE.)

8    **MR. HOLLOMON:**  Your Honor, I believe I've answered my

9    client's question.  For the record, we have reviewed the

10   guidelines.  My client is very familiar with the guidelines and

11   application.  He did an independent calculation of the

12   guidelines.  I brought my calculation to him.  We compared;

13   they were the same.

14   **THE COURT:**  You did an independent calculation of

15   your guidelines, Mr. Houston?

16   **THE DEFENDANT:**  Yes, ma'am.

17   **THE COURT:**  Okay.  So you have some knowledge that I

18   did not know you had.  So, that's very good.

19   So I want to ask you the question again, though.  You

20   understand that to the extent that you -- whether you did it

21   independently or discussed it with your attorney, you are aware

22   of what those guidelines may be applicable to your case?

23   **THE DEFENDANT:**  Yes, ma'am.

24   **THE COURT:**  Okay.  Do you understand that the Court

25   won't be able to determine your guideline sentence until after

27

1  a Presentence Report has been prepared and you and the

2  government's counsel have had the opportunity to review that

3  report and determine if you have any objections to any of the

4  reported facts or the application of the guidelines as

5  recommended by the probation officer?  Do you understand?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  Do you understand as well that under some

8  circumstances the Court has the authority to depart upward or

9  downward from the guidelines, which as you probably know, means

10 the Court may impose a sentence that is more severe or less

11 severe than what is called for by the guidelines?

12         **THE DEFENDANT:**  Yes, ma'am.

13         **THE COURT:**  Do you understand that regardless of the

14 guidelines range, the Court may sentence you to a term of

15 imprisonment up to the maximum time allowed by law?

16         **THE DEFENDANT:**  Yes, ma'am.

17         **THE COURT:**  Do you understand as well that if you are

18 sentenced to serve time in prison, you will not be released on

19 parole, because parole has been abolished in this federal

20 court?

21         **THE DEFENDANT:**  Yes, ma'am.

22         **THE COURT:**  Now, I have one final set of questions

23 for you, Mr. Houston.  These questions concern your

24 constitutional rights, specifically your waiver or giving up of

25 the rights, if you plead guilty here today.  Many of these

28

1    questions are going to begin with the words I've used before,

2    "Do you understand."  So just bear with me as I go through them

3    please, sir.

4         Do you understand you have the right to plead not guilty?

5              **THE DEFENDANT:**  Yes, ma'am.

6              **THE COURT:**  Okay, speak up a little bit.

7              **THE DEFENDANT:**  Oh, I'm sorry.  Yes, ma'am.

8              **THE COURT:**  Okay.  Do you understand that under the

9    Constitution and the laws of this country, you are entitled to

10   a speedy and public trial by jury on the charges against you?

11             **THE DEFENDANT:**  Yes, ma'am.

12             **THE COURT:**  Do you understand that if you had a

13   trial, you would be presumed innocent of the charges, and the

14   government would have to prove your guilt beyond a reasonable

15   doubt before you could be found guilty?

16             **THE DEFENDANT:**  Yes, ma'am.

17             **THE COURT:**  Do you understand that if you had a

18   trial, the government's witnesses would have to come into court

19   and testify in your presence, and your attorney could

20   cross-examine the government's witnesses, and your attorney

21   could call witnesses to testify on your behalf?

22             **THE DEFENDANT:**  Yes, ma'am.

23             **THE COURT:**  Do you further understand that you would

24   have the right at a trial to require that witnesses come to

25   court and testify?

29

1         **THE DEFENDANT:**  Yes, ma'am.

2         **THE COURT:**  Are you aware as well that if you wish to

3    testify in your own defense, you would have that right, but if

4    you chose not to testify, the fact that you did not testify

5    could not be used against you?

6         **THE DEFENDANT:**  Yes, ma'am.

7         **THE COURT:**  Do you understand as well that if you had

8    a trial, you would have the right to appeal your conviction and

9    sentence if you were convicted at trial?

10        **THE DEFENDANT:**  Yes, ma'am.

11        **THE COURT:**  Now, based upon your responses,

12   Mr. Houston, would you please confirm for me that you

13   understand that if you plead guilty and the Court accepts your

14   plea, there's not going to be a trial; I'm going to sentence

15   you after I've considered a Presentence Report?

