1

1     UNITED STATES DISTRICT COURT
      NORTHERN DISTRICT OF MISSISSIPPI
2              OXFORD DIVISION

3   UNITED STATES OF AMERICA              PLAINTIFF

4   VS.                          NO. 3:19-CR-65-11

5   DERRICK HOUSTON                       DEFENDANT

6

7            RESUMPTION OF SENTENCING HEARING

8

9         BEFORE HONORABLE DEBRA M. BROWN
        CHIEF UNITED STATES DISTRICT JUDGE
10

11              Oxford, Mississippi
                October 5, 2022
12

13  APPEARANCES:

14  For the Government:   SAMUEL R. STRINGFELLOW, ESQUIRE
                          U.S. ATTORNEY'S OFFICE
15                        900 Jefferson Avenue
                          Oxford, Mississippi  38655
16

17  For the Defendant:    JOSEPH M. HOLLOMON, ESQUIRE
                          JOE M. HOLLOMON & ASSOCIATES, P.A.
18                        Post Office Box 22683
                          Jackson, Mississippi 39225-2683
19

20  Court Reporter:       BRENDA D. BLACKBURN, RPR, CCR #1087
                          FEDERAL OFFICIAL COURT REPORTER
21                        305 Main Street
                          Greenville, Mississippi  38701
22

23

24

25

1                        (CALL TO ORDER OF COURT AT 2:29 P.M.)

2               **THE COURT:** Be seated, please.

3       Please call our next case.

4               **COURTROOM DEPUTY:** The Court calls United States of

5 America versus Derrick Houston, 3:19-CR-65-11.

6               **THE COURT:** We're resuming Mr.~Houston's sentencing

7 hearing. Mr. Stringfellow is back as counsel for the

8 government. Mr. Hollomon is back as counsel for the defendant.

9 We have Mr. Marlier on behalf of probation, although we began

10 with Mr. Fountain.

11       At the point when sentencing was continued, we had reached

12 the point where Mr.~Houston and counsel had made their

13 statements to the Court, and as you-all know, sentencing was

14 continued to allow the Court to review and consider the

15 multitude of documents that Mr. Houston had brought to court

16 with him that had not yet been filed on the docket in this

17 case.

18       Since then, those documents were filed and I have since

19 reviewed them. There were also documents that were sent by

20 e-mail to the Court today. And I hope they've been filed on

21 the docket by now. But the Court did review those as well.

22         **MR. HOLLOMON:** They have been filed on the ECF, Your

23 Honor. Thank you.

24               **THE COURT:** Thank you.

25       I do want to go back then and do what I typically do, is

1    state for the record which persons submitted documents in the

2    way of reference letters on a defendant's behalf.  So I do want

3    to go back and do that here.

4        The Court reviewed reference letters from Wendy Houston,

5    Jim May.  And you-all forgive me if I'm mispronouncing these

6    names.  And Mr. Houston, you can correct me if you wish.  Is it

7    Antion or Antoine Hudson?

8            **THE DEFENDANT:**  Yes, ma'am.

9            **THE COURT:**  Johnny McDonald, Joshua Salman, Ernest

10   Harland, Tray Franklin, Tina Houston, John Wallace, Willie

11   Johnson, Jeraldine Harris-Rice, although that letter was

12   actually sent to you, Mr.~Houston, I believe.  But I reviewed

13   it nonetheless for -- based on its content.  Betty Houston,

14   your mother, who I understand says your nickname is Sam.

15   Cynthia Bell; Henry Houston, your father; Darious Franklin,

16   Latonlisa -- Latonlisa Bobo.

17           **THE DEFENDANT:**  Uh-huh.

18           **THE COURT:**  Clarence Buck, Daniel Coulston, Adam

19   Beevers, Trisha Trotter, Camillia Houston, a daughter.  Sha'Tia

20   Houston, another daughter.  Bosia Gillard.

21           **THE DEFENDANT:**  Yeah.

22           **THE COURT:**  Anita Brown.  Now, you're going to have

23   to help me with this one, because the last name was cut off in

24   the document scanned on the docket.  It's David?

25           **THE DEFENDANT:**  Taylor.

4

1      **THE COURT:** David Taylor.

2      **THE DEFENDANT:** Uh-huh.