16        **THE DEFENDANT:**  Yes, ma'am.

17        **THE COURT:**  Now, do you have any questions at all

18   about these constitutional rights I've just discussed or their

19   waiver?

20        **THE DEFENDANT:**  No, ma'am.

21        **THE COURT:**  Have you discussed waiving these

22   constitutional rights with your attorney?

23        **THE DEFENDANT:**  No, ma'am.

24        **THE COURT:**  You have not discussed giving up these

25   rights with your attorney.  Okay, I think you-all need to have

30

1  that discussion then.

2          (PAUSE.)

3          **THE DEFENDANT:**  Okay.  Yes, ma'am.

4          **THE COURT:**  Okay, let me ask you again just to make

5  sure our record is clear.  Have you specifically discussed with

6  your attorney waiving or giving up the constitutional rights

7  that I have just mentioned?

8          **THE DEFENDANT:**  Yes, ma'am.  It was in the Plea

9  Agreement.

10         **THE COURT:**  Very good.

11    Now, having discussed these rights with your attorney,

12 specifically their waiver, is it still your wish to plead

13 guilty to Count 1 of the Second Superseding Indictment?

14         **THE DEFENDANT:**  Yes, ma'am.

15         **THE COURT:**  Well, I'm about to ask you for your plea,

16 Mr. Houston.  If you have any concerns, questions, before I do,

17 this would be the time to bring them up.  Any questions?

18         **THE DEFENDANT:**  Umm.  No, ma'am.

19         **THE COURT:**  Any concerns?

20         **THE DEFENDANT:**  No, ma'am.

21         **THE COURT:**  In the case of the United States of

22 America versus Derrick Houston, how do you plead to Count 1 of

23 the Second Superseding Indictment?

24         **THE DEFENDANT:**  Guilty.

25         **THE COURT:**  It is the finding of this Court, then, in

1   this case that, Mr. Houston, you're capable and competent of

2   entering an informed plea, that you're aware of the nature of

3   the charges and the consequences of the guilty plea, and that

4   your guilty plea is knowing, voluntary, supported by an

5   independent basis and fact, and it is not the result of force,

6   threats, or promises.  So the Court accepts your guilty plea.

7   You're now adjudged guilty of the charges in Count 1 of the

8   Second Superseding Indictment.

9       As for the Plea Agreement, the Court is going to defer a

10  decision on it.  And the Court will make your counsel and you

11  aware of that decision either at sentencing or sometime before.

12      You've heard me mention the written Presentence Report,

13  Mr. Houston.  I'm going to enter an order requiring the

14  probation office to prepare that Presentence Report.  Now,

15  you're going to be questioned for purposes of that report.  I

16  encourage you to have your attorney present while you're being

17  questioned.  I also encourage you to answer all of the

18  questions honestly.  It is important, even if it is something

19  you'd rather not talk about, because your responses will be

20  incorporated into the Presentence Report, and I assure you I

21  read every single word in determining what I believe is an

22  appropriate sentence in your case.  So that's just my advice to

23  you.

24      Now, I'm going to set your sentencing hearing for

25  August 31, 2022, unless someone has a conflict.  That is a

32

1   Wednesday, Mr. Houston.  I set it that far in the future

2   because I wanted to give the probation officer enough time to

3   put that Presentence Report together.  I've already told you

4   how important it is.

5       Do we have any conflicts with August 31, 2022?

6           MR. HOLLOMON:  Your Honor, I have no conflict on that

7   date.  What --

8           THE COURT:  It is a Wednesday.

9           MR. HOLLOMON:  It's a Wednesday.

10      What time would the Court --

11          THE COURT:  I have not set a time yet.  I don't know.

12  I always go back and look at my calendar.  Is the afternoon or

13  morning better for you?

14          MR. HOLLOMON:  Judge, the afternoon is generally

15  better for me, but I -- whenever the Court sets it, I'll be

16  here.

17          THE COURT:  Okay.  Well, we can set it in the

18  afternoon.

19      What about you, Mr. Stringfellow?

20          MR. STRINGFELLOW:  Whatever time that it works, I'll

21  be here, Your Honor.