3      **THE COURT:** Derrick Hayes, John Lovelace, Jr., Paul

4  Price, Nathaniel Leonard, and Chastity Booker.

5      What I tried to do when I went through all the

6  documents -- and I believe they totaled, as you-all know, two

7  hundred, three hundred pages -- is pull out the reference

8  letters. Now, there were certificates and other things, and

9  news articles, and all this other sort of documents in that

10 package. But to the extent that I wanted to refer on the

11 record to those letters, I believe I have every name of persons

12 that submitted a letter. You-all can correct me if I'm wrong,

13 and I've left someone out. But that was my task when I was

14 looking through them, although I did consider the other

15 documents as well.

16     So unless you-all tell me otherwise, I don't think I

17 missed any letters.

18     **THE DEFENDANT:** Mr. Ken, Ernest Harland, José

19 Valeza --

20     **THE COURT:** I can tell you, based on --

21     **THE DEFENDANT:** -- Arelis Valeza.

22     **THE COURT:** Based on those names, Mr.~Houston, I

23 didn't see those. I don't believe I saw those. Now, and let

24 me be a little more specific. What I looked at were the ones

25 that were directed to the Court. And then I told you the

5

1    exceptional one from Ms. Harris-Rice, which seemed like it was

2    a letter to someone else. But to the extent that she spoke

3    about your qualities and everything, I considered that. I

4    don't -- now, because, again, I went through every page. I

5    don't believe I saw anything from anyone named José or, you

6    know. So if those were submitted, especially if it's in that

7    little packet you have -- because I will take your Counsel's

8    representation that that was filed on the docket. But I did

9    not see any of those letters. If you know what they said, you

10    can mention them again yourself. I certainly was going to ask

11    did anyone have any further statements.

12        I will note some of the things that I did review in the

13    documents, you know, just stood out to me, especially your

14    request to be placed in protective custody, to be protected

15    from gangs, to be allowed to renounce gang affiliation, and all

16    of that. Again, it was a lot of information. And you did

17    speak about a lot of it last time in your statements,

18    Mr. Houston. So, I just want you to know I've looked at them

19    now. So here we are.

20        Are there any further statements from anyone?

21            **MR. STRINGFELLOW:** None from the government, Your

22    Honor.

23            **MR. HOLLOMON:** May I have just one moment, Your

24    Honor?

25            **THE COURT:** You may.

1          (COUNSEL CONFERRING WITH DEFENDANT.)

2          **MR. HOLLOMON:**  Your Honor, my client wishes me to

3     make a statement on the record regarding -- and I know the

4     Court is aware of this -- the sentences imposed on the

5     codefendants in this case, and the sentences they received by

6     the Court.

7          **THE COURT:**  Okay.  I know what they are.

8          **MR. HOLLOMON:**  I know, Judge.

9          **THE COURT:**  So, you want to make a comment with

10    respect to that?

11         **MR. HOLLOMON:**  Judge, we hope that you'll follow suit

12    and sentence our -- my client similarly to what was imposed on

13    them, and also what was requested in my client's Sentencing

14    Memorandum.

15         **THE COURT:**  It is difficult to start from that point,

16    because, Mr.~Houston, as you know, I stated what your guideline

17    range was, your offense level and criminal history category.

18    So, it's not really apples and apples, if your codefendants

19    have different guideline sentences, different offense levels,

20    and different criminal history category.  So it's not really

21    apples to apples.  Now, I do that anyway.  I do look over all

22    of the sentences I impose independent of the guidelines.  So,

23    it kind of goes without saying.  I can appreciate you wanted to

24    raise that.  But it's not really kind of a -- as I said, it's

25    not really apples and apples.  Everybody is different, based on

7

1   their criminal history category.  And as I explained when we

2   were here last time, the guidelines is the place the Court is

3   obligated to start.

4       I did have a couple of questions very quickly, and these

5   are things that I didn't get to last time.  I mentioned,

6   Mr.~Houston, your prior convictions.  And with respect to the

7   sentence you're currently serving to the extent that it was --

8   the Kentucky sentence.  I'll just call it that.  Because I

9   think it's been referred to -- everybody knows what I'm talking

10  about when I say "the Kentucky sentence."