22          THE COURT:  Okay.  So, it will be August 31, 2022.

23  We will set it in the afternoon.  That precise time, I will

24  just decide at the point where I set it.  But it will be set in

25  the afternoon.

1    **MR. HOLLOMON:** Thank you, Your Honor.

2    **MR. STRINGFELLOW:** Your Honor, on the originals, do

3 you want me to go ahead and pass those forward?

4   **THE COURT:** You may. Now, if nothing changed between

5 the time you-all submitted them to me prior to the hearing,

6 then we can use that as the originals, if you would like,

7 because they are already scanned.

8    **MR. STRINGFELLOW:** Yes, that will work, too.

9   **THE COURT:** Okay. That's fine.

10   **MR. STRINGFELLOW:** Thank you, Your Honor.

11   **THE COURT:** Mr. Houston, at your sentencing hearing,

12 you will have the option to make a statement if you wish. You

13 are not required to speak. But I always tell every defendant

14 that I have to sentence that I am always very interested in

15 what you think I should consider before I sentence you. So,

16 again, you are not required to speak. It won't be held against

17 you if you don't. But if you would like to say something, then

18 I certainly will take it into consideration.

19  Your counsel will have the opportunity to speak as well.

20  Now, I'm going to set some deadlines in the order setting

21 your sentencing hearing. Your attorney can tell you what those

22 deadlines are. I stress that only because there's one thing

23 I'm not going to set a deadline for, and that is for the

24 submission of character reference letters. If there is anyone

25 you would like to write a letter on your behalf; it could be

1   family members, church members, community members, friends,

2   people -- just anybody, then go ahead and ask them to write

3   those letters, so they can be provided to your attorney and

4   your attorney can file them on the docket in your case to make

5   sure I see them before your sentencing hearing.  I do read

6   every word of those letters just as closely.  There are a lot

7   of times it gives me a different side of a defendant.  And I do

8   take that into account.  Now, if you don't submit any, it

9   absolutely will not be held against you.  So, it is just your

10  option.  If you want to do it, fine.  If you don't want to do

11  it, that's fine, too.  Again, it will not hurt you in any way,

12  if you don't submit them.  But to the extent that you, you

13  know, want to submit them, then I will read every word of them

14  just as I read that Presentence Report.

15      Okay, I think that that is all that I want to take up here

16  today.  Is there anything from the government?

17              **MR. STRINGFELLOW:**  No, Your Honor.

18          **THE COURT:**  Okay.  Oh, you know what I just realized.

19  I did not acknowledge our probation officer present.

20      For the record, who is our probation officer?

21          **PROBATION OFFICER:**  Gwendolyn Steele, Your Honor.

22          **THE COURT:**  Thank you.  Sorry about that, Ms. Steele.

23  Corner of my eye there.

24      All right, Mr. Hollomon, anything further from you-all?

25          **THE DEFENDANT:**  No, Your Honor.

1      **THE COURT:**  All right.  Mr. Houston, anything?

2      **THE DEFENDANT:**  No, ma'am.

3      **THE COURT:**  Okay.  Mr. Houston, I will see you

4   August 31.  If for any reason that time and date changes, then

5   we will enter a notice and your attorney can let you know that

6   as well.

7      All right.  If there is nothing further, this matter is

8   adjourned.

9      **MR. HOLLOMON:**  Thank you, Your Honor.

10      (Adjourned:  4:11 p.m.)

11                              CERTIFICATE

12      I, Brenda D. Blackburn, Federal Official Court

13   Reporter, in and for the United States District Court for the

14   Northern District of Mississippi, do hereby certify that

15   pursuant to Section 753, Title 28, United States Code, that the

16   foregoing 34 pages are a true and correct transcript of the

17   stenographically reported proceedings held in the

18   above-entitled matter and that the transcript page format is in

19   conformance with the regulations of the Judicial Conference of

20   the United States.

21      Witness my hand, this 15th day of August, 2022.

22

23                         BRENDA D. BLACKBURN
                           _____
24                         BRENDA D. BLACKBURN, RPR, CCR NO. 1087
                           FEDERAL OFFICIAL COURT REPORTER

25