11      So, you were sentenced in 2005, ten year's custody on each

12  Count 2, two counts to be served consecutively.  To the extent

13  that you-all know or can estimate, when is the expected date

14  that you will be done with that sentence?

15          **THE DEFENDANT:**  It's twenty percent.  So, two years

16  on a ten-year sentence.  But I'm eligible for shock probation,

17  due to a first-time offender in Kentucky.

18          **THE COURT:**  All right.  Say that one more --

19          **THE DEFENDANT:**  I qualify for shock probation.  It's

20  two years on a ten-year sentence.

21          **THE COURT:**  Uh-huh.

22          **THE DEFENDANT:**  Parole is six months.

23          **THE COURT:**  Okay.  And then is it true that with

24  regard to the -- and this is in paragraph 74 of the Presentence

25  Report, the 2006 sentence where it was for armed robbery in

1　DuPage County, Illinois, it was fifteen years custody on each

2　count, three years, but it was to run concurrent with some of

3　the Mississippi cases that appear in paragraph 71. Have you

4　finished that sentence?

5　　　　　　　**THE DEFENDANT:** Yes, ma'am.

6　　　　　　**THE COURT:** If there's nothing further, then, just a

7　few remarks I would like to make.

8　　　　You spoke at great length last week, Mr.~Houston, about

9　the reasons that you committed the crime in this case. Those

10　reasons certainly are laudable. The Court's job, though, is to

11　announce the consequences of your crime in this -- in this

12　instance. I don't ever want to encourage the commission of a

13　crime, even if it does have a laudable purpose. And that's

14　kind of what we have here.

15　　　　I was extremely impressed by all of the things that

16　you -- you know, that the documents showed that you were doing

17　to better the conditions at Parchman. And those things were

18　long overdue. I don't think anybody will dispute the fact that

19　there were changes that needed to be made, and particularly to

20　dispute the fact that it seems folks who were trying to change

21　things were demonized in some way because they were trying to

22　change them. There's really just no excuse for folks over

23　there ignoring the good in favor of the bad. And that's what

24　it seemed to be. And I no doubt believe that they are still

25　struggling with that. It seems to this Court -- and I know I'm

1    telling you things that you already know -- that unless and
2    until it is taken seriously by everyone involved in that
3    system, including and in particular the correctional officers
4    themselves, it -- it sheds a really negative light on the
5    justice system as a whole.  Because if the whole goal of
6    incarceration is to have someone serve the consequences of
7    their crime, they shouldn't have to put up with more than that.
8    They should be able to just serve their sentence and not have
9    to worry about, you know, being threatened by other people, by
10   having unsanitary conditions, by wanting to do right but
11   negative -- but all the time being -- having that shut down
12   because it would impact the -- I'm trying to even think of a
13   good word to describe it -- just the injurious culture that had
14   developed over such a long time.  There's just really no excuse
15   for that.  So, again, I applaud your efforts in that respect.
16   And it actually took a lot of bravery, I will tell you.
17   Unfortunately, it doesn't totally excuse your crime in this
18   case.  And, you know, goodness knows you got somebody's
19   attention.  So, it served its purpose, what you mentioned last
20   week.  It served the purpose.  But the attention you're
21   getting, it has some other things connected to it, which is why
22   we're all here today.

23       So I mentioned last time that the calculated guideline
24   ranges include a term of imprisonment up to 240 months.
25   Ironically, the statutory penalties include a term of

1  imprisonment of up to 20 years or 240 months, too.  So that is

2  about where we are.

3      It's interesting, Mr.~Houston, that your counsel did

4  mention the sentences that the Court has handed down in this

5  case.  Because, again, I reviewed those before I walked out

6  here to the bench, and had reviewed them last week as well.  So

7  I'm not going to comment on the offense levels and criminal

8  history categories and the ranges of those other defendants.

9  You may be aware of them.  I don't know.  But we certainly are

10  dealing with -- and if I look, I will see there is no one that

11  has the exact same offense level and criminal history category

12  as you do.  And actually only one other person thus far -- no,

13  I take that back.  There's not been anyone sentenced thus far

14  who had as high a range as you have here in this case.

15      I commented last week that based upon the words that you

16  spoke, Mr.~Houston, there is no question that you're

17  intelligent, articulate; certainly passionate as well.  It is

18  always discouraging or disappointing to me when I see someone,

19  you know, your age that is incarcerated when you have so much

20  potential, and in fact have realized a lot of your potential

21  that you have here now.

22      Your mother wrote in her letter that you are not a bad

23  person.  I don't think you are a bad person either,

24  Mr.~Houston.  And I've said it before when I've had to sentence

25  other defendants, it is about the consequences of your acts not

11

1    that -- you know, me sitting up here telling you that you're a

2    bad person.  Because I don't believe that at all, and I don't

3    want you to think that I do.

4        So I guess I am prepared to pronounce sentence.

5        Oh, I'm sorry.  I do have one last question.  And I did

6    see this in some of the letters, and in fact a letter that your

7    mother wrote.  Are you still in the process of trying to get

8    some relief on that Kentucky sentence, Mr.~Houston?

9        THE DEFENDANT:  Yes.  They -- I spoke with an

10   attorney.  I qualify for shock probation already.

11       THE COURT:  What's shock probation?

12       THE DEFENDANT:  Shock probation is when you haven't

13   been a -- your first time in Kentucky, the law is different.  A

14   first-time offender, your first time committing a crime up

15   there, the sentence that they give you, they let you serve it

16   on probation.  And I took a plea for ten years, twenty percent,

17   which is two years, and parole is six months.

18       THE COURT:  So how soon is it, then, that you believe

19   that you would be able to take advantage of that?

20       THE DEFENDANT:  I believe that -- I believe it's

21   already taken care of.  I believe that I already got the shock

22   probation.

23       THE COURT:  Have you received any documentation of

24   that effect?

25       THE DEFENDANT:  No, but I spoke with a lawyer, and we

12

1   filed for it in 2005, but the Court didn't rule on it. But he

2   told me that they had to rule on it. And by me being a

3   first-time offender there, they had to grant it, because

4   they've granted other cases.

5           **THE COURT:** Do you have any recent information about

6   that?

7           **THE DEFENDANT:** This is recent.

8           **THE COURT:** How long ago?

9           **THE DEFENDANT:** Last week.

10          **THE COURT:** This is, I won't say difficult for the

11  Court. But what I'm balancing is on one hand all of the --

12  again, the good that you intended, but then when I go back and

13  look at the Presentence Report and the details of the acts that

14  you committed, it is hard to reconcile those to the extent that

15  the Court believes that the Court may be willing to vary

16  downward from the guideline sentence. And I don't necessarily

17  want to have to ask you anything about that, Mr.~Houston,

18  because I believe it's all set forth in the Presentence Report.

19  And, again, you've already said why you proceeded with those

20  acts. But they are somewhat frightening to the Court, I will

21  tell you.

22          **MR. HOLLOMON:** Your Honor, I'm sorry, I don't mean to

23  interrupt the Court. But one thing I would direct the Court's

24  attention to is that -- and it was in the filing, the

25  supplemental filing to the Sentencing Memorandum my client

1   prepared.  He is responsible for saving the life of a

2   correctional officer since all this, Judge.  He -- I think

3   that's very reflective of his changed attitude.  And I think

4   that alone could, please the Court, justify a variance for my

5   client.  He risked his life to save the life of the

6   correctional officer.  The correctional officer submitted a

7   letter in fact corroborating that happened, and he does feel

8   like his life was saved.  And we think that reflects very well

9   and would be a reason my client would be deserving of a

10  variance in this case.

11       Thank you, Your Honor.

12           **THE COURT:**  I did see that.  I did see that.

13       I guess the question is whether or not on balance or

14  weighed against the acts that were -- that underline the crime

15  here whether or not -- how far it gets you.

16       All right.  And I will tell you-all that we did discuss

17  some matters when the courtroom was closed that certainly has

18  weighed upon the Court's decision with respect to sentence in

19  this case.  Because one thing that I did look at, taking into

20  account, you know, what your counsel has just pointed out,

21  Mr.~Houston, is the date that these crimes occurred.  You know,

22  so, of course, I'm going to look at your entire criminal

23  history, and I've done that, just because it's there.  These

24  events happened in the 2019 timeframe, you know, which wasn't

25  so long ago.  And, again, believe me, I understand your

1  explanation as to why it happened.  But they do concern the

2  Court, I will tell you.

3  　　　　　THE DEFENDANT:  May I speak?

4  　　　　　THE COURT:  So looking at the purposes of

5  sentencing --

6  　　　　　THE DEFENDANT:  May I speak?

7  　　　　　THE COURT:  -- it's -- oh, just one second.

8  　　I don't -- as I said, I don't want to endorse conduct,

9  even if it has a positive purpose.  And to the extent that the

10  sentence should serve to deter, not just you but others from

11  the criminal conduct, too, that's something the Court takes

12  into consideration.

13  　　Go ahead, Mr.~Houston.

14  　　　　　THE DEFENDANT:  Your Honor, I would like you to take

15  into consideration that the correctional officer in the -- in

16  my case that he was a dirty cop, and he was affiliated, and

17  there was reports filed on him also, and he hasn't been

18  punished, nor has he been fired.  And the victims, they was

19  also gang members also.  And I would just like for the Court to

20  know that.

21  　　　　　THE COURT:  No, I think I under -- well, I did know

22  about the status of the officer.  Are you talking about the one

23  whose truck was --

24  　　　　　THE DEFENDANT:  Jerry Page [sic] is his name.

25  　　　　　THE COURT:  Of course, that's not in the Presentence

1    Report.  But I do -- I certainly got the impression that the

2    victims here were involved in a gang.

3              **THE DEFENDANT:**  Also, the correctional officer, he's

4    in room 16 of the discovery on audio plotting to rob me also.

5              **THE COURT:**  None of these acts are -- are ones

6    that -- I mean, I know that they may seem justified to you.

7    But I guess it's the same thing, the folks who were assaulted,

8    they were in a gang.  But you wouldn't want to put yourself in

9    their place as well, I would hope.  And even the officer -- I

10   mean, I made the statement, there are some big problems at

11   Parchman, to be sure.  Someone should, if that -- if the

12   situation is what you described, someone should be having some

13   conversations with that officer.  But until it is brought

14   before a court, an indictment or whatever, I mean, it's hard to

15   know.  I hope -- I saw you wrote a lot of letters -- or at

16   least that Mr. Cain wrote you letters as well.  Hopefully

17   that's something that he's on top of.  Because it makes no

18   sense to put people who are corrupt in charge of people who are

19   there just to serve their sentence.  There's just no -- it

20   makes no sentence.  None at all.

21       I would like to think that this is all isolated, but I

22   know it's not.  There probably are institutions around the

23   country that are in a similar situation.  It is a big problem.

24   It's a big problem in this country.  And you should not have to

25   have had to go to the lengths that you did, especially when,

16

1    you know, at least based on the dates that were -- of the

2    documents that are in the record where you did try to get

3    folks' attention by other means, by bringing things to their

4    attention.  So I know that it is very discouraging and

5    disillusioning and all of those things.  And I'll admit to you,

6    again, it is a problem.  It is a big problem.

7        And it certainly was interesting to the Court that of all

8    the letters that were written on your behalf, it included

9    correctional officers.  It included other inmates.  It

10   included, of course, your family members; just a wide range of

11   people who support you on what you have done and what you've

12   tried to do to change the situation in Parchman.

13       **THE DEFENDANT:**  I have a -- may I have one other last

14   opportunity to speak?

15       **THE COURT:**  Sure.

16       **THE DEFENDANT:**  Last week, I spoke about my baptism.

17   I spoke about a car wreck that I was in.  I spoke about

18   purpose.  I never heard anything about a purpose until I had

19   that car wreck.  That's when the elders say God left you here,

20   so He must have a purpose for you.  So up until that point, I

21   had never heard anything about a purpose.  So I seeked my

22   purpose ever since then.  And I didn't understand baptism also.

23   I didn't understand, you know, when you're baptized, you're

24   baptized into the Name.  But all today when I look back, God

25   showed me that I've been in line with my purpose.  Proverbs

1   16:9 says, "Man's heart plans his way, but God is the one who

2   orders his steps."  So, wherever my steps at today is because

3   God got them here.

4           **UNIDENTIFIED SPEAKER:**  Amen.

5           **THE DEFENDANT:**  So, when I got baptized I didn't know

6   what baptism means.  But today I know what baptism means.  If I

7   take a book and I put it -- I take a book and I take a ink pen

8   and I put that ink pen inside that book, I could send -- and

9   close that book up, I can send it up there to the podium.  When

10  you get the book, the ink pen is still going to be in there.  I

11  could take that book and I could send it to every prison I've

12  been to.  When the prison get it, the ink pen still going to be

13  in there.  I could take that book and I could cast it into the

14  fire.  When the book burning, the ink pen still going to be in

15  there.  Me, baptism, and the book and ink pen got something in

16  common.  The moment I was baptized, if I don't remember nothing

17  else, I remember hearing the preacher say, "I now baptize you

18  in the name of the Father, the Son, and the Holy Spirit."

19          **UNIDENTIFIED SPEAKER:**  Amen.

20          **THE DEFENDANT:**  So that means I was baptized into the

21  Name.  So, wherever I went, the Father, the Son, and the Holy

22  Spirit went with me.  And I'll say again.  Proverbs 16:9 says,

23  "A man's heart plans his ways, but God is the one orders his

24  steps."

25      So a lot of people -- I've been on a long journey.  A lot

1    of people -- I've helped a lot of people.  I've helped a lot of

2    people.  Parchman was founded in 1901, you know.  The law

3    hadn't been reviewed for a violent offender since 1972.  A lot

4    of inmates who hadn't never got second chances, they got a

5    second chance now, you know.  And there was nobody knew the

6    platform.  Nobody knew how to litigate.  Nobody knew how to

7    stand up against the gangs and put their life at risk.  I

8    didn't either.  I remember telling you last week that I felt

9    led by the Spirit.  And I realize that spirit was the Spirit of

10   the Lord.  I know that, you know, you got people that got hurt,

11   and I apologize.  My -- sincerely, I apologize.  But I truly

12   believe that it was all led up to today.  It was all in the

13   will of God.  Because nobody else was able to shed light on

14   Parchman.

15        I lost a lot of friends, close friends.  They died.  I'm

16   sure you've seen the article where I influenced gang members

17   over the whole state to trade their knives in for better prison

18   conditions.  Prison was made for rehabilitation, not

19   degeneration.  I had to create programs myself and instructors,

20   for those instructors to teach others, so we could have some

21   form of rehabilitation, you know.  The environment, you know --

22   an idol mind is the devil's playground.  The environment taught

23   the inmates how to be violent.  We had nothing else to do.  So

24   we had to have something to keep our mind focused on.  I took

25   it upon myself by the grace of God to create those programs.  I

1  wanted change. Many inmates and many families wanted change.

2  You had guys who was extorting and exploiting, didn't want

3  change.

4       So, Your Honor, all I ask the Court to do is take into

5  consideration, you know. Proverbs 16:9. "A man's heart plans

6  his way, but God is the one who orders his steps." I'm here

7  today because God got me here. When I look back and go all the

8  way back to that car wreck when I first heard the elders say,

9  "You have a purpose. God loves you for a purpose," my steps

10 are here. God told me that. A lot of people have been saved

11 over at the jail. A lot of people have been saved, baptized.

12 Over 57 baptisms since I've been there. God used me to

13 activate God's faith, water God's faith. He gave the increase.

14 He said, "Whoever waters -- anyone who plants and whoever

15 waters, let them consider themself as nothing." So I consider

16 myself nothing, because it was God's work.

17      But, Your Honor, I want you to take into consideration not

18 one time have I sat in the courtroom and said that I'm a

19 changed man. I never said I was a changed man, not in the

20 letter. As a matter of fact, everybody in the letter they said

21 I was changed, and that kind of disturbed me. Even the

22 prosecutor said I was a changed man. I have never heard that

23 before in no case. And I have never even seen it on TV where a

24 prosecutor say you're a changed man. Well, I got to say, you

25 know, when I hear that word, it disturbs me, because I know I'm

1  not a changed man.

2          **THE COURT:**  Well, something has changed.  I mean, and

3  that may not be the word to describe it.  But I don't know if

4  you were transformed or you finally -- finally grew into the

5  person that you know you were always meant to be.  However you

6  want to describe it, something different did happen.  So I'm

7  not really caught up on the semantics.  It's just really to the

8  extent that, based upon all of the things that you have done

9  that were set forth in the paperwork, that is a different

10  person that when I'm reading this Presentence Report and I read

11  all of the criminal acts that that person did which has brought

12  you up here today.  So, I'm not caught up on semantics, and I

13  don't think you are either.  I understand what you're saying.

14  But that's not --

15          **THE DEFENDANT:**  Right.

16          **THE COURT:**  That's not necessarily anything that I

17  think is going to influence the Court either way.  I get what

18  you're saying.

19          **THE DEFENDANT:**  And one more thing.  I haven't

20  changed, Your Honor.  I've been transformed.  Change is

21  temporary.  Transformation is permanent.

22          **UNIDENTIFIED SPEAKER:**  Amen.

23          **THE COURT:**  Understood.  I used the word myself,

24  "transformed."  So I get it.

25      I have put a lot of stock in the words of

1   Mr. Stringfellow, because it is -- I won't say rare -- but I

2   think that he certainly understands where you are now, in his

3   journey with you.  He's been on this journey with you just as

4   well as your counsel and your family, and everybody else.  So

5   the Court does put a lot of stock into that.

6       All right.  I said I was prepared to pronounce sentence

7   but, you know, I was looking at a few other things.

8       (PAUSE.)

9       **THE COURT:**  All right, then.  Pursuant to the

10  Sentencing Reform Act of 1984, it is the judgment of this Court

11  that the defendant, Derrick Houston, is hereby committed to the

12  custody of the Bureau of Prisons to be imprisoned for a term of

13  200 months on Count 1 of the Second Superseding Indictment.

14  This sentence shall run concurrently to defendant's sentence in

15  Warren County, Kentucky, Circuit Court Docket Number

16  02-CR-463-01.

17      Upon release from imprisonment, the defendant shall be

18  placed on supervised release for a term of up to three years on

19  Count 1 of the Second Superseding Indictment.

20      During the term of supervised release, the defendant shall

21  comply with the mandatory condition that he cooperate in the

22  collection of DNA as directed by the probation officer.  The

23  defendant shall comply with the standard conditions that have

24  been adopted by this Court.

25      In addition, taking into consideration that there were no

22

1   objections to the special conditions of supervision outlined in

2   the Presentence Report, the Court imposes the following special

3   conditions, given its review of the Presentence Report.

4        The first is that the defendant participate in a program

5   of mental health treatment, the details of which will be

6   outlined and supervised by the probation officer until such

7   time as the defendant successfully completes the program or is

8   deemed by the treatment provider to no longer be in need of

9   treatment.

10       And just second, a search condition, that being that the

11  defendant shall submit his person, property, house, residence,

12  vehicle, papers, computers, other electronic communications, or

13  data storage devices or media, or office to a search conducted

14  by the United States Probation Officer.  The failure to submit

15  to a search may be grounds for revocation of your supervised

16  release period.  The defendant shall warn any other occupants

17  that the premises may be subject to searches pursuant to this

18  condition.  An officer may conduct a search pursuant to this

19  condition only when reasonable suspicion exists that the

20  defendant has violated a condition of his supervision.

21       Any search must be conducted at a reasonable time and in a

22  reasonable manner.

23       No fine will by imposed due to the defendant's clear

24  inability to pay.

25       The special assessment, however, shall be paid to the

1  United States District Court Clerk's Office for the Northern

2  District of Mississippi, $100 for each count of conviction,

3  which here equates to $100. It is due immediately, if it has

4  not been paid already.

5      The defendant expressly waives any and all rights to

6  appeal the conviction and/or sentence imposed in this case and

7  the manner in which the sentence was imposed on any ground

8  whatsoever, including but not limited to the grounds set forth

9  in 18 U.S.C. § 3742, except to claims relating to prosecutorial

10  misconduct and ineffective assistance of counsel relating to

11  the validity of the waiver of appeal or the validity of the

12  guilty plea itself.

13      The defendant also expressly waives all rights to contest

14  or collaterally attack the conviction and/or sentence and the

15  manner in which the sentence was imposed in any post-conviction

16  proceeding including but not limited to a motion brought

17  pursuant to 28 U.S.C. § 2255, except as to claims relating to

18  the validity of the waiver of appeal or the validity of the

19  guilty plea itself.

20      That is the Court's sentence, Mr.~Houston. I will tell

21  you, I look forward to hearing of other events very soon. And

22  in that extent, again, I know you will too. But that is the

23  sentence handed down by the Court today. I tried to do my best

24  to explain how the Court views this case. Sentencing is always

25  a very difficult thing, and I know that one or more persons in

24

1   this room disagreed with the sentence that the Court has handed

2   down.  To the extent that the Court has varied down slightly

3   from the guideline sentence, it is in recognition of the things

4   that you have done since 2019, and in recognition of some of

5   the things that you tried to do before 2019, Mr.~Houston.  But

6   all the same, it is about consequences, unfortunately.  It is

7   about consequences, and that is why we're here today.

8      Again, I hope that we will have the opportunity to address

9   in the future soon enough other matters that will bear on the

10   position where you are in today.  But until then, that is the

11   Court's sentence.

12      Mr. Stringfellow, I do believe we have some other matters

13   to take up with regard to the remaining counts.

14        **MR. STRINGFELLOW:**  Yes, Your Honor.  The United

15   States moves to dismiss any remaining counts.

16        **THE COURT:**  All remaining counts against Mr.~Houston

17   are dismissed.

18        **MR. STRINGFELLOW:**  Thank you.

19        **THE COURT:**  By my count, that's Counts 2 and 5 of the

20   superseding indictment?

21        **THE DEFENDANT:**  Yes.

22        **MR. STRINGFELLOW:**  Yes, Your Honor.

23        **THE COURT:**  I guess I did not expressly say it. I had

24   deferred a decision on the Plea Agreement.  But as you-all see,

25   the Court has taken into consideration the terms of the Plea

25

1   Agreement.  So, the Plea Agreement is accepted by the Court.

2       Is there anything else we need to take up?

3           **MR. HOLLOMON:**  Your Honor, please, on behalf of the

4   defendant, I would request that the Court consider recommending

5   designation of my client to the facility in Talladega, Alabama

6   for service of his sentence.  And, of course, Judge, we're

7   obviously concerned about any of the codefendants or people

8   he's involved with being in the same facility or in contact

9   where they could do harm to him.

10          **THE COURT:**  And you said it's Talladega?

11          **MR. HOLLOMON:**  Yes, Your Honor.

12          **THE COURT:**  County, or facility?

13          **MR. HOLLOMON:**  Judge, that would be a --

14          **THE COURT:**  Well, we could -- what I could just say

15  is recommend to BOP that he serve at a facility as close as

16  possible to Talladega in Alabama.  And I think that will get us

17  where you want to be.

18          **MR. HOLLOMON:**  I agree.

19          **THE COURT:**  If not, I don't mind making a subsequent

20  recommendation.

21          **MR. HOLLOMON:**  No, Your Honor.  That will be fine.

22      Thank you.

23          **THE COURT:**  Anything further?

24          **MR. HOLLOMON:**  Not from the defendant, Your Honor.

25          **MR. STRINGFELLOW:**  No, Your Honor.

26

1    **PROBATION OFFICER:**  Nothing else, Judge.

2    **THE COURT:**  Mr.~Houston, I don't enjoy this job at

3    all when it comes to sentencing.  But, again, I hope that you

4    have heard me.  I certainly have heard you.  I do wish you

5    peace as you move forward.

6    There being nothing further, this matter is adjourned.

7    (Concluded:  3:14 p.m.)

8    CERTIFICATE

9    I, Brenda D. Blackburn, Federal Official Court

10   Reporter, in and for the United States District Court for the

11   Northern District of Mississippi, do hereby certify that

12   pursuant to Section 753, Title 28, United States Code, that the

13   foregoing 25 pages are a true and correct transcript of the

14   stenographically reported proceedings held in the

15   above-entitled matter and that the transcript page format is in

16   conformance with the regulations of the Judicial Conference of

17   the United States.

18   Witness my hand, this 5th day of January, 2023.

19

20                          /s/BRENDA D. BLACKBURN
                       _____
                       BRENDA D. BLACKBURN, RPR, CCR NO. 1087
21                     FEDERAL OFFICIAL COURT REPORTER

22

23

24

25